## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,          )
                                     )
              Plaintiff,    )
                                     )   Civil Action No. 07-2757 (MAM)
              v.             )
                                     )
YAHOO!, INC. and             )
MICROSOFT CORPORATION,   )
                                     )
            Defendants.   )
_____)

### ORDER

AND NOW, this _____ day of _____, 200___,

upon consideration of Defendant Microsoft Corporation's Motion To Dismiss, and the papers

submitted by the parties, it is hereby ORDERED that the Defendant's Motion is GRANTED, and

FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice as to Defendant

Microsoft Corporation.

### BY THE COURT

_____
                                                    , J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,      )
     )
        Plaintiff,      )
     )
     )    Civil Action No. 07-2757 (MAM)
        v.      )
     )
YAHOO!, INC. and      )
MICROSOFT CORPORATION,      )
     )
        Defendants.      )
     )

## DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS

Defendant Microsoft Corporation moves this Court, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss Plaintiff's Complaint for the reasons stated in the accompanying

Brief, which is incorporated herein by reference.

Oral argument is requested, if opposition is filed.

WHEREFORE, defendant respectfully requests that this Court enter an Order dismissing

Plaintiff's Complaint with prejudice as to defendant Microsoft Corporation.

Respectfully submitted,

/s/ James D. Cashel

Dated: November 26, 2007

James D. Cashel (Pa. ID. No. 72056) (jc 24)
MONTGOMERY, MCCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Telephone No.: (215) 772-1500
Facsimile No.: (215) 772-7620

Attorneys for Defendant
Microsoft Corporation

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER, )
        )
         Plaintiff, )
        ) Civil Action No. 07-2757 (MAM)
       v. )
        )
YAHOO!, INC. and )
MICROSOFT CORPORATION, )
        )
         Defendants. )
        )

## MICROSOFT'S BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Microsoft Corporation ("Microsoft") submits this Brief in support of its

motion to dismiss plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim upon

which relief can be granted.

## I.    INTRODUCTION

Time and again plaintiff Gordon Ray Parker ("Parker") has filed meritless *pro se* lawsuits

in this Court. This suit is no exception.[1]

The suit against Microsoft and Yahoo merely reasserts copyright claims that Parker

already unsuccessfully litigated against Google. *See Parker v. Google, Inc.*, 422 F. Supp. 2d 492

(E.D. Pa. 2006), *aff'd*, No. 06-3074, 2007 WL 1989660 (3d Cir. July 10, 2007) (granting

Google's motion to dismiss and holding that Google's archiving, caching, and providing access

to Parker's Internet postings of purportedly copyrighted material did not constitute direct,

---

[1] Labeled a "serial litigant" by Judge Bartle in *Parker v. Learn the Skills Corp.*, No. 05-2752, 2006 WL 2228867, at *1 (E.D. Pa. Aug. 2, 2006), Parker has filed numerous lawsuits in this Court. *See Parker v. Univ. of Pa.*, No. 02-0567; *Parker v. Wintermute*, No. 02-7215; *Parker v. Google, Inc.*, No. 04-3918; *Parker v. Univ. of Pa.*, No. 05-4874. Except for his most recent case (No. 05-4874), all of these lawsuits have been dismissed.

contributory, or vicarious copyright infringement). Three days after the Third Circuit affirmed Judge Surrick's dismissal of Parker's copyright claims against Google, Parker filed this action against Microsoft and Yahoo for the same conduct. This claim too should be dismissed.

## II.    SUMMARY OF RELEVANT FACTS

Internet search engines such as Google, Microsoft's MSN, and Yahoo allow Internet users to sift through the massive amount of information available on the Internet to find information of interest to the user.[2]

Microsoft's MSN search engine continuously scans the Internet, makes copies of Internet pages, and stores the content from those pages in a temporary repository called a cache. Complaint ¶ 18.[3] When a person submits a query to the MSN search engine, content from a cache is often included as a link in the displayed search results. *Id.* Google, Yahoo, and MSN all scan the Internet in a similar manner and all display "cached" links with their search results. MSN also maintains an "opt out" policy whereby copyright holders such as Parker can notify it not to include particular Internet pages in the cache. *Id.* ¶ 24.

Parker is a purported author and owner of three copyrighted works – "*Outfoxing the Foxes, 29 Reasons Not To Be A Nice Guy*, and *Why Hotties Choose Losers*" – which Parker makes available on his Internet site www.cybersheet.com. *Id.* ¶¶ 11, 16 n.1. Parker alleges that Microsoft's MSN search engine infringes his copyrights by storing portions of these works in Internet cache pages, and displaying them in response to user queries. *Id.* ¶ 47. Before filing this

---

[2] The MSN search engine, now called "Live Search," is referred to herein as MSN to be consistent with the allegations in Parker's complaint.

[3] A copy of Parker's complaint is attached as Exhibit 1.

suit, Parker never notified Microsoft of the alleged infringement nor did he notify MSN that he wished to "opt out" and exclude these works from MSN's Internet cache. *Id.* ¶¶ 24-25.

## III. ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted."

When deciding a motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments, as well as any attachments to the motion to dismiss that are both integral to the complaint and unquestionably authentic. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *In re Rockefeller Ctr. Properties, Inc.*, 184 F.3d 280, 287 (3d Cir. 1999).

While the Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff, a motion to dismiss must be granted when it is apparent the Court could not give relief under any set of facts that the plaintiff could prove. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

### B. Parker's Copyright Infringement Claims Against Microsoft (Counts I-III) Should Be Dismissed For The Same Reasons That Parker's Prior Suit Against Google Was Dismissed

Parker's claims for direct, contributory, and vicarious copyright infringement boil down to his assertion that Microsoft's MSN search engine "copied, in their entirety, all three of Plaintiff's registered works, for storage in its search results and internet cache pages, and display in response to user queries (sic)." Complaint ¶ 47; *see also* ¶¶ 59-60.

1.    Direct Copyright Infringement

To plead direct copyright infringement, Parker must allege (1) ownership of a valid

copyright and (2) copying by Microsoft. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.

340, 361 (1991). In addition, Parker "must allege volitional conduct" on the part of Microsoft

with regard to the alleged copying. *See Parker v. Google*, 2007 WL 1989660, at *3; *Field v.

Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006).

Parker's allegations of direct copyright infringement fail as a matter of law for lack of

volitional conduct. In *Parker v. Google*, the court held:

> When an ISP [Internet Service Provider] automatically and
> temporarily stores data without human intervention so that the
> system can operate and transmit data to its users, the necessary
> element of volition is missing. The automatic activity of
> Google's search engine is analogous. It is clear that Google's
> automatic archiving of USENET postings and excerpting of
> websites in its results to users' search queries do not include the
> necessary volitional element to constitute direct copyright
> infringement.

*Parker v. Google*, 422 F. Supp. 2d at 497. This holding with respect to Google, affirmed by the

Third Circuit, is fatal to Parker's direct infringement claim against Microsoft because MSN's

manner of archiving is indistinguishable from Google's. *See Field v. Google*, 412 F. Supp. 2d at

1111 n.2 ("The three most popular search engines – Google, Yahoo!, and MSN – all display

'Cached' links with their search results, and operate them identically.").[4]

---

[4] Even if Microsoft's automatic system caching activity did satisfy the volitional element for purposes of direct copyright infringement, which it clearly does not, Microsoft would still be entitled to the safe harbor provision of the Digital Millennium Copyright Act ("DMCA") because the copyrighted material is made available online by Parker (not MSN), the material is transmitted through the Internet at the direction of the Internet user (not MSN), and MSN's Internet cache is carried out through an automatic technical process. *See Parker v. Google*, 422 F. Supp. 2d at 497-98 (citing 17 U.S.C. § 512(b)). It is not necessary, however, for the Court to determine whether or not Microsoft is entitled to the protections of the DMCA's safe harbor provision because Parker has not stated a claim for relief based solely on MSN's automatic system caching.

2.    Contributory Copyright Infringement

To plead contributory copyright infringement, Parker must allege: (1) that a third party was directly infringing a copyright, (2) knowledge by Microsoft that the third-party was directly infringing, and (3) a material contribution by Microsoft to the infringement. *Parker v. Google*, 2007 WL 1989660, at *3 (citing *Columbia Pictures, Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)). To show that Microsoft made a material contribution to the infringement, Parker must allege that Microsoft authorized or assisted the third party infringer. Moreover, Microsoft's alleged authorization or assistance "must bear some direct relationship to the infringing acts" and show that Microsoft was "acting in concert with the infringer." *Parker v. Google*, 422 F. Supp 2d at 499.

Parker's allegations of contributory copyright infringement fail as a matter of law because he has not alleged that Microsoft had knowledge of a third party's infringing activity or that it was acting in concert with any purported third-party infringer. *See Parker v. Google*, 2007 WL 1989660, at *3 (Parker's claim of contributory copyright infringement against Google failed because Parker failed to allege that Google had requisite knowledge of a third-party's infringing activity).

3.    Contributory Copyright Infringement

Finally, to plead vicarious copyright infringement, Parker must allege that Microsoft "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Id*. at *4. Parker's allegations of vicarious copyright infringement fail as a matter of law because he alleges no specific infringing conduct by any third party that Microsoft had the right and ability to supervise. Moreover, Parker's vague allegations of "profits" (Complaint ¶¶ 40-41) fail to allege that Microsoft has a direct financial interest in the purported

infringing activity. *See also Parker v. Google*, 422 F. Supp. 2d at 499-500 (Parker's claim of vicarious copyright infringement against Google dismissed because he failed to allege that Google had a direct financial interest in the allegedly infringing activity).

For these reasons, Parker's claims for direct, contributory, and vicarious copyright infringement (Counts I-III) should be dismissed as to defendant Microsoft.

**C.      Parker's Claims For "Breach of Contract / Negligence" (Counts IV-V) Should Also Be Dismissed Because There Is No Contract And Microsoft Had No Duty Of Care To Parker**

1.      Breach of Contract

Parker's breach of contract claim fails to state a claim upon which relief can be granted because he has not alleged the existence of a valid contract between Microsoft and him. Parker alleges only that MSN's automatic system caching activity "violated the contractual terms for the use of these documents on [Parker's] website." Complaint ¶ 68. Merely posting terms of use on an Internet site does not create a contract. Parker does not allege any facts from which the Court could conclude that a contract with Microsoft has been formed, namely (1) a meeting of the minds on the terms of the alleged contract, (2) an intention of the parties to be bound, or (3) that the alleged contract was supported by consideration. *See, e.g., Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (the party asserting breach of contract must plead the existence of a contract, including its essential terms). Contracts may be formed online by, for example, clicking "I agree" to manifest assent. *See, e.g., Caspi v. Microsoft Network, LLC*, 732 A.2d 528, 530 (N.J. Super. Ct. App. Div. 1999) (a membership agreement requiring a prospective subscriber to click on "I Agree" created a contract). But Parker alleges no such thing. Because Parker has failed to plead the existence of a contract, his breach of contract claim should be dismissed.

2.   Negligence

Parker's negligence claim, to the extent that one can discern it, appears to allege that although he failed to notify Microsoft of his copyrights, Microsoft nonetheless breached a purported duty to respect the terms of use that Parker posted on his Internet site.  Complaint ¶¶ 24-25, 67, 69-70.  This negligence claim fails to state a claim upon which relief can be granted for two reasons.

First, Microsoft is immune from Parker's negligence claim under the Communications Decency Act, 47 U.S.C. § 230 *et seq.*  The elements required for immunity are: (1) that the defendant is a provider or user of an "interactive computer service;" (2) that the asserted claims treat the defendant as the publisher or speaker of the information; and (3) that the information is provided by another "information content provider."  *Id.* at § 230(c)(1).  There is no doubt that Microsoft's MSN search engine, like Google, qualifies as an "interactive computer service," satisfying the first element.  *See Parker v. Google*, 422 F. Supp. 2d at 501.  Nor is there any doubt that Parker's claim treats Microsoft as the publisher of the allegedly infringing information and that the information was provided by Parker in his capacity as an information content provider.  Complaint ¶¶ 67-70; *Parker v. Google*, 422 F. Supp. 2d at 501.  This satisfies the final two elements needed for immunity.

Second, even if Microsoft were not immune from suit under the Communications Decency Act, Parker's theory of liability would not be actionable under traditional negligence principles.  To plead a claim for negligence, Parker would have to allege (1) a duty or obligation to him, requiring Microsoft to conform to a certain standard of conduct; (2) a breach of that duty by Microsoft; (3) a causal connection between Microsoft's conduct and Parker's purported injury; and (4) actual loss or damage by Parker.  *See Brunson Communications, Inc. v. Arbitron,*

*Inc.*, 266 F. Supp. 2d 377, 383 (E.D. Pa. 2003). The first of these elements, the existence of a duty, is a question of law. *Id.*

Here, at a minimum, Parker's negligence claim fails to state a claim upon which relief can be granted because he has not pled any facts to support a duty on the part of Microsoft or a breach of that purported duty. Parker has pled no facts to show that Microsoft was aware that he did not wish to have MSN provide "cached" links to his Internet site. Indeed, although he was aware of MSN's "opt out" policy, Parker never opted out and never notified Microsoft of the alleged infringement before filing suit. *Id.* ¶¶ 24-25. Parker's failure to communicate his preferences to Microsoft is fatal to his negligence claim. *See Field v. Google* 412 F. Supp. 2d at 1117 (holding that plaintiff Field was estopped from suing Google because Field chose to remain silent rather than notify Google or opt out). For these reasons, Parker's negligence claim should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons Microsoft respectfully requests that this Court dismiss Parker's

complaint with prejudice.

Respectfully submitted,

/s/ James D. Cashel

Dated: November 26, 2007

James D. Cashel (Pa. ID. No. 72056) (jc 24)
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone No.:  (215) 772-1500
Facsimile No.:  (215) 772-7620

Attorneys for Defendant
Microsoft Corporation



**Exhibit 1**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br>Plaintiff | |
| v. | **CASE NO.:** |
| | **Judge:** |
| **Yahoo!, Inc.,** 701 First Avenue, Sunnyvale, CA, 94098, and **Microsoft Corporation,** One Microsoft Way, Redmond, WA 98052-8300 | |
| Defendants | |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT, CONTRIBUTORY COPYRIGHT INFRINGEMENT, VICARIOUS COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, AND NEGLIGENCE

**Plaintiff** in the above-styled action submits this Second Amended Complaint, and in support thereof, sets forth and avers the following.

### THE PARTIES

1. Plaintiff **Gordon Roy Parker** ("Plaintiff") is an adult male resident of the United States, who resides and is domiciled at 4247 Locust Street, #806, Philadelphia, PA, 19104. Plaintiff does business in the state of Pennsylvania as internet publisher **Snodgrass Publishing Group**, a sole proprietorship registered in Pennsylvania and licensed to do business in Philadelphia, headquartered at 4247 Locust Street, #806, Philadelphia, PA 19104.

2. Defendant Yahoo!, Inc. ("Yahoo") is a Delaware Corporation headquartered in Sunnyvale, California, who can been served either at the address listed for it in the caption, or through its registered agent, **The Corporation Trust Company,** 1209 Orange Street, Wilmington, Delaware.



3. Defendant Microsoft is a Washington Corporation, headquartered in Redmond, Washington, who can be served either at the address listed for it in the caption, or through its Delaware registered agent, **The Corporation Trust Company,** 1209 Orange Street, Wilmington, Delaware.

## NATURE OF COMPLAINT AND STATEMENT OF JURISDICTION

4. This is a complaint for direct, contributory, and vicarious copyright infringement of Plaintiff's registered works, including but not limited to *Outfoxing The Foxes, 29 Reasons Not To Be A Nice Guy, and Why Hotties Choose Losers,* all of which are literary works for which Plaintiff is the sole owner of the copyright. Plaintiff makes these books available to readers for free, via his website at http://www.cybersheet.com/library.html.. These works were registered with the Library of Congress in October 1998, March 1999, and September 2004, respectively. It is also a complaint for breach of contract for any claims not governed by copyright law, and negligence for any claims not governed by contract law.

## Statement of Jurisdiction And Venue

5. Jurisdiction in this case is proper under 17 USC §501 (The Copyright Act), and under 28 USC §§ 1331, 1332, 1338, and 2201(a).

6. Personal jurisdiction in this District is proper, because both Yahoo! and Microsoft regularly transact and solicit business in the District, persistently provides services to internet users, consumers and advertisers in this District, and derives substantial revenue from services, including advertising services, rendered in this District.

7. Personal jurisdiction is further conferred under Pennsylvania's long-arm statute, and is constitutional due to the minimum-contacts doctrine, such that personal jurisdiction would not offend due process.

8. Venue is proper in this District pursuant to 28 USC §1391(b) and 1400(a) because both defendants conduct business in this District, and because their actions have injured Plaintiff, who conducts substantial business in and is domiciled in this District, as is his business.

## BACKGROUND

9. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-8.

10. Plaintiff's registered works have been profitable since literally the day his first book, *Outfoxing The Foxes,* was released in October 1998. Since the release of that book, well over a hundred other "seduction gurus" have authored similar books, for similar distribution over the internet to a similar audience. Still more of these gurus have parroted substantial amounts of the advice in Plaintiff's books, clearly demonstrating the relevance of both his writing and his business and distribution model. In every sense of the word, Plaintiff's seduction "e-books" have been pioneering. The best example of how pioneering Plaintiff's works were is that one of his concepts – the "pivot" female, used by men to improve their reputation – has now become an

3

actual occupation, through pivot-for-hire websites. The "pivot" was also mentioned in the bestselling book *The Game,* by Neil Strauss (HarperCollins, 2005).

11. Part of this pioneering by Plaintiff included, as part of his business model, making three of his registered works – *Outfoxing The Foxes, 29 Reasons Not To Be A Nice Guy,* and *Why Hotties Choose Losers* – available at no cost to his readers. Those works, the first two of which were substantially profitable as sale items (each sold hundreds of copies), continue to be profitable by drawing traffic to Plaintiff's website, with revenue resulting from affiliate (commissioned) advertising, and the sale of Plaintiff's premium seduction-advice content.

12. Plaintiff's books were not the product of a writer's coffeehouse folly; his investment in creating his works was substantial. More than fifteen years have now gone into the development of Plaintiff's "foxhunting" seduction method, and continues to this day. This included Plaintiff's own interactions with women, countless conversations with friends and acquaintances, analysis of relevant peer-reviewed research, his own personal research, at times formal and informal, and through extensive participation in various internet message boards dating back to August 1994.

13. Any publisher or author (Plaintiff is both) invests a great deal of time and money to create works, and acquire and manage the rights to those works. They make significant expenditures in marketing and distributing these works. Plaintiff has vigorously sought to protect, defend and enforce his exclusive rights in and to his copyrighted works, including those listed herein.

14. In order to profitably publish his work and continue in business, Plaintiff depends on maximizing his revenue from these works. This is especially true because Plaintiff is not a large corporate publisher, but rather a tiny, independent, internet-based operation. Literally

every dollar his books generate in revenue is precious to the existence of both his business and his books. Without this revenue, Plaintiff has no incentive to continue producing his works, and no incentive to incur further expense by marketing and distributing them.

15. Plaintiff is legally entitled under the Copyright Act to near-absolute control over distribution and pricing of his work. Usually this control is driven by financial considerations, but at times, artistic or other considerations may come into play in its exercise.

### Plaintiff's Copyright Notice

16. Plaintiff's copyright notice for the works in controversy in this lawsuit is unambiguous. It is the equivalent of a sign outside a private home which states *NO TRESPASSING: THIS MEANS YOU!* The notice states plainly:

> **Copyright 1998-2002, Snodgrass Publishing Group. ALL RIGHTS RESERVED. This document may not be altered in ANY way and may be viewed ONLY by the user who downloaded it. It is nontransferable.**[1]

17. Plaintiff registered his writing in the first place because the internet is rampant with piracy. He has asserted his rights for all of his books, even his free ones such as *Why Hotties Choose Losers,* because he wants no question in the mind of the reader that he does not tolerate piracy or infringement.

18. Both Defendants "downloaded" Plaintiff's books in the course of creating their search engines and caches. They violated Plaintiff's copyright when they republished and made the documents available for display to millions of third-party users to view through Defendants' websites rather than Plaintiff's.

19. Defendants are legendary technology companies, with market capitalizations in the tens and hundreds of billions of dollars. Each are publicly traded companies with teams of legendary, top-flight legal advisers who help guide their every move, noting the potential legal

---

[1] Source http://www.cybersheet.com/library/fox14.html.

consequences. By no stretch are we dealing with innocent infringement here; the only question is whether or not any affirmative defenses to a cause of action apply. Defendants are and have always been well aware of their conduct and its potential legal consequences; indeed, Defendants have as much or more at stake with this issue as Plaintiff, and as publicly traded companies, it is clearly in the public interest that the issue be resolved in order to reduce volatility in each Defendant's stock price.

20.    Both Defendants operate enormously popular and profitable internet search engines. The search engines deliver billions of dollars in annual revenue to each Defendant through the delivery of "sponsored links," or targeted advertising directly tied to the search. For example, a search on fishing might yield sponsored links for fishing equipment websites. Sponsored links are sold through an auction system by which advertisers bid on "keywords." Sponsored links for seduction-related terms (such as "pickup artist") might cost anywhere from $0.10-0.50 per click.

### Cash, Not Cache

21.    In addition to their search engines, each Defendant operates what they call a *cache*. The Wikipedia entry for this word describes it as "a temporary storage area where frequently accessed data can be stored for rapid access."[2] This is correct: a *computer's* cache is vital to its operations, because it avoids duplication of effort, namely accessing a remote area of a computer's hard drive. Computers also can cache websites and webpages, downloading a copy to a user's desktop so that the page loads more rapidly in the future. Plaintiff's copyright notice takes this downloading into account when it states that it may be viewed "only by the user who downloaded it." This acknowledges that visitors to Plaintiff's website will usually "download" a temporary copy of the document to their computer for easy web viewing, or that they may save it

---

[2] Source: http://en.wikipedia.org/wiki/Cache

themselves for printing. These are all legal uses for a cache. What defendants have is "cash," not a cache, since they are able to monetize content without licensing it.

22.  For the purposes of this lawsuit, a computer's internal cache shall be referred to by the term "computer cache," and shall be defined by the characteristic that the purpose of this cache is electronic storage within a closed computer system controlled by an individual user. Also for purposes of this lawsuit, any third-party digital copying of electronic documents which holds itself out to be a cache, such as Defendants' search engines, shall be referred to as an "internet cache."

23.  An *internet cache* bears little or no resemblance to a computer cache. It is not a set of "dumb pipes" over which information is transmitted, such as a telephone wire or an e-mail system. If Plaintiff were to e-mail Defendants, the ISP computer caches would make copies of the e-mail so that it could be sent, and the recipients' computers would make copies of the mail so that it could be read. By contrast, Defendants' internet caches function as *mirror websites*, which are defeined by Wikipedia as "*an exact copy of another Internet site.*." Indeed, that is what Defendants' search engine "cache" features provide: an unauthorized, exact copy of Plaintiff's website, including several of his registered works.

### Defendants' Opt-Out Policy

24.  Defendants are testing the proverb that it is easier to seek forgiveness than permission. Plaintiff has never licensed his content to either defendant, yet both Defendants have made wholesale copies of his registered works and displayed them on their websites. Both Defendants maintain an "opt out" policy by which they will remove infringing material from their internet cache upon request of the copyright holder, or in which they will honor various electronic protocols such as robotx.txt. Plaintiff avers simply that he "opted out" of having his

work copied when he registered it with the Library of Congress, and refers the reader to the

volumes of precedent which have univerally rejected opt-out copyright protection.

25. Under the Copyright Act, Plaintiff is not required to notify Defendants of

infringement prior to filing suit. He is merely required to register his work. Plaintiff has.

### Infringed Works Averments

26. On July 1, 2007, at 8:49 a.m., Plaintiff performed a simple search on Defendant

Yahoo!'s website for "foxhunting" with the results restricted to his domain, cybersheet.com The

following screenshot shows the results[3]:



27. The first two results returned were excerpts from and links to Chapters Five and

Fourteen of *Outfoxing The Foxes.* A total of forty-five links were returned, including links to

Plaintiff's other works. Links to Defendant Yahoo's internet cache for each chapter were also

---

[3] The URL for the search results is http://search.yahoo.com/search?p=foxhunting+site%3Acybersheet.com&ei=utf-8&fr=b1ie7

provided. Following is a screenshot from the internet cache page[4] for Chapter 14 taken at 8:53

a.m. on July 1, 2007:



28. Yahoo's internet cache page is an unauthorized, exact copy of the entire text of

Chapter Fourteen of Plaintiff's registered work *Outfoxing The Foxes*.

29. On July 1, 2007, at 9:00 a.m., Plaintiff searched Yahoo for results from his

domain for the word "hotties." As the following screenshot indicates, a total of eighty-two

results were returned, including links to Yahoo's internet cache pages for each result from

Plaintiff's registered work *Why Hotties Choose Losers.* The first result was for the "Shaping

Up" chapter:[5]

---

[4] The URL for the internet cache page for Chapter Fourteen is http://216.109.125.130/search/cache?ei=UTF-8&p=foxhunting+site%3Acybersheet.com&fr=b1ie7&u=www.cybersheet.com/library/fox14.html&w=foxhunting&d=Ki9raOrnQz33&icp=1&.intl=us
[5] The URL for the search results page is
http://search.yahoo.com/search;_ylt=A0geu.HloodGwScBzopXNyoA?p=hotties+site%3Acybersheet.com&fr=b1ie7



30. At 9:06 a.m. on July 1, 2007, Plaintiff clicked the link to Defendant Yahoo's

internet cache page of the Shaping Up chapter, and the following screenshot[6] shows the results:



31. At 6:25 p.m. on July 1, 2007, Plaintiff searched Yahoo for the words "Reason #"

from his domain, cybersheet.com. The following screenshot shows a total of one-hundred thirty-

---

[6] The URL for the internet cache page of the Shaping Up chapter is http://216.109.125.130/search/cache?ei=UTF-8&p=hotties+site%3Acybersheet.com&fr=b1ie7&u=www.cybersheet.com/hotties/shapingup.html&w=hotties&d=I docN-rnOq90&icp=1&.intl=us

four search results,[7] with the first four results Chapters Twenty, Twenty-One, Twenty-Three, and Four of his reigstered work, *29 Reasons Not To Be A Nice Guy*, with each chapter's number corresponding to its "reason."



32. At 6:33 p.m. on July 1, 2007, Plaintiff clicked the link to Defendant Yahoo's internet cache page for Reason Twenty of *29 Reasons* ( entitled "Chick Logic"), as evidenced by the following screenshot,[8] and the entire text of Reason #20 was returned::



---

[7] The URL of the search results page is
http://search.yahoo.com/search;_ylt=A0geu.jKKYhGSJkAi4dXNyoA?p=%22Reason+%23%22+site%3Acybershee
t.com&fr=b1ie7

33. At 9:11 a.m. on July 1, 2007, Plaintiff performed a search of Defendant Microsoft's website for the term "foxhunting" from his domain, cybersheet.com. The following screenshot shows a total of 36 search results[9] were returned, with the first two results being Chapters Nine and Five of *Outfoxing The Foxes,* respectively. The results page was also littered with sponsored advertising links.



34. At 9:14 a.m., July 1, 2007, Plaintniff clicked the link for Defendant Microsoft's internet cache page for Chapter Nine of *Outfoxing The Foxes* ("Time Management"). The following screenshot shows that Microsoft has an entire copy[10] of the chapter of Plaintiff's registered work on its website:

---

[8] The URL for the internet cache page of Reason Twenty is http://216.109.125.130/search/cache?ei=UTF-8&p=%22Reason+%23%22+site%3Acybersheet.com&fr=b1ie7&u=www.cybersheet.com/library/reason20.html&w=reason&d=WRkDremO9Td&icp=1&.intl=us
[9] The URL of the search results page is http://search.msn.com/results.aspx?q=foxhunting+site%3Acybersheet.com&FQRM=MSNH
[10] The URL for the internet cache page of Chapter Nine of *Outfoxing The Foxes* is at http://cc.msnscache.com/cache.aspx?q=8275362525539&lang=en-US&mkt=en-US&FORM=CVRE



35. On July 1, 2007, at 9:31 a.m., Plaintiff searched Defendant Microsoft's website for the term "hotties" on his domain, cybersheet.com. The following screenshot shows a total of ninety-five results, the second of which was for the chapter "Popularity Checks,"[11] and which included a link to the internet cache for that page:



---

[11] The URL for the search results is
http://search.msn.com/results.aspx?q=hotties+site%3Acybersheet.com&form=QBRE

13

36. On July 1, 2007, at 9:37 a.m., Planitiff clicked the link for Defendant Microsoft's internet cache page for the "Popularity Checks" chapter of his registered work, *Why Hotties Choose Losers*.



37. On July 1, 2007 at 6:41 p.m., Plaintiff searched Defendant Microsoft's website for the term "Reason #" from his website, cybersheet.com. As the following screenshot indicates, more than 100 search results were returned, the first of which was a link to Reason Fifteen of Plaintiff's registered work, *29 Reasons Not To Be A Nice Guy*, as well as a link to Defendant Microsoft's internet cache page of Reason Fifteen. Ironically, the excerpted text which appears in the search results is Plaintiff's copyright notice expressly forbidding its display:

14



38. At 6:56 p.m. on July 1, 2007, Plaintiff clicked the link to Defendant Microsoft's internet cache page of Reason Fifteen from *29 Reasons* ("The Secret Slut"), as evidenced by the following screenshot[12]:



39. Defendants do not add any new expression or meaning to its internet cache pages, or its search results. When either the entire text (cache) or portions (search results) of

---

[12] Defendant Microsoft's internet cache page for reason Fifteen is at
http://cc.msnscache.com/cache.aspx?q=8272971779507&lang=en-US&mkt=en-US&FORM=CVRE

Plaintiff's registered works are displayed to users, Defendants simply include much or all of the bibliographic information with which the books are originally published..

40. Defendants claim that their services are necessary to provide easy access to information for internet users. As is clearly becoming evident by Defendants' profits related to search, and the increasing expense of search advertising, they are actually having the opposite effect of commercializing the internet through the imposition of a "toll" on the information superhighway in the form of sponsored-link advertising, and by siphoning revenue from other internet search engines and portals which do not require wholesale copyright infringement in order to function.

41. Defendants' profits from search are clearly attributable to the infringement, because neither Defendant is a charity, nor would they bother copying the works of others if they did not know or believe it was profitable to do so. Indeed, there is absolutely nothing preventing Defendants from removing all third-party content from their search engines and merely returning sponsored links, yet they would be viewed as little more than spammers or marketing websites if they were to do this. The middle ground of an opt-in policy would allow individual copyright holders to determine what is searchable. If licesning content to search engines is as profitable for the copyright holders as the search engines claim when attempting to justify a fair use, it would follow that the copyright holders would gladly "opt in."

42. Recent events have shown that Defendant's core argument, the only one even remotely capable of justifying infringement, that infringement is a "necessary evil" for them to provide search to internet users has all but been refuted by the existence of Wikipedia, a user-generated "searchable dictionary" which provides a wealth of information in response to user queries, and which does so without having to commit a single act of infringement. Wikipedia's search results are far more targeted than those of either Defendant, due to the superior nature of

its construction. In a world without Defendants' search engines, Wikipedia-styled websites could easily step in and even offered sponsored-link advertising targeted to search terms the way Defendants do.

43. Beyond financial considerations, copyright law is designed to give copyright owners artistic control over the display of their works as well. Plaintiff is currently unable to license his content to search engines because they see no legal need to do so. Consequently, Plaintiff has no control over his content being displayed on sites where, for artistic or political reasons, he may not wish for it to appear. In the case of Defendant Yahoo!, Plaintiff is vehemently opposed to its recent collusion with the Chinese government, and is appalled that the display of his works is used to make Defendants' user search results more robust.

44. Defendants' infringement is direct because the copying it is not made in response to a user search query, but rather *in anticipation of search queries.* Defendants stocks its search engine with pirated content prior to any user requests for that content, so that the content may be served up instantly in the search results. The database of internet cache pages is constructed by Defendants, not their users, and is done so under their full direction and control. Subsequent vicarious infringements occur when users of Defendants' search engines enter keywords that match the site content, or request cached versions of the pages on the site, in this case entire chapters of both of Plaintiff's registered works.

## COUNT I:  DIRECT COPYRIGHT INFRINGEMENT

45. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-44.

46. Plaintiff is the sole owner of the copyrighted works *Outfoxing The Foxes, 29 Reasons Not To Be A Nice Guy,* and *Why Hotties Choose Losers.* Each title was registered with the Library of Congress prior to Defendants' infringing conduct, and in full compliance

with 17 USC §101 *et seq.* Plaintiff has properly and timely secured all exclusive rights to all of these works, and therefore has standing to file this suit.

47. A wholly separate act of infringement of each registered work occurred when, as averred in this Complaint, Defendant copied, in their entirety, all three of Plaintiff's registered works, for storage in its search results and internet cache pages, and display in response to user queries.

48. A wholly separate act of infringement of each registered work occurred each time Defendant displayed any or all of Plaintiff's registered works in response to a user request for the internet cache page.

49. A wholly separate act of infringement of each registered work occurred each time Defendant displayed any or all of Plaintiff's registered works in response to a user search query.

50. The total number of separate acts of direct infringement is not known at this time, but is believed to number in the thousands, given the pricing for the keywords which display the text from Plaintiff's registered works in the search results.

51. At all relevant times, Defendants, and only Defendants, directed and controlled the infringing activity, and at all relevant times, Defendants had it within their power to stop the infringement. Defendants' infringement was willful, wanton, and wholly intentional, in complete and total disregard for Plaintiff's intellectual property rights, of which Defendants were or should have been aware.

52. Defendants are not entitled to the safe harbor protection of the DMCA because they derive profits directly attributable to the infringement, profits which would not exist but for the infringement. These profits include advertising revenue through sponsored links, and any revenue derived from the increased traffic to the site attributable to the infringement, as well as

increased value to investors and increased goodwill. It is well established on the internet that traffic has a pecuniary value; anything which increases a website's traffic is creating value and profit for that site.

53. As a direct and proximate consequence of Defendants' conduct, Plaintiff has suffered irreparable harm, and will continue to suffer this harm unless Defendants are enjoined by this Court. The damages are especially severe because Plaintiff's career plan has relied on his earning income from online and offline sources. His income from offline sources is just beneath the poverty level. Every last dollar of internet revenue allows Plaintiff to literally avoid living in poverty.

54. By disregarding Plaintiff's copyrights as averred herein and infringing upon same, Defendants have violated his rights under the Copyright Act, 17 USC §106 *et seq.* He states his claims for relief on this basis.

55. For each separate act of infringement, Plaintiff is entitled to statutory damages under 17 USC §504(c)(2), in an amount not to exceed ONE HUNDREDAND FIFTY THOUSAND DOLLARS ($150,000.00 US) for each infringed work.

56. Defendants' deliberate infringement of Plaintiff's copyrights has greatly and irreparably damaged Plaintiff, a fledgling internet publisher who is barely eking out a living as it is, and who needs literally every dollar he may rightfully earn, and will continue to damage Plaintiff irreparably unless enjoined by this court. In the absence of injunctive relief, Plaintiff will have no adequate remedy at law. Accordingly, Plaintiff is entitled to a preliminary and final injunction in accordance with 17 USC §502.

57. Plaintiff is entitled to recover his costs, including any attorney fees he may incur in the course of this litigation (he is seeking representation), in accordance with 17 USC §505.

## COUNTS II-III: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

58. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-56.

59. Each user query resulting in the display of part of Plaintiff's three works set forth in this complaint in Defendants' search results, or all of them in the cache pages, constitutes a wholly separate act of contributory copyright infringement. Discovery will be required to determine the exact number of violations.

60. At all relevant times, Defendants, and only Defendants, directed and controlled the infringing activity, and at all relevant times, Defendants had it within their power to stop the infringement. Defendants' infringement was willful, wanton, and wholly intentional, in complete and total disregard for Plaintiff's intellectual property rights, of which Defendants were or should have been aware. Defendants either knew or should have known that storing Plaintiff's registered works in its internet cache pages and search engine for display in results would lead to infringement by its third-party users.

61. As a direct and proximate consequence of Defendants' conduct, Plaintiff has suffered irreparable harm, and will continue to suffer this harm unless Defendants are enjoined by this Court.

62. By disregarding Plaintiff's copyrights as averred herein and infringing upon same, Defendants have violated his rights under the Copyright Act, 17 USC §106 *et seq.* He states his claims for relief on this basis.

63. For each separate act of infringement, Plaintiff is entitled to statutory damages under 17 USC §504(c)(2), in an amount not to exceed ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00 US) for each infringed work.

64. Defendants' deliberate infringement of Plaintiff's copyrights has greatly and irreparably damaged Plaintiff, and will continue to damage Plaintiff irreparably unless enjoined by this court. In the absence of injunctive relief, Plaintiff will have no adequate remedy at law. Accordingly, Plaintiff is entitled to a preliminary and final injunction in accordance with 17 USC §502.

65. Plaintiff is entitled to recover his costs, including any attorney fees he may incur in the course of this litigation (he is seeking representation), in accordance with 17 USC §505.

### COUNTS IV/V: BREACH OF CONTRACT/NEGLIGENCE

66. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of paragraphs 1-65.

67. On the top of each page on Plaintiff's website which contains his registered works, exists a copyright notice expressly prohibiting transfer of the document to third parties, and explicitly states that the document may be viewed only by the user who downloaded it.

68. By downloading the pages and making them available to third parties via their websites, Defendants violated the contractual terms for the use of the documents on Plaintiff's website.

69. In addition to the three registered works, this notice appears above pages of unregistered writing of Plaintiff's, such as pages from his "player glossary" that also turned up in the above searches, as evidenced by the screenshots.

70. Defendants' conduct was willful and intentional. It was also negligent of Defendant's duty to respect Plaintiff's terms of use.

71. For any claims not preempted by the Copyright Act, Plaintiff is entitled to relief for breach of contract.

72. Alternative to paragraph 71 above, Plaintiff is entitled to relief for negligence.

73.  Due to the intentional nature of the actionable conduct, Plaintiff is entitled to punitive damages.

74.  Plaintiff is entitled to injunctive relief sufficient to terminate the actionable conduct.

75.  Plaintiff is entitled to costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.  An order of this court finding that Defendants have directly, contributorily, and vicariously infringed Plaintiff's copyrights for the three registered works set forth in this Complaint.

2.  For each separate act of infringement, unspecified statutory damages in the amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00) per violation, in an amount to be determined at trial.

3.  An award of costs of suit.

4.  Injunctive relief enjoining Defendants' from future infringement of Plaintiff's copyright.

5.  Such other and further injunctive relief sufficient to terminate the actionable conduct, and any other relief which this Court shall deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury in this matter.

This the 3rd day of July, 2007.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,** Plaintiff | |
| v. | **CASE NO.:** |
| | **Judge:** |
| **Yahoo!, Inc.,** 701 First Avenue, Sunnyvale, CA, 94098, and **Microsoft Corporation,** One Microsoft Way, Redmond, WA 98052-8300 | |
| Defendants | |

## VERIFICATION

I, Gordon Roy Parker, Plaintiff, domiciled at 4247 Locust Street, Philadelphia,

Pennsylvania, hereby attest, under penalty of perjury, that all statements of fact contained within

the foregoing **COMPLAINT AGAINST YAHOO, INC. AND MICROSOFT, INC.** are true to

the best of my knowledge.

This the 3rd day of July, 2007

_Gordon Roy Parker_  07/03/2007
*DATE*
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

1

## CERTIFICATE OF SERVICE

I, James D. Cashel, hereby certify that on this 26th day of November, 2007, I caused to

be served a true and correct copy of this *Certificate of Service* and the *Defendants' Motion To*

*Dismiss Plaintiff's Complaint, accompanying Brief,* and *proposed Order,* in the manner set forth

below:

Gordon Roy Parker
4247 Locust Street #806
Philadelphia, PA 19104
**By First Class Mail, Postage Prepaid**

Thomas P. Lane
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
**Counsel for Defendant Yahoo!, Inc.**
**By First Class Mail, Postage Prepaid**

/s/ James D. Cashel

_____

James D. Cashel