# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, Plaintiff<br><br>v.<br><br>**Yahoo!, Inc.,** and **Microsoft Corporation,**<br><br>Defendants | **CASE NO.:** 07-2757<br><br>**Judge: MAM** |

## ORDER

**AND NOW,** this ____th day of December, 2007, in consideration of **Defendant Microsoft's Motion To Dismiss,** the motion is **denied**.

SO ORDERED.

_____
J.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| GORDON ROY PARKER, Plaintiff | |
|---|---|
| v. | CASE NO.: 07-2757 |
| Yahoo!, Inc., and Microsoft Corporation, Defendants | Judge: MAM |



FILED
DEC 2007
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT MICROSOFT'S MOTION TO DISMISS**

Plaintiff in the above-styled action submits this Brief Opposition to the instant motion.

## I. INTRODUCTION

In its motion to dismiss, Defendant wastes no time with the pejoratives, stating, with extremely poor grammar and capitalization:

> Time and again plaintiff...has filed meritless *pro se* lawsuits in this Court. This is no exception. (Memorandum, p.1).

Defendant quotes Judge Bartle, who replaced the late Judge Kelly in Parker v. Google, 04-cv-3918, and lists a series of cases, including Title VII cases, which were dismissed in recent years. Defendant is also materially incorrect when it states that "all of these cases have been dismissed." Sadly, rather than simply addressing the merits of this case, Plaintiff must now address an attempt to prejudice this court from the outset. Defendant's remarks here should simply be struck from the record.

To briefly address any other lawsuits:

    1.   Parker v. University of Pennsylvania (E.D.Pa. #02-cv-567) was a case where the Third Circuit used bad law to dismiss a retaliation claim. Plaintiff had argued – *correctly* –

that Title VII retaliation claims did not have to be employment-related. After certiorari was denied, the Supreme Court, in <u>Burlington Northern v. White</u> (citation omitted), adopted the same Seventh Circuit standard as Plaintiff. This, however, was too late to save the case, but was no reflection on its merit. The Third Circuit, however, misapplied the law, whereas Plaintiff did not. By any objective standard, Plaintiff's Title VII retaliation arguments were stronger than those of the very individuals who sit on the bench of this court's parent.

2. <u>Parker v. Trustees of the University of Pennsylvania</u> (E.D.Pa. #05-cv-4874). This lawsuit was a direct consequence of the first lawsuit, and also Penn's decision not to allow amendment of the first lawsuit to include allegations based on events which occurred in 2002 and 2003. Those events would have been time-barred, except for various discovery-of-injury rules relating to Plaintiff not learning of the alleged harm until just prior to filing suit. The court has already ruled that the case was not barred by *res judicata*. Penn's conduct in that case, as alleged, is sufficient to cause any reasonable whistleblower to file suit. As far as "meritless" pleadings are concerned, defense counsel signed off on a motion to compel an IME against Plaintiff, specifically the use of an IME to prove a specious claim of "unemployability" that would remove his standing for the gender and retaliation claims. This motion – a clear abuse of process and an attempt to intimidate a whistleblower Plaintiff – was denied. That defense counsel and Penn would even try such a maneuver is something that would not otherwise be a matter of record were it not for Plaintiff; the public interest has already been clearly served by this lawsuit.

3. <u>Parker v. Wintermute</u> (E.D.Pa. #02-cv-7215). Wintermute was a Penn student who made repeated violent threats against Plaintiff, as part of a larger internet mafia/RICO enterprise. He also defamed Plaintiff, and his postings were made from similar/identical IP addresses (the internet equivalent of a physical home address) over a period of months and years. Despite this, Penn, who was represented by defense counsel, said that it could not identify

2

Wintermute despite having his IP address from seven days earlier. Plaintiff has alleged perjury by Penn in this matter, and it is that perjury which caused the dismissal, without prejudice, for lack of service (caused by the inability to identify Wintermute despite going through proper channels).

4. The Wintermute case was refiled as <u>Parker v. Learn The Skills Corp. (I)</u>, E.D.Pa. #03-cv-6936, and was dismissed yet again for lack of service against Wintermute and other internet defendants who could not be located. It was then filed again as <u>Parker v. Learn The Skills Corp. (II)</u>, E.D.Pa. #05-cv-2752, but was dismissed for lack of jurisdiction against LTSC. It was then filed in Delaware as <u>Parker v. Learn The Skills Corp. (III)</u>, D.Del, 06-cv-229, where it is currently active. As this case is ongoing, much new evidence has surfaced since those filings.

5. <u>Parker v. Google</u>, E.D.Pa. #04-cv-3918. The only truly relevant case to this one, as the issues involved are similar. Even here, however, Defendant, despite using some of the most expensive attorneys Philadelphia has to offer, has misquoted the record once again by stating that:

> Three days after the Third Circuit affirmed Judge Surrick's dismissal of [Plaintiff's] copyright claims against Google, [Plaintiff] filed this action against Microsoft and Yahoo for the same conduct."

The appeal in <u>Parker v. Google</u> was decided on July 10, 2007. This case was filed on July 3, 2007. As the <u>Google</u> ruling sidestepped the issues raised in this Complaint, they are not based on the "same conduct" because we are not dealing with the same set of facts. In the Google case, the court stated that Plaintiff had not alleged violation of a registered copyright, while in this case, he has. Plaintiff has also alleged volitional conduct on the part of the Defendants in this case, which the Third Circuit claimed he had not done before. A defect in pleading is not akin to a defect in merit.

This court should not take Defendant's attempted character-assassination lightly. Title VII Plaintiffs are recognized as ***private attorneys general*** by the courts. To the extent these words

3

have any meaning, any Title VII plaintiff who repeatedly survives motions to dismiss should be considered to be serving the public interest and certainly not filing "meritless" claims. To add the outcome of such a suit to any negative calculus is to discourage enforcement of Title VII. The other cases listed are either still active in one form or other, or the issues are presented for certiorari to the SCOTUS.

Plaintiff cannot control the fact that the Third Circuit refused to address the merits of Parker v. Google. In that case, the court specifically left open the questions of profit and volitional conduct. It even stated that Plaintiff had not linked Google's conduct to any profits. Plaintiff has done so here, in a manner nearly identical to that of the cases brought by the writers' and publishers' associations in New York. If this case is so easily dismissed, so are theirs. Even Viacom's lawsuit against YouTube raises the same arguments, that DMCA protection should not apply when the infringed content is used to draw traffic and sell advertising. This case may or may not ultimately prevail, but it certainly deserves to be heard.

The basic question of *whether or **not search engines have the right to build large audiences and revenue streams using the protected content of others*** is a question which has been properly raised by the Plaintiff, and which needs to be answered here.

This court should also note that were Plaintiff represented by counsel rather than proceeding as a *pro-se*, Defendant's tactics would prove quite expensive for him and would constitute a weapon unto themselves which would dissuade many in Plaintiff's financial condition from proceeding, as these motions must be answered. Were Plaintiff the predatory litigant Defendant seems to wish he were, he would be targeting companies that lack the resources to properly defend themselves, rather than those who unquestionably can. This is merely an even match, for the very reasons Defendant calls this case "meritless." It is a case that many others

4

would have filed had they the resources, and which many with similar resources in fact have already filed.

## II. SUMMARY OF RELEVANT FACTS

Defendant explains its actionable conduct in its Memorandum:

> Microsoft's MSN search engine continuously scans the Internet, makes copies of Internet pages, and stores the content from these pages in a *temporary* repository called a *cache*. When a person submits a query to the MSN search engine, content from a cache is often included as a link in the displayed search results. Google, Yahoo, and MSN all scan the Internet in a similar manner and all display "cached" links with their search results. *MSN also maintains an "opt out" policy whereby copyright holders such as parker can notify it not to include particular Internet pages in the cache.* (Emphasis Added) (Memorandum, p. 2).

Defendant has admitted infringement, and therefore must rely on an affirmative defense that could only be fair use. The "opt out" policy is meaningless, and has never been recognized as valid by the courts: Defendant is either infringing or it is not. Plaintiff "opted out" the day he registered his works with the Library of Congress, and in fact has been so diligent about registering his works precisely because those works are so easily pirated. That the pirate is a megacorporation does not make it any less of a pirate.

Defendant's "opt out" policy also extends only to its misnamed "cache" and not to its search results or search engine, both of which are also built on infringement of content such as Plaintiff's. The term "cache" is designed to mislead the uninformed into confusing it with an computers *internal cache*, the memory that allows an individual's computer to deliver a webpage to its user, or for an ISP to deliver a message or an e-mail (AOL, for example, must make a copy of an e-mail to deliver it). Unlike an internal cache, however, MSN's "cache" is more like stealing cable television from a neighbor and claiming to be "caching" the broadcast in one's own home.

Let us not forget the basic question here: *is what a search engine does protected by fair use?* This Court need not explore further. It chose not to explore this in <u>Parker v. Google</u>, instead

finding that Plaintiff had not pled direct infringement of a registered copyright, not pled volition, and had not pled facts which link revenue to the infringing conduct, all of which have been pled here.

As Defendant also notes, ***"Before filing this suit, [Plaintiff] never notified Microsoft of the alleged infringement, nor did he notify MSN that he wished to "opt out" and exclude these works from MSN's internet cache.*** (Emphasis Added) (Memorandum, pp. 2-3). Plaintiff did not "opt out" or notify Defendant of its infringing conduct, simply because he did not have to. Opt-out copyright protection is not recognized by the courts, and the DMCA does not protect those who profit from infringement.

Defendant also is not addressing Plaintiff's claims relating to the search results, which are separate from the cache.

## III. ARGUMENT

### A. Legal Standard.

Defendant has used stock citations to explain the legal standard. Plaintiff adds only that adjudication on a motion to dismiss is generally viewed with disfavor, and should not be granted easily. Construction should be liberal, with all facts alleged by the Plaintiff presumed true, and every benefit of the doubt given to Plaintiff on his legal arguments.

### B. Parker v. Google Is Not Relevant To This Case (Copyright Claims).

Defendant wishes for this court to treat this case as if it were Parker v. Google, when it is not. In that case, the Third Circuit sidestepped the fair-use issue altogether, ruling instead on procedural grounds. Its commentary on the DMCA issue was pure *dicta*, and it was noted in the ruling that neither side had raised the issue. The court's opinion addressed the pleadings rather than the fair-use argument itself, both with regard to the cache and Google's profiting from it.

1. **Direct Copyright Infringement Has Occurred, Because Defendant's "Cache" Is NOT A System Cache."**

Defendant notes the elements of a direct infringement claim: 1) ownership of a valid copyright; 2) copying by Microsoft. Defendant does not dispute either of these elements. It is the third element, volition, which is alleged. The citations given are <u>Parker v. Google</u> and <u>Field v. Google, Inc.</u>, 412 F.Supp. 2d 1106, 1115 (D.Nev. 2006). <u>Field</u> is not binding on this circuit, and is hardly leading case material, in that it dealt with an attorney, Field, who registered some poetry that he put on a *hobby* website, which the Nevada court noted appeared to be an attempt to engineer a lawsuit. The instant case is nothing of the sort: Plaintiff is a well-established internet publisher who relies on his content for income. His content is being taken, without his permission, and used to generate profits for other companies.

Defendant then quotes the district court's ruling in <u>Parker v. Google</u>, which totally mischaracterized the nature of what Google (and Microsoft) call a "cache":

> When an ISP [Internet Service Provider] automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing. The automatic activity of Google's search engine is analogous. It is clear that Google's automatic archiving of USENET postings and excerpting of websites in its results to users' search queries do not include the necessary volitional element to constitute direct copyright infringement.

The confusion here (and in the court's ruling in <u>Parker v. Google</u>) is caused by the use of the term *cache*. The "cache" to which the court (and Google and now Microsoft) are referring to when claiming immunity is a *system cache*. Neither Google's, nor Microsoft's search engines are system caches, but instead, *they are third-party repositories which are not essential to the distribution of the content*. The court in <u>Parker v. Google</u> even likened Google (a service provider) to a "copy machine." (order dismissing <u>Parker v. Google</u>, p.6). Also on p. 6 of that order, the court further explained its logic in holding that Google's search engine was a transitory provider entitled to DMCA protection:

[r]ather than embarking on a wholesale clarification of the various doctrines of copyright liability, Congress opted to leave current law in its evolving state and, instead, to create a series of safe harbors, for certain common activities of service providers. Under DMCA's four safe harbors, service providers may limit their liability for claims of copyright infringement. These safe harbors provide protection from liability for: (1) transitory digital network communications; *(2) system caching;* (3) information residing on systems or networks at the direction of users; and (4) information location tools-. Far short of adopting enhanced or wholly new standards to evaluate claims of copyright infringement against online service providers, Congress provided that DMCA's limitations of liability apply if the provider is found to be liable under existing principles of law. (Id., p. 6).

The DMCA was not designed to protect search engines, but rather *the system caches of individual computers.* To refer to a search engine as if it were a system cache is simple technological illiteracy, much as if one were to refer to a poodle as a feline. Calling a regular website a "cache" does not make it one.

The definition of a system cache, according to Wikipedia, is this:

> In computer science, a **cache** (pronounced like "cash") is a collection of data duplicating original values stored elsewhere or computed earlier, where the original data is expensive to fetch (due to longer access time) or to compute, compared to the cost of reading the cache. In other words, a cache is a temporary storage area where frequently accessed data can be stored for rapid access. Once the data is stored in the cache, future use can be made by accessing the cached copy rather than re-fetching or recomputing the original data, so that the average access time is shorter. Cache, therefore, helps expedite data access that the CPU would otherwise need to fetch from main memory.
>
> Cache have proven to be extremely effective in many areas of computing because access patterns in typical computer applications have locality of reference. There are several kinds of locality, but this article primarily deals with data that are accessed close together in time (temporal locality). The data might or might not be located physically close to each other (spatial locality)
>
> *A cache is a block of memory for temporary storage of data likely to be used again. The CPU and hard drive frequently use a cache, as do web browsers and web servers.* (emphasis added).

The Wikipedia article also explains what Google's (and Microsoft's) "cache" does:

> *Search engines also frequently make web pages they have indexed available from their cache.* For example, Google provides a "Cached" link next to each search result. This is useful when web pages are temporarily inaccessible from a web server.

Microcsoft's computers will 'cache" websites so that users of those specific computers can view websites on those computers. Defendant will then, however, *republish* these websites to

8

its own website, in a process which is wholly volitional. The "copy machine" analogy is not correct, because copy machines do not aggregate the data which pass through them, do not use the data to sell advertising, and do not republish it. Copy machines are truly "transitory providers" while search engines are not.

Examples of transitory providers which are entitled to DMCA protection would include e-mail systems (which copy e-mails so they can be sent), NNTP systems (which copy messages so they can be posted to USENET), and a user's own personal computer, to the extent that the copy is used for quick viewing after typing in the internet URL where the original data is located. The volitional conduct is the establishment of the search engine itself, and its operation, not the process by which information is transmitted. ***The content itself was stolen, retrieved, stored, and republished for profit.*** None of these activities are protected by the DMCA, and were never intended to be. Pickpocketing does not become legal simply because one has a robot or a software program do the dirtywork.

> In addition, while it is not entirely clear from Plaintiff's rambling Complaint, should Parker be claiming direct copyright infringement based on Google's automatic caching of web pages as a means of indexing websites and producing results to search queries, this activity does not constitute direct infringement either. (Memorandum, p. 7).

If perjoratives are to be used, Plaintiff's complaint is not rambling; rather Defendant's response is technologcially illiterate, and disingenuous, given Defendnat's line of work. Besides, Plaintiff is not claiming anything about Google in this case, as Microsoft is the Defendant.

The term *automatic caching* is extremely misleading, because, as it applies to the DMCA, it would have to be a *necessary* part of the process of information transmission, and it is not. That it is "automatic" is wholly irrelevant, because Microsfot plays no role as a transitory provider of the information, but rather a profiteering, third-party republisher of Plaintiff's protected, registered works.

9

Plaintiff has alleged that direct infringement of his work occurred when Microsoft loaded his webpages, including his protected works, into their search engine, and made the engine available for searching. Plaintiff has not consented to this use of his content, and under the law, has the right to have it removed from both the "internet cache"*and the search results themselves.* The search results could not be constructed unless an illegal copy of Plaintiff's work was residing on Microsoft's computers in the first place. Plaintiff's work clearly states that it may be viewed only through his website, not through the www.microsoft.com domain, which it is whenever an internet user views the cached page or search resutls.

Defendant further argues that Parker v. Google established that Google was a transitory provider under the DMCA. To the extent that it did, it did so only with regard to its construction of the pleadings in that case, which lacked several key elements which are present here. The ruling appeared more of an invitation to reveisit the issues raised here than to have pre-adjudicated them. Specifically, the ruling was clearly worded to indicate that had Plaintiff established a profit link, that DMCA protection would not apply. It never stated that this link did not exist, only that it was not pled, the same as it said with regard to volition or registration, both of which have also been pled here. This is simply not the same set of facts as Parker v. Google.

In its argument, Defendant again cites the term *system cache*. (Memorandum, p 7). Microsoft's search engine is *not* a system cache once its contents are republished to the Microsoft webite, any more than a home security camera remains just that when it is broadcast on national television, draws millions of viewers, and sells advertising. Search engines are currently using this misapplication of the term "cache" to justify using the content from millions of webpages to build a royalty-free business model, literally on the back of individuals such as Plaintiff.

2. **Contributory Copyright Infringement.**

Defendant has argued that Plaintiff has not alleged that it had knowledge of third-party infringing activity, and that his contributory copyright infringement claims must fail as a matter of law. Defendant is incorrect: this was pled in paragraph 60 of the Complaint (p. 20), which states:

> At all relevant times, Defendants, and only Defendants, directed and controlled the infringing activity, and at all relevant times, Defendants had it within their power to stop the infringement. Defendants' infringement was willful, wanton, and wholly intentional, in complete and total disregard for Plaintiff's intellectual property rights, of which Defendants were or should have been aware. ***Defendants either knew or should have known that storing Plaintiff's registered works in its internet cache pages and search engine for display in results would lead to infringement by its third-party users.*** (Emphasis Added)

Contributory infringement was pled. Specifically, Microsoft "acts in concert" with its users the same way <u>Napster</u> did, by encouraging them to search the web and view the illegally "cached" pages, pages which Plaintiff states, on the pages, are only allowed to be viewed through his website, not Microsoft's. Each time a user queries terms which result in Plaintiff's work being returned in the search results, the third party has infringed, and Microsoft has, with volition and the sole ability to stop the infringment, contributed to it.

3. **Contributory Copyright Infringement.**

Defendant appears to be arguing against the vicarious infringement claim here, but listed contributory infringement a second time. To the extent they are arguing against vicarious infringement, this was also pled, as were specific acts of infringment, namely any third-party search which returned Plaitniff's content in the search results and/or cache. Plaintiff provided screenshots of how the infringement occurred and was displayed. As discovery has not yet begun, how many infringing searches were conducted remains to be seen, but they were clearly pled.

11

C. **Breach of Contract/Negligence Claims.**

1. **Breach of Contract.**

Defendant claims that "merely posting terms of use on an Internet site does not create a contract." (Memorandum, p. 6). Plaintiff argues that it does, and that the contract was breached, or alternatively, that Defendant had a legal duty to abide by the terms and was negligent in not doing so. The Supremacy Clause does not apply, because the terms exceed those of our copyright laws.

Plaintiff's argument is not that Defendant clicked "I agree" as many might on the internet, but that the language on the page was clear, that it could be viewed only through Plaintiff's website, and that by placing this language itself into the search engine, Defendant was made aware of its contents yet still did not adhere to the terms. This claim is relevant more to unregistered works than the reigstered ones alleged.

2. **Negligence.**

The negligence claim is pled alternatively to the existence of a valid contract, based on the theory of negligent misrepresentation, namely Defendant's misrepresentation to Plaintiff, by downloading his content, that it would not make the content viewable through other websites. Had Defendant notified Plaintiff that it intended to use his content to build its search engine and its results, Plainitff would never have consented to the use of his material by Defendant.

The representation is also fraudulent, but due to the "automatic" nature of the archiving, Plaitniff considers a negligence claim more appropriate. He may, however, amend to include a fraud claim.

12

## **CONCLUSION**

For the reasons averred herein, the instant motion should be **denied**.

This the 13th day of December, 2007

_____
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 764-5487
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>Plaintiff<br><br>v.<br><br>**Yahoo!, Inc.,** and **Microsoft Corporation,**<br><br>Defendants | CASE NO.: 07-2757<br><br>Judge: MAM |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify that I have served a copy of **Plaintiff's Response To Defendant Microsoft's Motion To Dismiss**, on both defendants in this action via **regular mail**, as follows:

**Corey Field**
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
**Attorney For Yahoo!**

**James D. Cashel**
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street, 28th Floor
Philadelphia, PA 19109
**Attorney For Microsoft**

This the 13th day of December, 2007

_____
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 764-5487
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

FILED
DEC 2007
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk