# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>Plaintiff<br><br>v.<br><br>**Yahoo!, Inc.,** and **Microsoft Corporation,**<br><br>Defendants | **CASE NO.:** 07-2757<br><br>**Judge: MAM** |

## ORDER

**AND NOW,** this ____th day of December, 2007, in consideration of **Defendant Microsoft's Motion To Dismiss,** the motion is **denied**.

SO ORDERED.

_____
J.

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| GORDON ROY PARKER, Plaintiff | |
|---|---|
| v. | CASE NO.: 07-2757 |
| Yahoo!, Inc., and Microsoft Corporation, Defendants | Judge: MAM |



FILED
DEC 2007
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT YAHOO!'S MOTION TO DISMISS

Plaintiff in the above-styled action submits this Brief Opposition to the instant motion.

## INTRODUCTION

Like Defendant Microsoft, Defendant Yahoo!, through its counsel, is not shy in its attempts to prejudice this court against Plaintiff, and in the process, attempt to deflect what has long been considered an *inevitable* internet lawsuit into an ad-hominem debate centered on the parties rather than the still-unresolved legal issues. No one wins in this scenario, including the Defendants in the long-term, because sooner or later their business models with regard to their search engines must be put to this all-important copyright test.

## "You Can't Rape A Prostitute"

As Plaintiff is currently not under any type of sanction restricting his ability to file, arguments concerning his litigation history is not fair game for the instant motion. Indeed, the need for repeated litigation from Plaintiff has arisen for a few very simple and very legitimate reasons: 1) the courts, when given the chance, have chosen to dispose of cases on procedural grounds rather than merit, thus inviting refilling or similar future lawsuits; 2) the courts, when given the chance, have misapplied the law, costing Plaintiff what should have been several favorable rulings with regard to his Title VII retaliation arguments in <u>Parker v. Trustees of the</u>

University of Pennsylvania; and 3) defendants, in no hurry for the courts to hear these troubling legal questions on the merits, raise every possible procedural and jurisdictional argument, so that even when they prevail, the door is still open for refiling. There is also 4) Parker v. Wintermute was dismissed for lack of service on Wintermute, a Penn student whose identity Plaintiff subpoenaed, and despite overwhelming evidence that Penn could identify Wintermute, Plaintiff alleges that Penn perjured itself for the purpose of protecting his identity. No Plaintiff could have served Wintermute in that case, and Plaintiff did nothing wrong as he followed every proper procedure for subpoena.

Defendant cites Plaintiff's *pro se* filing status as if it were a negative, and it may very well be a negative, for large companies who rely on the fact that most individuals are incapable of representing themselves in court, and who, by their tactics, seem to want to make securing counsel as expensive a proposition as possible. Were Plaintiff represented by an attorney, his legal bills for responding to these motions alone could run several thousand dollars, for what should be a mere formality that does not halt a trial. As neither defendant can spend Plaintiff into submission, they have attempted to reframe this lawsuit as Plaintiff's "latest creative fiction."

Moreover, were Plaintiff the opportunistic, litigious creature Defendants claim him to be, Yahoo! and Microsoft would not be named as defendants, but rather some obscure website like www.usenet.com, recently sued by another large corporation over similar issues to those raised here. Plaintiff is not only not litigious and not vexatious, but he absolutely refuses to use his nearly two decades of litigation support and law office experience – spanning multiple states, multiple practice sizes, and in multiple legal disciplines – to target companies which are incapable of defending themselves, just to set a favorable precedent or secure a quick settlement. Through his ability to prosecute, Plaintiff has ensured a fair fight, something the wealthy Defendants generally only have to deal with when sued by those as wealthy as themselves. Plaintiff should in

no way be punished for realizing the part of the American Dream that allows even the poorest citizens to file suit against even the most powerful individuals and corporations. That Plaintiff has worked hard to acquire the knowledge to make this possible is a celebration of America itself, not a cancer on our legal system, which is clogged up far more by those with wealth and power suing each other rather than a case such as this one.

Even the most favorable construction of Defendant's extremely improper, prejudicial, and wholly irrelevant mention of Plaintiff's litigation history helps Defendant not one iota, for if anything, this version of his history should serve as a red flag to the court to ensure that Plaintiff is not prejudiced, and that this case is heard on the merits rather than the identity of the parties. Defendant is rather clearly asking this court to consider factors which do not relate to merit, but rather to the Plaintiff, in adjudicating this case. There is simply no need for this, for ***even if Plaintiff had somehow been sanctioned to where his filings were restricted, this Complaint would STILL be judged by the standard applied to a motion to dismiss.*** If meritorious, even a sanctioned Plaintiff would be given leave to file this case. Defendant's arguments would be more appropriate for a Rule 11 motion, not a motion to dismiss. That said, by no means should this case be dismissed.

To the extent this court entertains disparaging Plaintiff and his litigation in its rulings, it is declaring *open season* on Plaintiff, in that it is effectively putting the world on notice that breaking the law against Plaintiff might not be punished as severely as doing so against others, a violation of every principle of American jurisprudence. That part of this litigation history includes Title VII cases, all of which have survived motions to dismiss, is chilling, because it discourages Plaintiff from filing employment cases which clearly serve the public interest.

Let us now examine that litigation history, as cited by Defendant:

1. **Parker v. Rodwell**, #000201828, Philadelphia Court of Common Pleas, 2001). In this case, the Defendant called Plaintiff a "child molester."

Defendant Rodwell claimed not to be the author of the messages, and the evidence had been destroyed by the time Plaintiff was notified of this. Plaintiff is still being defamed by the individual believed to be the actual author of those messages. Identification of John Doe defendants is a problem confronting all internet Plaintiffs, not just Plaintiff.

2. **Parker v. University of Pennsylvania**, E.D.Pa. #02-cv-567. This case was dismissed on summary judgment, for the gender claim because Defendant claimed that Plaintiff had not searched its HR database for Plaintiff's resume. The retaliation claims were dismissed because the Third Circuit *incorrectly* applied its own precedent for retaliation cases, namely that adverse actions must be employment-related. Plaintiff argued correctly that this was not the case, and after certiorari had been denied, the Supreme Court, in Burlington Northern v. White (citation omitted), reversed the law to make it identical to Plaintiff's arguments. That Plaintiff correctly predicted a Supreme Court ruling that sided with one minority circuit against several other circuit rulings should put any question of his legal capabilities to permanent rest. The Third Circuit, in that case, even noted Plaintiff's "abilities as a writer and presenter of arguments" in finding that he was not prejudiced by lack of counsel. To the extent this court is bound by its parent, let it be bound by those words as well.

3. **Parker v. Tilles et al.**, #020901068, Philadelphia Court of Common Pleas, 2004). Tilles had claimed, to a *Daily Pennsylvanian* reporter, that Penn was "unsure" Plaintiff had ever worked for them in the past, or that he had applied for a job. Both statements were false, and one was refuted by later discovery. Defendant prevailed primarily over the issues of damages and "fair reporting" as well as "fair comment" immunity. The statements in the article gave rise to a reasonably filed cause of action. A losing case is not, by definition, a frivolous case.

4. **Parker v. Wintermute et al**, E.D.Pa. #02-cv-7215. Wintermute, a Penn student, had repeatedly threatened, harassed, and defamed Plaintiff on the internet over a long period of time, using the same static IP addresses. Plaintiff subpoenaed Wintermute's identity repeatedly, including once only seven days after one of his postings. Despite this, and despite evidence of knowing Wintermute's identity, Penn claimed it could not identify him. The case was dismissed for failure to serve Wintermute, which was made impossible by Penn. Plaintiff did absolutely nothing wrong in this case; he simply could not obtain the identity of the defendant, through no doing of his own. He followed all procedures.

5. **Parker v. Learn The Skills Corp. et al. (I)**, E.D.Pa #03-cv-6936. This RICO case was dismissed pursuant to Rule 8(a)(2), but it should be noted that the court applied a heightened standard to the Rule because Defendant Thom E. Geiger was *pro se*. This standard was not applied to the pleading with regard to the other defendants.

4

6. **Parker v. Google**, E.D.Pa. #04-cv-3918. This case was dismissed for reasons which will be cited profusely in this lawsuit, by both sides. The district court cited deficiencies in pleading, specifically lack of allegation of a registered work for the direct claims, lack of volition for the contributory/vicarious claims, and lack of pleading a connection to financial gain from the infringement. All of these elements have been pled here. The defamation claim has been presented for certiorari to the Supreme Court.

7. **Parker v. Learn The Skills Corp. (II)**, E.D.Pa. #05-cv-2752. This case was dismissed against the primary defendants, a Delaware Corporation and its officers and business partners, for lack of jurisdiction in Pennsylvania. Defendant LTSC had taken the unusual step of not doing business in Pennsylvania, apparently to avoid jurisdiction. The net result of this "dismissal" was to move the case thirty miles over, to Delaware.

8. **Parker v. Trustees of the University of Pennsylvania**, E.D.Pa. #05-cv-4874. This case was spawned by time-period restrictions on the first Title VII case. In this case, Penn moved the court for an IME (psychiatric) in an attempt to prove Plaintiff's "unemployability" and lack of standing to sue for gender and retaliation discrimination. This case was based on facts which surfaced after the first lawsuit was dismissed, and which refuted statements made during that time. Due to discovery-of-injury rules, it was not found to constitute *res judicata*.

9. **Parker v. Comcast High Speed Internet et al.**, E.D.Pa. #05-cv-157. This was a miscellaneous case brought by Plaintiff in an attempt to secure a Defendant's identity prior to filing suit. Such prefiling discovery is a common practice, and both defendants in this case have been on the receiving end of many such subpoenas. Given that ISPs often do not retain evidence as long as the statutes of limitations, the motion was appropriate. It was not appealed due to the Delaware filing.

It should be noted that in one or more of the above cases, Defendant Yahoo! did not move to quash any subpoenas of its users, which one might think it would have done if it considered the underlying litigation so frivolous or an improper attempt to unmask its users. This is, after all, America, not China. Indeed, Defendant Yahoo! complied with every subpoena. Unfortunately, all it could provide was third-party IP information requiring further discovery, but to the extent it could comply, it did, and was extremely accommodating.

Plaintiff's filings do not at all indicate any irresponsibility, but rather great care for the needs of both the system and even the Defendants. Defendants own SEC filings acknowledge the

5

very legal issues raised by this complaint, and shareholders consider legal uncertainty a negative. The rank-and-file investors are either not fully aware of these issues, or are powerless to exercise their influence on how Defendants deal with them. Those decisions are made by those who are employed by Defendant, and who therefore have career goals which are separate from the goals of the investor class. That Defendants have so liberally cited Parker v. Google only further underscores the public interest being served by Plaintiff's lawsuit.

Our courts are not Studio 54 from the 1970s. There is no velvet rope, no bouncer at the door deciding which people are "cool" enough to allow into the club, and no barrier to seeking justice. Defendants want this court to view them as brand-name litigants whom we expect to perpetually be involved in complex civil litigation, while marginalizing the individual *pro se* litigant who happens to be a political activist, who happens to be an internet pioneer, and who happens to have sufficient experience in the legal profession to draft complex pleadings and make complex legal arguments, some of which have been rejected by lower courts, only to be proven correct at later times by higher courts. Unlike the typical defendant, who can be spent into defeat even with a winning case, Plaintiff is impervious to such tactics, solely because he has taken the time to educate himself to the point where he can defend himself and his rights in situations where the ordinary litigant cannot.

Were Plaintiff a truly vexatious and reckless litigant, he could easily have filed this caser in Illinois, with an added defamation claim and Fair Housing Act claim, in a circuit (the Seventh) where he could have cited a pair of highly favorable cases in which the Seventh Circuit has already rejected Section 230 immunity for distributors of defamation. He has not done this because he chose to raise the question first to the Supreme Court, where a petition for certiorari is pending on this question and this question alone, specifically whether or not the Tenth

Amendment reverts the question of distributor liability to the states, as the statute only refers to the "publisher or speaker."

The Section 230 question in Parker v. Google is another *inevitable* issue for our courts. Not only Plaintiff, but others, such as licensed Pennsylvania attorney Todd Hollis, have challenged this immunity, as have two female Yale law students in the infamous "Autoadmit" case, which was filed in another jurisdiction, but where this court may have jurisdiction over the website subpoenas. With some of our nation's brightest legal minds are questioning Section 230, Plaintiff is in good company. In the event certiorari is denied, a very serious split authority will remain due to the Seventh Circuit, the same circuit which caused the Title VII split which led to Burlington Northern.

Such a split on Section 230 would create total chaos, for the reasons Defendant itself outlined in its *amici* brief in Barrett v. Rosenthal, a California case which, had it not been reversed, would have created the same chaos by removing Section 230 immunity from the California state courts. The same problem now exists in the Seventh thanks to Doe v. GTE or Chicago Lawyers v. Craigslist (citations omitted). Under our current system, to preserve those rights in this case, Plaintiff would have to add a defamation claim, which would be dismissed, and then rely on the Supreme Court ruling in his favor in Parker v. Google. Plaintiff has not done this, even though he most certainly knows how, and, because he does not require counsel, he clearly has the means to do so.

Plaintiff takes strong issue with the claim that his lawsuits were not "successful" given that some are still pending, and Plaintiff was quite "successful" in defeating Penn's IME motion, which would have set the dangerous precedent of requiring psychiatric examinations of *all* Title VII plaintiffs, in order to establish their "employability" and standing to sue. Had Penn been granted the IME, it would have had a chilling effect on future Title VII Plaintiffs, especially those

7

with disabilities or perceived to be disabled, especially given the emotional distress which can lead to the claims in the first place. That ruling was significant for the public interest and will protect similarly situated workers in the future.

### Defendant's Mischaracterization of Plaintiff's Motive

Defendant's bold imputations of malfeasance upon Plaintiff are undermined by its inattention to the facts. One would think that some of the nation's most expensive attorneys would bother to read the docket before using erroneous information in attempted character assassination; indeed, by its own standard as measured by its pleadings, Defendant, not Plaintiff, is the reckless litigant.

In its Memorandum (p. 5), Defendant sates that this case was filed on July 13, 2007, "just three days" after the Third Circuit dismissed the appeal in Parker v. Google. This is incorrect, as a clear reading of the docket shows that this case was filed on July 3, 2007, *before* the Third Circuit ruling. The court had taken months to rule, and that case was found to have pleading deficiencies which are not present here.

### "Opt Out" Copyright And Robotx.Txt Are Not Valid

In its introduction, Defendant claims that Plaintiff should have used the robots.txt protocol, and/or notified Yahoo! that he wished to "opt out" of their infringement. As this is not a valid legal concept, Plaintiff was not required to opt out of anything beyond doing so when he registered his works with the Library of Congress.

### I. COPYRIGHT CLAIMS

#### A. Plaintiff's Claims Are NOT Barred By Issue Preclusion.

Defendant is essentially claiming that this case contains facts identical to Parker v. Google, when it does not. Specifically, Plaintiff has pled registered copyrights, volition, and profit. He has pled all three here. Indeed, the Parker v. Google court noted that it was the

8

*pleadings* that were the source of the ruling, not a set of facts that were not pled there, but which are pled here.

Only of the elements cited by Defendant are present: 1) the issues raised in this lawsuit are not identical; 2) final judgment was based on the pleadings, not the merits; 3) is met because Plaintiff was a party; and 4) was not met, because Plaintiff had no "full and fair" opportunity to litigate the issues raised in *this* lawsuit.

In Parker v. Google, the Third Circuit sidestepped the direct copyright infringement claim because it stated that Plaintiff had not alleged infringement of a registered work. It did not rule on the fair-use issue, which would have constituted adjudication on the merits. For the vicarious and contributory claims, it cited pleading deficiencies relating to volition and profit, rather than addressing those issues on the merits such as was done in the Napster case (citation omitted).

With a different set of facts, properly pled, including registered copyrights, volition, and profit, we are not dealing with identical facts or issues, and issue preclusion does not apply.

B. **The Complaint States A Cause Of Action For Infringement.**

1. **Direct infringement was pled.**

Defendant's argument is self-refuting: "*The law* is clear that the alleged activities of Yahoo! do not constitute direct infringement." (Memorandum, p. 7). Defendant's argument should have been framed in a Rule 50 motion for judgment as a matter of law rather than a Rule 12 motion to dismiss. To the extent Plaintiff must argue, however, he shall.

Defendant once again attempts to confuse the court regarding the nature of its *cache*, specifically by attempting to portray it as a *system cache*, when in fact, it is, at best, *an internet rebroadcasting of its computer's cache.* The purpose of a system cache is to facilitate the transmission of computer data *within that system*. For example, AOL's computers copy all e-

9

mail sent to and from its system so that users may read it, but AOL does not publish that e-mail to the aol.com website, nor does it allow anyone other than publisher or recipient to view it, and it does not sell advertising tied to its content.

Any *system cache* related to Plaintiff's content would reside on the personal computers of either Plaintiff or his intended audience, not a third-party corporation which, with full volition, appropriates the material in its entirety, and republishes it on its own website. Yahoo!'s search engine is no more of a *system cache* than Plaintiff's website would be a *New York Times cache* were Plaintiff to republish an entire copy of that newspaper each day on his site. That this process is "automatic" does not make it legal, as it is done for profit,, and with underlying content which was illegally obtained and illegally made available for publication and distribution.

As the infringement is done for profit, this issue is actually moot, as DMCA protection was never intended to protect for-profit, intentional infringement, even the "automatic" kind, as <u>Napster</u> already showed.

### 2. <u>Opt-out copyright protection is not valid, and is not offered as an option for the search results.</u>

There is simply no legal precedent supporting opt-out copyright protection. This case should turn on the question of fair use and no other. Plaintiff opted out of having his work copied when he registered it with the Library of Congress. His copyright notices appear even in the search results generated by Defendant.

The <u>robots.txt</u> protocol is complicated, inefficient, and offers no protection against third-party infringers who also turn up in the search results and "internet cache." It is also based on the notion that permission is no longer necessary to republish the works of another, which would destroy the complete control over distribution of their work which copyright holders have long enjoyed. Plaintiff strongly objects to Yahoo!'s policies regarding China, for example, and

may not wish to give them permission to use his writing. On a larger scale, Plaintiff certainly takes issue with any corporation republishing his registered works in their entirety, using those works to build a search engine that draws Plaintiff's target traffic, and using his work to create search results that generate advertising which is sold to Plaintiff's competitors.

Defendant is asking this court to sanction its cashing of what should be Plaintiff's, and only Plaintiff's, paycheck. To do so would remove virtually all incentive for Plaintiff to continue to create his work. That Defendant saw Plaintiff's work worthy of stealing in the first place is *prima facie* evidence of its value. Defendant claims that it provides a useful service to the public, yet lacks the confidence that it could offer that service if it were required to get permission to include third-party content in its search results.

It should also be noted that Defendant Yahoo! does not offer the option of removal from search results, in which text from Plaintiff's website regularly appears in response to search queries. Those search results could not be generated without Defendant first making an illegal copy of Plaintiff's website for storage on its computers so that it may be searched.

3. **Contributory/Vicarious infringement was pled because user queries are not an authorized use of Plaintiff's content.**

Defendants' users are violating Plaintiff's copyright every time they view search results which contain portions of his registered works. Defendant Yahoo! is contributing to this infringement, and is liable for vicarious infringement as well. It acts with volition, and has total control over its users' conduct inasmuch as it could elect not to infringe on Plaintiff's content in the first place.

Legally, Yahoo! is no different from Napster in that it provides a platform for the massive infringement of Plaintiff's works, and encourages infringement by its users for the purpose of increasing traffic and advertising revenue derived from that traffic.

11

Defendant claims that its search engine merely acts in response to user queries, but those user queries are no more legitimate than Defendant's infringement. The content is protected and the only possible defense for its inclusion in the search results is fair use. Defendant's billion-dollar profiteering from search results also disqualifies it from DMCA protection. A host of lawsuits against a number of search engines and video websites are based on this exact profit motive, as was the successfully prosecuted <u>Napster</u> case. The user queries, automatic or not, have no right to exist without a finding of fair use.

Any trial on this factual issue, with proper expert testimony, will resolve in the favor of Plaintiff. He should not be short-circuited out of proving what is common knowledge to anyone with even a modicum of understanding of computer technology and the internet.

The acts of volition in question here are 1) Yahoo's creation of its search engine, including using Plaintiff's content, in part, to build its index of websites from which its search results are generated; and 2) allowing users to search for content it knew, or should have known, was infringing.

3. <u>**Yahoo! is not entitled to the DMCA safe harbor protection.**</u>

   a. <u>**The material is modified and not protected under 17 USC §512(b)(2)(A)**</u>.

   This statute requires that the material "is transmitted to the subsequent users...*without modification* to its content." The content is modified, as it is copied to Yahoo!'s computers, then made available *from Yahoo!'s computers* to its users. Yahoo! certainly has control over its own computers.

   b. <u>**Yahoo!'s search engine is not a system cache under 17 USC §512(b)**</u>.

   Defendants' gross misuse of the term *cache* to describe its search engine is an attempt to secure this safe harbor. A search engine is a ***third-party republisher of another***

***website.*** As this is a motion to dismiss, this factual averment by Plaintiff **must** be accepted as true, and if true, it entitles him to relief. This alone is sufficient to defeat the instant motion

### c. Defendant profits from the infringement and is not entitled to safe harbor protection under 512(c)(1)(B)

The relevant statue specifically states that is it required that the infringer ***(B) does not receive a financial benefit directly."*** One would think that the leaders in a billion-dollar industry would admit the profitability of that industry, but our search engine titans have pled, repeatedly, that no profits can be directly linked to the infringement. As this is a motion to dismiss, this averment also **must** be accepted as true, with Plaintiff given the opportunity to prove his claims in discovery. To the extent facts are required, Defendant's infringement is specifically designed to increase its internet traffic, for the purpose of using that traffic to increase advertising revenue derived from that traffic. Were this a stock market analyst meeting rather than a federal lawsuit, Defendant would be singing a much different tune, and has, in its own public-company filings touting search as a near-goldmine.

## C. The Breach of Contract/Negligence Claims Are Alternatively Pled.

To the extent that the other claims are not sustained, Plaintiff has pled breach of contract and/or negligent misrepresentation in the alternative, relating to Defendant's lack of adherence to the terms of use of his website, specifically that Plaintiff's works can be viewed only through that site.

Plaintiff is arguing an implied contract, or alternatively, a negligent misrepresentation by Defendant, by its action of viewing Plaintiff's content, that it would not republish or redistribute said content.

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| GORDON ROY PARKER, Plaintiff | |
|---|---|
| v. | CASE NO.: 07-2757 |
| Yahoo!, Inc., and Microsoft Corporation, Defendants | Judge: MAM |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify that I have served a copy of **Plaintiff's Response To Defendant Yahoo!'s Motion To Dismiss,** on both defendants in this action via **regular mail**, as follows:

**Corey Field**
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
**Attorney For Yahoo!**

**James D. Cashel**
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street, 28th Floor
Philadelphia, PA 19109
**Attorney For Microsoft**

FILED

This the 13th day of December, 2007

DEC 2007

_____, Clerk
By_____ Dep. Clerk

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 764-5487
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se