**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GORDON ROY PARKER, | ) | |
| | ) | |
| Plaintiff, Pro Se | ) | |
| | ) | Civil Action No. 07-2757 (MAM) |
| v. | ) | |
| | ) | |
| YAHOO!, INC. and | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF**
**YAHOO! INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................1

I.     Plaintiff's Infringement Claims Are Barred by the Doctrine of Issue Preclusion ................2

        A.  Plaintiff Raised the Identical Issue in *Parker v. Google*.........................................3

               1. Plaintiff's Amended Complaint in *Google* Contains Identical
                 Allegations to those in the Current Lawsuit......................................................3

               2. Plaintiff's Arguments in Opposition to Google's Motion to
                 Dismiss Support Issue Preclusion .....................................................................6

II.     Plaintiff Granted an Implied License for Use of His Copyrighted Works............................8

        A.  Conduct Can Create an Implied License ...................................................................8

        B.  Plaintiff Did Not Utilize Readily Available Opt Out Measures ...........................10

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agcaoili v. Wiersielis,*
    No. 07-3955, 2008 WL 1708922 (3d Cir. Apr. 14, 2008)........................................................2

*Bd. of Trs. Of Trucking Employees of No. Jersey Welfare Fund, Inc.-*
    *Pension Fund v. Centra,*
    983 F.2d 495 (3d Cir. 1992)..................................................................................................2

*Bradley v. Pittsburgh Bd. of Educ.,*
    913 F.2d 1064 (3d Cir. 1990)................................................................................................2

*Effects Assoc., Inc. v. Cohen,*
    908 F.2d 555 (9th Cir. 1990) ............................................................................................8, 9

*Federated Dep't Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981)...............................................................................................................2

*Field v. Google,*
    412 F. Supp. 2d 1106 (D. Nev. 2006)............................................................................ *passim*

*Hendrickson v. Amazon.com, Inc.,*
    298 F. Supp. 2d 914 (C.D. Cal. 2003) ................................................................................15

*I.A.E., Inc. v. Shaver,*
    74 F.3d 768 (7th Cir. 1996) ..................................................................................................9

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,*
    458 F.3d 244 (3d Cir. 2006), *cert. denied,* 127 S. Ct. 1878 (2007)......................................2

*Keane Dealer Servs., Inc. v. Hart,*
    968 F. Supp. 944 (S.D.N.Y. 1997) ..............................................................................10, 14

*Kinderstart.com LLC v. Google, Inc.,*
    No. C06-2057 JF, 2007 WL 831806 (N.D. Cal. Mar. 16, 2007)........................................11

*Kos Pharmaceuticals, Inc. v. Andrx Corp.,*
    369 F.3d 700 (3d Cir. 2004)................................................................................................11

*Lowe v. Loud Records,*
    No. Civ. A. 01-1797, 2003 WL 22799698 (E.D. Pa. Nov. 20, 2003), *aff'd,* 126 Fed.
    App'x 545 (3d Cir. 2005)................................................................................................9, 10

*MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.,*
    952 F.2d 769 (3d Cir. 1991)..................................................................................................9

*Melikian v. Corradetti,*
  791 F.2d 274 (3d Cir. 1986)..................................................................................2

*New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.,*
  654 F.2d 868 (3d Cir. 1981)..................................................................................2

*Oddo v. Ries,*
  743 F.2d 630 (9th Cir. 1984) ...............................................................................9

*Parker v. Google, Inc.,*
  04-CV-3918, 422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd* 242 Fed. App'x 833 (3d Cir. 2007), *cert. denied*, 128 S. Ct. 1101 (2008)....................................*passim*

*Perfect 10, Inc. v. CCBill LLC,*
  488 F.3d 1102 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007)..........................14

*Post v. Hartford Ins. Co.,*
  501 F.3d 154 (3d Cir. 2007)..................................................................................2

*Quinn v. Detroit,*
  23 F. Supp. 2d 741 (E.D. Mich. 1998)............................................................10, 14

*Sentinel Trust Co. v. Universal Bonding Ins. Co.,*
  316 F.3d 213 (3d Cir. 2003)..................................................................................2

*Wible v. Aetna Life Ins. Co.,*
  375 F. Supp. 2d 956 (C.D. Cal. 2005) .............................................................11-12

**RULES**

Fed. R. Evid. 201(b)...............................................................................................1

Restatement (Second) of Judgment § 13, cmt. g (1982)........................................2

**OTHER AUTHORITIES**

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A] ...............8

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.07 ...................14

# INTRODUCTION[1]

Yahoo! respectfully submits this supplemental brief in further support of its Motion to Dismiss, specifically as to two points.[2] First, Plaintiff is precluded from arguing that Yahoo!'s automatic cache system and display of Plaintiff's website in Internet search results constitutes copyright infringement. Plaintiff raised an identical claim in a prior lawsuit, and should not be allowed to relitigate the issue here merely because he was unsatisfied with the earlier result. Second, Plaintiff's conduct granted an implied license to Yahoo!. Having admittedly (and deliberately) not opted out of being included in Yahoo!'s search results, Plaintiff cannot claim, ex post, that Yahoo! directly infringed Plaintiff's impliedly licensed works. Yahoo! is not liable with regard to any of Plaintiff's claims.

# ARGUMENT

In preface, Yahoo! respectfully requests that the Court take judicial notice of the existence and contents of Plaintiff's Complaint, Amended Complaint, Opposition to Google's Motion to Dismiss and Plaintiff's Brief and Reply Brief to the Third Circuit, submitted into the record of *Parker v. Google, Inc.*, 04-CV-3918, 422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd* 242 Fed. App'x 833 (3d Cir. 2007), *cert. denied*, 128 S. Ct. 1101 (2008). The Federal Rules of Evidence provide that a court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). A court may take notice of prior judicial

---

[1] All defined terms herein have the same definition as that used in Defendant Yahoo!, Inc.'s Motion to Dismiss.

[2] Consistent with Yahoo!'s July 1, 2008 letter to the Court, Yahoo! focuses its challenge to Plaintiff's infringement claim to the issues of issue preclusion and Mr. Parker's failure to opt out, thus granting an implied license (Yahoo! reserves its volitional and DMCA arguments). For the reasons stated in Yahoo!'s initial memorandum, Yahoo! does not believe that Plaintiff has properly pled any of his claims.

proceedings. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1878 (2007); *see also Agcaoili v. Wiersielis*, No. 07-3955, 2008 WL 1708922, at *1 (3d Cir. Apr. 14, 2008) (judicial notice taken of a prior complaint filed by plaintiff for the purposes of determining *res judicata*).

## I. Plaintiff's Infringement Claims Are Barred by the Doctrine of Issue Preclusion

Plaintiff's claims of copyright infringement cannot stand because Plaintiff has already been given a full and fair opportunity to litigate this issue. Under the doctrine of issue preclusion, a claim must be dismissed if: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits;[3] (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.[4] *Bd. of Trs. Of Trucking Employees of No. Jersey Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992); *New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.*, 654 F.2d 868, 876 (3d Cir. 1981). Plaintiff's claims as

---

[3] As stated with approval by the Third Circuit, "Section 13 of the Restatement of Judgment (Second) provides that '. . . for purposes of issue preclusion . . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be given preclusive effect.'" *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 221-22 (3d Cir. 2003) (citing Restatement (Second) of Judgment § 13, cmt. g (1982)). Plaintiff's claims against Google in *Parker v. Google* were so resolved. The court dismissed Plaintiff's claim for direct copyright infringement, based upon both the USENET postings *and* Google's search engine operations, for failure to state a claim. *Parker v. Google*, 422 F. Supp. 2d at 496-98 ("Plaintiff has not stated a claim upon which relief can be granted based solely on Google's automatic system caching. We are satisfied that neither the automatic archiving of USENET messages and automatic caching of websites, nor the excerpting of passages from Plaintiff's website, constitutes direct infringement."). A dismissal for failure to state a claim acts as a final judgment on the merits, contrary to Plaintiff's protestations at oral argument. *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007). Plaintiff has undoubtedly received a final judgment on his claims regarding Yahoo!'s Internet search engine protocols.

[4] The Third Circuit has stated that a "party has been denied a full and fair opportunity to litigate only when . . . [the court's] procedures fall below the minimum requirements of due process as defined by federal law." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir. 1990); *see also Melikian v. Corradetti*, 791 F.2d 274, 277-78 (3d Cir. 1986) ([i]f a party is precluded from relitigating an issue with an opposing party, he is also precluded from doing so with another person unless he lacked a full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue). This is clearly not the case here.

raised and adjudicated in *Google* indicate that Plaintiff should be barred from raising the same claims now against new defendants.[5]

A.    **Plaintiff Raised the Identical Issue in *Parker v. Google***

Although Plaintiff's Complaint and Amended Complaint filed in *Parker v. Google* can be as verbose and muddled as the complaint filed in this action, it is clear that Plaintiff raised the very same issues of infringement against Yahoo! as against Google. In this litigation, Plaintiff alleges that the operation of Yahoo!'s Internet search engines, through the "storage [of his website] in [their] search results and Internet cache pages, and display in response to search queries" constitutes copyright infringement. (Lane Decl., Ex. 6 at ¶ 47). In his prior suit against Google, Plaintiff alleged copyright infringement based upon Google's automatic cache system, its Internet search results page, and its use of a USENET archive. As discussed below, although the single USENET issue in *Parker v. Google* is distinct, the remaining claims made by Plaintiff in his *Parker v. Google* Complaint are not merely similar, but are in fact *identical* to those made against Yahoo! in Plaintiff's Complaint. If Mr. Parker had brought this suit against Google, claiming copyright infringement for three publications not included in *Parker v. Google*, he would be subject to preclusion because the basis of this argument is identical. As such, he should be precluded from re-litigating the *Google* case against Yahoo!.

1.    **Plaintiff's Amended Complaint in *Google* Contains Identical Allegations to those in the Current Lawsuit**

Plaintiff's First Amended Complaint against Google, filed on October 22, 2004, alleges copyright infringement based upon Google's automatic cache system.[6] (Lane Decl., Ex. 2; App.

---

[5] Yahoo! focuses its arguments below on prong one, in light of the Court's comments at oral argument. (Lane Decl, Ex. 7 at 4:20-24) ("as I looked at the requirements for issue preclusion, the only one that seemed to me to raise issues for you -- the others were rather straightforward -- is whether we have an identical issue as the one in -- in the Google case.")).

A) (For the Court's convenience, attached hereto as Appendix A is a chart indicating the identical nature of Plaintiff's *Google* and *Yahoo!* filings). Although the Court was correct that Plaintiff did base *part* of his allegations in *Google* on Google's practice of caching USENET posts, Plaintiff also expressly alleged that Google's automatic cache system and website indexing constituted infringement of Plaintiff's copyrighted works. Within his factual allegations in *Google*, Plaintiff notes that "Google archives much of the Internet, which it presents to users in two ways: as search results, or as a full, copied ('cached') version of the website." (Lane Decl, Ex. 2 at ¶ 12).[7] Plaintiff's allegations are filled with references to Google's automatic caching system and "archiving" of websites.[8] (App. A). For example, in Count I, for Direct Copyright Infringement, Plaintiff states that "Google's continued archiving of Reason #6 constitutes a willful infringement of his copyright, or *alternatively*, the inevitable byproduct of Google's USENET archive, which provides for 'involuntary archiving' of USENET postings. Their initial archiving of Reason #6 . . . was a direct and proximate result of Google's conscious decision to 'archive the web.'" (Lane Decl., Ex. 2 at ¶ 133) (emphasis added). Plaintiff's infringement claim thus involved both Google's caching activity with regard

---

[6] Although Yahoo! recognizes that the *Parker v. Google* decision was based on the Amended Complaint (and addresses that Complaint herein), Parker's claims included automatic caching and the search engine from the very beginning of the suit. In Plaintiff's initial Complaint in *Google*, he expressly claimed that "Google's archiving of Reason #6 constitutes a willful infringement of his copyright, or *alternatively*, the inevitable byproduct of Google's USENET archive, which provides for 'involuntary archiving' of USENET postings, including those [sic]." (Lane Decl., Ex. 1 at ¶ 87) (emphasis added). In addition, Plaintiff included as Count III a specific claim of copyright infringement based on Google's "Web Search Engine." (*Id.*, ¶ 102-108). Within this claim Plaintiff "aver[red] that Google's Internet search engine and cache infringe upon Plaintiff's copyrighted works . . . ." (*Id.*, ¶ 103).

[7] Plaintiff goes on to admit that Google, like Yahoo!, "will not publish its cached version of a site if the site publisher specifically makes that request . . . ." (Lane Decl., Ex. 2 at ¶ 12).

[8] For whatever reason Mr. Parker uses "archiving" in place of "caching" throughout his Amended Complaint, but is clearly referring, for example, to Google's automatic caching process, which is functionally identical to that used by Yahoo!. Federal courts have previously recognized that the search engines run by Google, Yahoo! and Microsoft all function identically for legally relevant purposes. *See, e.g., Field v. Google*, 412 F. Supp. 2d 1106, 1111, n.2 (D. Nev. 2006) ("The three most popular search engines – Google, Yahoo!, and MSN – all display 'Cached' links with their search results, and operate them identically"). As such, any copyright infringement claim based on the activity of a Yahoo! or Microsoft search engine should not be factually or legally distinct from the same claim brought against Google.

4

to USENET and with regard to the Internet search and cache function. Plaintiff's allegations include direct reference not only to Google's archiving of USENET posts but also to Google's automatic caching of the Internet as a whole. Were Plaintiff asserting the same claim – that the alleged USENET violation was the extent of the infringement – there would have been no need to include separate allegations related to Google's general "archiving," or caching, and Google's "USENET archive."

In the *Google* case, Plaintiff also expressly alleged that Google's use of portions of text from Plaintiff's website on a search results page constituted direct copyright infringement. Plaintiff stated that "[e]ach time an excerpts [sic] from Plaintiff's website is returned in Google's search results, that it constitutes a separate act of direct infringement by Google . . . ." (*Id.* at ¶ 136). Plaintiff's claim is functionally identical in the current case: "A wholly separate act of infringement of each registered work occurred when . . . Defendant copied, in their entirety, all three of Plaintiff's registered works, for storage in its search results and Internet cache pages, and display in response to user queries." (Lane Decl., Ex. 6 at ¶ 47).[9]

Even Plaintiff's Prayer for Relief in *Google* demonstrates that the claims are the same: Parker expressly requested that the court grant injunctive relief "prohibiting Google from continuing its 'opt out' copyright policy, and requiring it to obtain express permission of the copyright holder *prior to including any website in its cache or search results*;" and "prohibiting Google from returning *any search results from its web* or USENET archives for the terms 'Gordon Roy Parker,' 'Gordon Parker,' or 'Snodgrass Publishing Group . . . .'" (Lane Decl., Ex. 2 at 71) (emphasis added). Each instance of requested relief seeks redress specifically for Google's alleged infringement occasioned by the caching and display of Plaintiff's website.

---

[9]  Plaintiff's contributory and vicarious copyright infringement claims are also identical in their inclusion of automatic caching and search results as the basis for relief. *Compare* (Lane Decl. Ex. 2 at ¶¶ 146, 149, 156-162 with Lane Decl. 6 at ¶¶ 59-65; *see also* App. A).

In the *Google* Complaints and the current Complaint, Plaintiff has, without any doubt, alleged infringement with regard to cache operations and search results.

### 2. Plaintiff's Arguments in Opposition to Google's Motion to Dismiss Support Issue Preclusion

Further supporting the identical nature of the claims, Plaintiff raised arguments regarding Google's use of his website in automatic caches and search results (not simply USENET) in his response to Google's motion to dismiss. As in his Amended Complaint, Plaintiff states that Google has structured its search engine such that its search results include any website or USENET posting that includes a particular term or name. (Lane Decl., Ex. 3 at 1-2, 4). Plaintiff again claims that Google has "committed direct copyright infringement in its own right by making the infringed posting available on its website, *where it turns up in search results* . . . ." (*Id.* at p. 7) (emphasis added).[10] In fact, Plaintiff includes an entire section in his Opposition entitled "Google's Internet Cache" and further accuses Google of "trespass[ing] on Plaintiff's intellectual property rights in several ways: *its cache and archiving* of copyright violations and direct infringements, and *its search results* return verbatim snippage [sic] from Plaintiff's website . . . ." (*Id.* at p. 8) (emphasis added).

Subsequent statements in Plaintiff's Opposition provide yet more support for the conclusion that Plaintiff has brought the same claims against Yahoo! and Microsoft that he brought against Google four years ago: "Google's website does far more than just passively archive the web" (*Id.* at p. 14); "the acts for which Plaintiff has alleged as negligent *involve Google's web practices and the construction of its search engine* . . . ." (*Id.* at p. 19) (emphasis

---

[10] The *Google* court clearly understood Mr. Parker's claims to include both Internet search and cache allegations and USENET allegations. The court noted in its decision that "Parker . . . claims that when Google produces a list of hyperlinks in response to a user's search query and excerpts his website in that list, Google is again directly infringing his copyrighted work." *Parker*, 422 F. Supp. 2d at 496. The court went on to conclude that Google could not be liable for infringement based upon the automatic caching of Mr. Parker's website. *Id.* at 496-500.

added); "Plaintiff has specifically alleged that it is Google, and not these third parties, that creates most of the harm." (*Id.* at p. 22).

Plaintiff continued to argue that Google's indexing and caching of his website constituted infringement in his brief and reply brief to the Third Circuit. (Lane Decl., Exs. 4, 5). Plaintiff again claimed that his website "is routinely copied by Google for the purpose of building its search engine . . ." and that "Google maintains a 'web cache' which is a literal and entire copy of websites on the Internet. Internet users must 'opt out' of this cached archive by instructing Google not to archive it, either electronically or by direct communication." (Lane Decl, Ex. 4 at 3-4). Plaintiff also argued that "Google makes a duplicate copy of the entire content of each Web page it crawls for indexing and then keeps the copy it created . . ." (Lane Decl., Ex. 5 at 12). Indeed, Plaintiff continued to separate his USENET and web search claims, stating that "[t]he lower court simply erred when it treated Google as a transitory provider with regard to *both* USENET *and* its web cache/search engine." (Lane Decl., Ex. 4 at 14) (emphasis added). Further, Plaintiff argued that "the act of infringement . . . occurs when Google indexes a website *or* a USENET posting . . . ." (Lane Decl., Ex. 5 at 14) (emphasis added).

Simply because Plaintiff's copyright claims against Google failed, does not mean he should be allowed to try again. Plaintiff has raised identical claims of infringement arising from a search engine's cache operations and display of Plaintiff's website as a portion of Internet search results. Plaintiff previously failed to state a claim of direct copyright infringement in *Parker v. Google*, and it would be grossly unjust to give the same claim, argued in the same manner, greater credence now. Because he has been given a fully adequate opportunity to litigate his copyright claims in a prior litigation, Plaintiff should be estopped from relitigating his copyright claims here.

## II. Plaintiff Granted an Implied License for Use of His Copyrighted Works

Plaintiff, through his allegations and admitted conduct in relation to Yahoo!, has granted Yahoo! an implied license to display portions of his website and provide links to cached versions of Plaintiff's website. Plaintiff placed his works on the Internet without restricting access to his copyrighted material, and did not utilize any of the various common, easy to implement and widely known methods or measures available to prevent an Internet search engine from crawling, indexing or caching his website. (Lane Decl., Ex. 6 at ¶¶ 4, 24, Exs. 9-12). Plaintiff's conduct has thus created an implied license by which Yahoo!'s crawling, indexing and display of Plaintiff's website, in both hyperlink and cached format, cannot constitute infringement of any kind.

### A. Conduct Can Create an Implied License

A license is an accepted bar to a claim of copyright infringement, and an owner of a copyright may grant a non-exclusive license expressly or impliedly through his own conduct. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A], at 10-36 (1989) (hereinafter "Nimmer")). In *Effects*, a movie studio and special effects company entered into an oral agreement by which the special effects company would produce several shots for a particular film. Unhappy with the resulting shots, the movie studio did not make full payment to the special effects company, but included the footage in its film. The Ninth Circuit found that, although the copyright to the shots still belonged to the special effects company, the oral agreement created a valid implied license for the movie studio to utilize any special effects created for and given to the studio. *Effects*, 908 F.2d at 558-59. The court noted that the plaintiff's conduct created the implied license, in that the plaintiff created the work, provided the work to the defendant and expected it to be

8

distributed.[11] *Id.* at 559. Plaintiff in this action has done exactly that. Plaintiff created his

website, with the intent that the site be made available to users through the Internet. By failing to

utilize opt out procedures, discussed below, Plaintiff made his website available to Yahoo!.

Finally, Plaintiff must have had some expectation that his work would be distributed, as he

provided the work online free of charge to any visitor, and did not opt out, require any

registration, membership or acceptance of license terms. (Lane Decl., Ex. 6 at ¶ 11).

Since the decision in *Effects*, other courts have found that consent to an implied license

may be given "in the form of mere permission or lack of objection." *I.A.E., Inc. v. Shaver*, 74

F.3d 768, 775 (7th Cir. 1996);[12] *Field*, 412 F. Supp. 2d at 1115-16; *but cf. MacLean Assocs., Inc.*

*v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778-79 (3d Cir. 1991).[13] In *Lowe v.*

*Loud Records*, the court found that the plaintiff, who had created a musical work, granted an

implied license to use or incorporate the work to defendants through his conduct. *Lowe v. Loud*

*Records*, No. Civ. A. 01-1797, 2003 WL 22799698, at *4-6 (E.D. Pa. Nov. 20, 2003), *aff'd*, 126

Fed. App'x 545 (3d Cir. 2005). Plaintiff admitted to giving his work to the defendants with the

expectation that they would incorporate the work into their own musical compositions. *Id.*

---

[11] The Ninth Circuit did note that a use exceeding the scope of the implied license would not provide protection from a direct infringement claim. *Effects*, 908 F.2d at 558-59 (citing *Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir. 1984). Yahoo! has clearly not exceeded any implied license granted on behalf of Plaintiff, however, as Yahoo!'s use, through inclusion in search results and automatic caching, is consistent with Plaintiff's intent that his works be viewed and downloaded by users of the Internet.

[12] *Shaver* involved the use of plaintiff's architectural drawings for defendants' development of a regional airport, following plaintiff's withdrawal from the project. *Shaver*, 74 F.3d at 777-78. Although the factual scenario is not analogous to the current situation, the Seventh Circuit did note that several nonexclusive factors may be instructive in determining whether an implied license exists. *Id.* at 775-76 (citing *Effects*, 908 F.2d at 558-59). Included in this list are the request of a work by the putative licensee, delivery of a work by the copyright holder and an intent that the work should be distributed. *Id.*

[13] The Third Circuit stated that "[t]he undisputed facts indicate that Mercer had a nonexclusive implied license to use JEMSystem in furtherance of its business relationship with its client, NYSE." *MacLean*, 952 F.2d at 779. However, the court continued on to overturn the district court's grant of a directed verdict because of facts suggesting that the defendant had stepped beyond the bounds of the limited implied license. *Id.* This is not the case here. Any implied license granted through Parker's conduct extends to the limited use made of his website by Yahoo!, namely its use as the result of user-generated searches and its automatic caching to promote faster Internet searches.

Because the plaintiff affirmatively placed his work in a position to be used by others, the Eastern District held that he could not then challenge that expected use. *Id.* If a plaintiff is aware that his work is being used by the defendant and remains silent or encourages such use, an implied license exists shielding the defendant from copyright infringement. *Field*, 412 F. Supp. 2d at 1117; *Quinn v. Detroit*, 23 F. Supp. 2d 741, 749-50 (E.D. Mich. 1998); *Keane Dealer Servs., Inc. v. Hart*, 968 F. Supp. 944, 946-47 (S.D.N.Y. 1997).[14] Plaintiff remained silent about his desire to restrict Yahoo!'s access to his website, and thus impliedly licensed the contents for use by Internet search engines, including Yahoo!. Moreover, Plaintiff, due to his position as an Internet publisher and his former litigation against Google, was well aware that Yahoo! would not restrict its searching or caching of Plaintiff's website without notification. Armed with this knowledge, Plaintiff still chose to remain silent, effectively encouraging Yahoo! to continue providing links to Plaintiff's website in its search results and automatically caching Plaintiff's website.

**B.     Plaintiff Did Not Utilize Readily Available Opt Out Measures**

Plaintiff has, through his admitted and deliberate conduct, granted an implied license to Yahoo! to crawl, index and cache Plaintiff's website. (Lane Decl., Ex. 6 at ¶ 4, 24). By permitting users to access his website free of charge, and without password or log-in protection, Plaintiff has, in effect, delivered his works to the Internet at large. Plaintiff could have utilized several readily available, and easily implemented, techniques that would have prevented Yahoo! from providing a link to a cached version of Plaintiff's website, and prevented Yahoo!'s

---

[14] Both *Quinn* and *Keane* involve implied licenses granted by former employees for the use of computer software developed during their employ. *See Quinn*, 23 F. Supp. 2d at 743; *Keane*, 968 F. Supp. at 946. Upon leaving their respective employment, both plaintiffs were aware that their former employers continued to utilize software to which the plaintiffs held the copyright. *Id.* As such, both the Eastern District of Michigan and the Southern District of New York held that, by failing to object to the use, the plaintiffs had granted an implied license to their works. *Quinn*, 23 F. Supp. 2d at 749-50; *Keane*, 968 F. Supp. at 946-47.

automated web crawler from crawling and indexing Plaintiff's website.[15] Like the plaintiff in

*Field v. Google*, Mr. Parker has flatly admitted that he was aware of the freely available

technology that allows a website to block the indexing and display of its content by an Internet

service provider. (Lane Decl., Ex. 6 at ¶ 24); *Field*, 412 F. Supp. 2d at 1116-17.[16] Plaintiff's

failure to engage in the available opt out policies, notably his failure to include a robots.txt file or

appropriate meta-tag instruction in his HTML code, suggest that Plaintiff intended that his works

be distributed to any interested user.

As admitted by Plaintiff, Yahoo! accepts and abides by "opt out" procedures, such as

robots.txt files and meta-tags, available to those website owners wishing to exclude their sites

from Yahoo!'s search engine results or automatic caching process. (*Id.*) In this regard, Yahoo!

requests that the Court take judicial notice of several webpages. These webpages are readily

available on the Internet and are capable of accurate and ready determination, whether created

and maintained by Yahoo!, Mr. Parker or others. Courts in the Third Circuit have taken judicial

notice of the contents of a website previously. *See, e.g., Kos Pharmaceuticals, Inc. v. Andrx

Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (court takes judicial notice of records contained on

the Patent & Trademark Office website). Other federal courts have also been inclined to take

judicial notice of websites, including webpages explaining how a user may interact with an

Internet service provider. *See Kinderstart.com LLC v. Google, Inc.*, No. C06-2057 JF, 2007 WL

831806, at * 21, n.20 (N.D. Cal. Mar. 16, 2007) (court granted Google's request for judicial

notice of webpage printouts); *see also Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965-66

---

[15] As discussed briefly at oral argument, robots.txt is a simple file inserted into a particular webpage that allows a website owner to prevent Yahoo!'s web robot from searching, indexing or caching the website. (Lane Decl., Ex. 7 at 37:24-38:4).

[16] There is not, as Plaintiff argues, any right to "opt out" granted simply by registering his work with the Library of Congress. (Lane Decl., Ex. 6 at ¶ 24). Nor did Plaintiff cite to any of the "volumes of precedent" that allegedly reject what he refers to as "opt-out copyright protection." (*Id.*)

11

(C.D. Cal. 2005) (court granted judicial notice of Amazon.com webpages and the webpage for the American Academy of Allergy Asthma and Immunology, noting that they are the proper subject of judicial notice).

Plaintiff's assertion that the robot.txt is difficult to use or potentially ineffective is flatly false. A robots.txt file can be easily inserted into a website to prevent a web search engine from indexing the site and/or providing a cached link on a search results page. (Lane Decl., Ex. 7 at 37:24-38:10, Ex. 12). Making use of robots.txt does not require any special knowledge of computer programming, merely the ability to follow instructions posted both on the robotstxt.org webpage and, as noted below, Yahoo!'s own help pages.

Further, as the Court can readily determine, Yahoo! provides easily accessible assistance to website creators searching for information on how Yahoo! interacts with websites. (Lane Decl., Ex. 8). This support site is three mere mouse-clicks away from the Yahoo!.com home page. A user can, with a single mouse-click, access Yahoo!'s web crawler support page, which provides information on how Yahoo! crawls, indexes and caches websites. (Lane Decl., Ex. 9). Hyperlinked on this page are two questions relevant to Plaintiff's claims: (1) How do I prevent my site or certain subdirectories from being crawled?; and (2) How do I keep my page from being cached in Yahoo! search? (Lane Decl., Exs. 10, 11). Yahoo! offers detailed instruction on the use of robot.txt, its benefits and how to properly implement opt out measures. (*Id.*) Contrary to Plaintiff's statements at oral argument, Yahoo! does not provide opt out procedures solely for caching. (Lane Decl., Ex. 7 at 24:2-6). As is clear from the Yahoo!.com website, robots.txt files may be utilized to prevent Yahoo! from returning cached pages as part of a search query *and* to prevent Yahoo! from indexing a website entirely, thus preventing its appearance as a search query result. (Lane Decl., Exs. 10, 11).

As discussed directly on Yahoo!'s support pages, robots.txt may be used to prevent Yahoo!'s web crawler from crawling and indexing a particular webpage. (Lane Decl., Ex. 10). Robots.txt may also be used to prevent Yahoo! from displaying a cached version of a webpage as part of search results. (Lane Decl., Ex. 11). Finally, Robots.txt may be used to allow only certain portions of a website to be crawled, indexed and/or cached. (Lane Decl., Ex. 10).

Plaintiff clearly had a variety of opt out possibilities, none of which are as involved or difficult as Plaintiff contends. (Lane Decl., Ex. 7 at 42:8-18). For example, Plaintiff could have simply included a "NOARCHIVE" robots.txt command and Yahoo! would not have displayed cached links as part of any search results. (Lane Decl., Ex. 11). Alternatively, Plaintiff could have utilized the "NOINDEX" robots.txt, thus preventing Yahoo! from including his website in any search results. (Lane Decl., Ex. 10). Finally, Plaintiff could have allowed Yahoo! to crawl his initial page, thus allowing his website to appear in search results, but instructed Yahoo! not to crawl any sub-pages, meaning that none of Plaintiff's copyrighted text could have appeared on a search results page. (Lane Decl., Ex. 10). In addition to the multiple options available directly from Yahoo!, Yahoo!'s website provides a hyperlink to "The Web Robots Pages," an informative website that includes even greater detail about the use and impact of robot.txt. (Lane Decl., Ex. 12). The measures described on Yahoo!'s help pages would have prevented the alleged infringing acts. Instead, though well aware of the impact of his decision, Plaintiff chose not to utilize any robots.txt file.[17]

---

[17] Plaintiff has previously utilized the procedures outlined in the DMCA to request that both Google and Yahoo! remove particular websites from their caches. (Lane Decl., Ex. 2 at ¶¶ 32, n.11, 68, n.20) (As stated in his *Google* Amended Complaint, in 2004, Parker issued DMCA takedown notices to Google, Yahoo! and NamesDirect for the "RayFAQ" website). Instead of utilizing the various opt out possibilities, Plaintiff has chosen to argue that opting out, whether through technological methods such as the use of robots.txt, or through the procedures codified in the DMCA, is per se invalid. (Lane Decl., Ex. 7 at 42:16-18).

Indeed, much like the plaintiff in *Field v. Google*, it is likely that Plaintiff welcomed the attention from Internet search robots as a means of manufacturing his copyright infringement claims. *See Field*, 412 F. Supp. 2d at 1117. In *Field*, the plaintiff chose not to include robots.txt files and meta-tags, leading the court to determine that he had "made a conscious decision to permit" Google's archiving and indexing of his website. *Id.* at 1116 (citing *Keane*, 968 F. Supp. at 947). Plaintiff, by his own actions, ensured that Yahoo! would crawl, cache and index his website. If a plaintiff induces the alleged infringement, he is estopped from asserting any copyright claims. *See Quinn*, 23 F. Supp. 2d at 753 (Plaintiff is estopped "if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction") (internal quotation marks omitted, citing 4 Nimmer § 13.07). Plaintiff admittedly affirmatively spurned all means by which he could have opted out of Yahoo!'s webcrawler activities, whether to set up a lawsuit or drive traffic to his site.

Finally, Plaintiff's opt out refusal would place the burden of policing infringement on the Internet service provider ("ISP"), not the copyright holder. (Lane Decl., Ex. 7 at 41:6-14). Plaintiff's argument is contradicted by the applicable case law. "The DMCA notification procedures place the burden of policing copyright infringement – identifying the potentially infringing material and adequately documenting infringement – squarely on the owners of the copyright." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007). An ISP cannot feasibly, and in fact is not required to, take inventory of every piece of information that may travel through its service. To do so would severely limit the protections provided ISPs by the DMCA, in addition to being completely impractical. As noted by the Central District of California, "a service provider need not monitor its service or affirmatively seek facts indicating infringing activity . . . . To allow a plaintiff to shift its burden

to the service provider would be contrary to the balance crafted by Congress." *Hendrickson v.*
*Amazon.com, Inc.*, 298 F. Supp. 2d 914, 916 (C.D. Cal. 2003) (internal citations omitted).

By his conduct, Plaintiff has granted an implied license to Yahoo! for the use of including
his website in search results and automatically caching his website. It is utterly impractical for
Internet search engines to affirmatively contact the owner of each webpage in existence seeking
a license to provide a link to the page in its Internet search engine.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety with
prejudice.

Respectfully submitted,

/s/ Corey Field
Lynn E. Rzonca (Pa. ID. No. 86747)
Corey Field (Pa. ID. No. 88650 (cf 2939)
BALLARD SPAHR ANDREWS & INGERSOLL
LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
TEL: (215) 665-8500
FAX: (215) 864-9120
rzoncal@ballardspahr.com
fieldc@ballardspahr.com

-and-

Thomas P. Lane (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
tlane@winston.com

*Attorneys for Defendant Yahoo!*

Dated: New York, New York
     July 18, 2008

NY:1187980.7