## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| **GORDON ROY PARKER,** | |
|---|---|
| Plaintiff | |
| v. | **CASE NO.:** 07-2757 |
| | **Judge: MAM** |
| **Yahoo!, Inc., and Microsoft Corporation,** | |
| Defendants | |

## ORDER

**AND NOW,** this ____th day of _____, 2008, in consideration of **Defendants Yahoo and Microsoft's Motions To Dismiss,** the motions are <u>denied</u>.

SO ORDERED.

_____
J.

| **GORDON ROY PARKER,** | |
| --- | --- |
| Plaintiff, | |
| | |
| v. | **CASE NO.:** 07-2757 |
| | **Judge: MAM** |
| **Yahoo!, Inc.,** and **Microsoft Corporation,** | |
| Defendants | |

## PLAINTIFF'S CONSOLIDATED SUPPLEMENTAL BRIEFING

### I. INTRODUcTION

Plaintiff commends all defense counsel on its extremely well-constructed arguments, though built on imperfectly constructed factual premises. Plaintiff freely admits that, prior to this action, he had not been schooled on the issue of "issue preclusion," assuming instead, as most pro-ses most certainly do, that the courts are driven solely by precedent and equal justice, rather than the apparently additional consideration of "precedent" that is applied to an individual plaintiff due to that plaintiff's litigation history.

Plaintiff is hardly "wet behind the ears" when it comes to legal terminology, procedure, or precedent. He has worked for a total of many years, for a number of law firms, big and small, in multiple states, and in most areas of civil practice. This court's parent cited his "abilities as a writer and presenter of arguments" in Parker v. University of Pennsylvania (I) (E.D.Pa. #02-567), to support a finding that Plaintiff was not prejudiced by the lack of appointed counsel in a Title VII case where the other side was represented by Microsoft's local counsel in this case.

In Parker v. University of Pennsylvania (II) (E.D.Pa #05-cv-4874), Plaintiff defeated a *res judicata* motion that dealt with claim preclusion, because the same two parties were

involved. He researched his opposition to that motion quite thoroughly, defeated the motion, yet still was blindsided by the concept of "issue preclusion." Plaintiff is not an attorney, and even if he were, unless this were raised in his practice, even a license to practice law may not have prevented this occurrence.

This action was not filed as an attempted "second bite of the apple" on the copyright issues, but rather a first, an attempt to resolve precedent in this circuit on issues which were dodged by the court in Parker v. Google. It was filed entirely in good faith, as the unsettled nature of internet copyright law has led to similar actions to Plaintiffs having been filed by no less titans than Viacom International, Inc. et al. v. YouTube, Inc. et al, S.D.N.Y. #07-2103, and the two lawsuits by the Authors' and Publishers' Guilds against Google in New York. All of these lawsuits deal with the same, unresolved issues, for which there is still no binding precedent in the Third Circuit.

The arguments concerning the copyright issues in this case have been fleshed out exceptionally well in the record, via the pleadings and the oral arguments. The court has sent this motion into "overtime" by asking both sides to supplement a record which is already quite rich. This has required Plaintiff to expend considerable labor that could better be spent on his business, in the hope that the judiciary will, once and for all, establish lasting boundaries for internet copyright, and, now, issue preclusion itself.                    To the extent that issue preclusion is defeated, Plaintiff directs the court to his previous pleadings and to the oral argument transcripts, and will attempt to further clarify his positions there. The heart of this brief, however, addresses issue preclusion itself, and the extent to which it should function as binding precedent over a single Plaintiff, when, absent the preclusion, the Plaintiff would prevail.

## II. LEGAL STANDARD

### A. ISSUE PRECLUSION/COLLATERAL ESTOPPEL

Issue preclusion bars re-litigation of an issue identical to that in a prior action. See Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). "The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995) (citations and quotations omitted).

The Supreme Court has attached significant importance to assuring the nonmovant has had a "full and fair opportunity to litigate" the claim below. See Poyner v. Murray, 508 U.S. 931 (1993). (Emphasis Added).

### B. IMPLIED LICENSE/OPT-OUT COPYRIGHT. There is absolutely no precedent which supports Defendants' claims that its opt-out copyright protocol (robotx.txt) is legally sufficient, or its claim of implied license based on Plaintiff's conduct. As Plaintiff has already argued, the only legitimate legal ground upon which this court could justify the existence of internet search engines, as they currently exist, is fair use, an affirmative defense not suited for a motion to dismiss.

## III. ARGUMENT

In the fictional case Betts v. Wainwright (slightly more relevant to this action than Plessy v. Board of Education of Topeka, Kansas), the Supreme Court ruled that Betts was issue-precluded from suing Wainwright and appealing a conviction obtained against him for lack of appointed counsel, due to issue preclusion stemming from the ruling in Betts v. Brady. Shortly thereafter,

Gideon v. Wainwright would overturn Betts v. Brady, since Gideon was not issue-precluded from arguing that the lack of appointed counsel fatally prejudiced his criminal trial.

It should be noted that Plaintiff elected not to "retry" an even more ripe issue that was left unresolved by this court. In Parker, the Third Circuit upheld the dismissal of Plaintiff's defamation claims over one of the largest collections of attempted character-assassination ever assembled, one which is similar to the level of defamation towards Plaintiff which appears in Defendants' search engines. The reason Plaintiff elected not to appeal is that, while his "spur" issue had not been resolved, there is Third-Circuit precedent for Seduction 230 immunity, namely Green v. AOL, but in that case, AOL was capable of identifying its user for Green to sue, while in Parker, the source of the defamation was anonymous.

Defendants' concept of issue preclusion would appear to give Google a green-light to ignore all defamation concerning Plaintiff, even as another case – the famed "Autoadmit" case involving two female Yale law students – raises the similar, unresolved issue of whether or not Section 230 immunity is proper if the source of the third-party defamation is anonymous. Legal scholars, now inspired by sympathetic victims, are talking about "defamation takedown notices" as a solution, and this may very well become precedent or law, yet, for the same reasons argued here, that precedent would have to be set by someone else.

Should this court rule in favor of Plaintiff's arguments for issue preclusion, he intends to, rather than sue Defendants in England, where he would win easily, amend this complaint to include a defamation claim. The exhibited complaint in Parker from Defendants' supplemental pleading makes the reason for this self-evident.

A. Issue Preclusion Should Be Defeated Due To The Lack Of Full And Fair Litigation In The Precluding Action.

As Gerry Spence might have written, were he still alive and representing Plaintiff:

I give you similar issues brought by the same party or privy [first prong].[1] I give you a valid and final judgment [third prong]. I give you that the determination in the first case was essential to the final judgment. What I do not give you here, but ask the court for instead, is the opportunity to "fully and fairly litigate" the copyright issues raised in this lawsuit [third prong]. I imbue this court to strengthen justice by avoiding a retread down the unjust path laid down by Betts v. Wainwright. To trample the rights of a single copyright owner without also trampling all identically situated copyright owners in the same step would be anathema to the principles of equal justice.

Plaintiff was astounded by the far-reaching nature of issue preclusion as it has evolved in the courts. Issue-preclusion precedent was counterintuitive to Plaintiff, as it violates his every sense of justice and fair play, as would forfeiting the Yankees against the Tigers because they had already lost with the same starting pitcher against the Red Sox. The concept of blind-justice is construed by Plaintiff as meaning that cases are decided on their own merits, not the merits of unrelated actions, or actions with improper or unrelated outcomes.

While emotional appeals to a general sense of fair play are all well and good, Plaintiff needs a legal basis for defeating the instant motion. He has one, namely that the precluding action, Parker v. Google, was not fully and fairly litigated. Plaintiff has already argued, in hearing, that issue preclusion should not apply to pro-se litigants (even experienced paralegals), so he will not reinvent that wheel here. Instead, he will treat the supposedly precluded issues as if they were binding precedent from this court's parent or grandparent.

Put simply: if precedent can be overturned, issue preclusion can be defeated for identical reasons. In this case, there is no precedent to overturn, and Plaintiff argues that the absence of such precedent leaves the issues in the current action as those of first-impression, and thus fair-game for resolution by any Plaintiff, even an "issue precluded" one. This is not to extend the argument to claim preclusion, as that is a separate part of the *res judicata* body for which preclusion can be more easily justified.

---

[1] Plaintiff "gives" these points only for purposes of this specific issue-preclusion argument. He preserves all previous arguments that we are not dealing with the same facts, or any other grounds raised in previous pleadings.

## Federal Rule 11(b)(2)

Federal Rule 11(b)(2) is satisfied if a complaint when:

> the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law (Emphasis Added).

Issue preclusion is "existing law" and is therefore fair game for attempted reversal under Rule 11(b)(2), as long as the attempt is nonfrivolous. The legal basis for an attempt to reverse in this situation would be that any existing law which should be reversed cannot be said to have been fairly litigated, for purposes of the precluded action. In situations where the precluding action was properly ruled upon, but time has called for a reversal, even if the precluding action was fairly litigated at that time, the preclusion should be subject to the same "test of time" which applies to any binding precedent or existing law, or issue of first impression.

If one treats issue preclusion the same as precedent preclusion, the grounds for defeating it become clear 1) change in controlling law due to time or higher precedent; 2) misconstruction of facts by the precluding court; 3) misapplication of the law by the precluding court; or 4) miscarriage of justice. All of these grounds for defeating issue preclusion fall under the "fully and fairly litigated" doctrine, as outlined previously.

Even if this court agrees with the arguments above, it still has to find a separate reason for "overturning" the "issue preclusion precedent." These grounds were explored in exceptional depth for a motion to dismiss, to the point where this case appears almost ready for summary judgment or trial. The parties do not dispute the facts, but rather how the law should be applied to those facts. To that extent, this court took serious issue with the precluding case, Parker v. Google, as is painfully obvious from the record.

Plaintiff filed this case for the very reason this court should defeat the issue-preclusion argument: there is no binding precedent in the Third Circuit concerning search engines and

copyright. There is general copyright precedent cited by the precluding court: i.e., that where there is no volition, or no financial benefit, there can be no recovery for copyright infringement, but that raises the same misconstruction-of-fact arguments that one would use when appealing any precedent.

Had this court agreed with the findings of fact in the precluding case, both the oral arguments and these supplemental pleadings would have been moot. This court holding oral arguments on these issues should be given identical weight to an appellate court holding oral arguments to entertain overturning or establishing precedent: i.e., this case should now be treated as an "issue appeal" of the precluding case, which is, as evidenced by the record, nonfrivolous, even if the court ultimately rules against Plaintiff. As noted by the bench during oral arguments, the rulings in the precluding case were nonprecedential, and no other binding authority existed to force this court's hand. Had a nonprecluded "Gideon" brought this case under identical circumstances, it would be fair game for establishment or modification of precedent, and this "Betts" Plaintiff should be afforded identical due process and opportunity to overturn. The existence of true circuit precedent would have bound this court to find judgment as a matter of law in favor of the defendants, yet that is not the case here. A "Gideon" Plaintiff would correctly argue the lack of binding precedent and the attempt to establish same.

## Should This Court "Overturn" The Precluding Case?

The lack of otherwise binding precedent leaves this court free to defeat the issue-preclusion arguments on the grounds that, for the purposes of issue preclusion, that the issues were not "fully and fairly litigated." Still, this does not mean the court will digress from the precluding case, only that it may. What this does mean is that the issues of volition and profit as they relate to the DMCA, along with all underlying findings of fact in the precluding case, are fair game for revisitation. Plaintiff now revisits:

## Misconstruction Of The Facts.

During oral arguments, this court expressed considerable doubt regarding the factual findings in Parker v. Google. It did not see search engines as "copy machines," nor did it rubber-stamp the Parker court's findings regarding the term "cache." Plaintiff has already argued that a system cache is not the same thing as an internet cache, with the former representing "dumb pipes" that are an essential conduit for the authorized transfer of copyrighted information.

As Plaintiff stated in oral arguments, a system cache is authorized and essential to the transfer of information over the internet, while an internet cache is not. The example Plaintiff gave would occur with someone who views the e-books on Plaintiff's website.

| Entity | Role | Authorized? |
|---|---|---|
| Plaintiff's website | Hosts the content at direction of Plaintiff. | Yes |
| Plaintiff's webhost | Hosts copy of content for authorized distribution to readers of Plaintiff's e-books. | Yes |
| Reader's ISP | Holds temporary, in-transit copy of Plaintiff's e-book, for distribution only to authorized users. Does not sell ads or republish the books on its own website. | Yes |
| Reader's Personal Computer System Cache | Retains an authorized copy of Plaintiff's e-books in its system cache for the purpose of not having to re-download the book from Plaintiff's website should the reader revisit the site. This also saves bandwidth for Plaintiff and reduces his hosting costs. | Yes |
| Search Engine "Cache" | An illegal, third-party reproduction of Plaintiff's e-books which is not authorized by Plaintiff, and which is totally irrelevant to the delivery of the e-book between Plaintiff and his authorized individual readers. The "cache" is republished externally, and advertising tied directly to the republication is sold, with no revenue to Plaintiff. | NO!!!!!! |

An analogous situation would occur if TV Guide "cached" every other network on its own airwaves, sold its own ads to those who watched the shows, and kept all of the revenue. The "cache" the Defendants call their infringement tool is but a thief, and bears absolutely no resemblance to the type of "cache" that was intended for DMCA protection,

8

because a) it is not a system cache; and b) Defendants profit from it.  Arguments that the search engines are useful internet tools fall under the umbrella of fair use or, possibly, but not likely, implied license.

Regarding the issue of volition, the volition occurs in that, as pled in <u>Viacom v. Google</u>, the infringing activity occurs on Defendants' website, not its users', and is therefore under its supervision and control.  Search engines are not created out of thin air.  That the infringing activity is done by software does not immunize it, if the search engine controls the activity of the software, and the copying is not authorized.  In a case such as e-mail sent via AOL, AOL's computer is authorized to copy the mail in order to deliver it; no analogous situation exists here.

To say that the <u>Parker</u> court did not misconstrue the facts is tantamount to saying that Viacom, the Authors' Guild, and the Publishers' Guild, represented by the same caliber of attorneys as the Defendants in this case, have effectively filed frivolous lawsuits on issues of well-established case law.  Plaintiff has attached a copy of the complaint in <u>Viacom v. YouTube</u> as Exhibit A, because the facts pled there are nearly identical to those pled here.

If this court wants to call Defendants a "copy machine," Plaintiff will go home and not even appeal. If it wants to find that Defendants have contradicted their statements in SEC filings and violated their fiduciary duty to their shareholders by copying Plaintiff's registered works for purposes other than profit, he'll throw up the white flag. However, if this court disagrees with the findings in <u>Parker</u>, and refuses to defeat issue preclusion despite this, then he will appeal as a challenge to the concept of issue preclusion, something which should not be afforded greater strength than a precedent, which can be overturned.

## Lack of Underlying Precedent

A "fully fair litigation" of an issue requires the establishment or affirmation of precedent. Without such precedent, there is no legitimate basis for the first ruling, so there is nothing which should preclude a second lawsuit. It is common judicial practice, especially in the Supreme Court, to leave issues (the right to bear arms comes to mind) open for future attempts at judicial resolution. There is no binding precedent in this case, as evidenced by the nonprecedential ruling of the Third Circuit in Parker, and its reliance on cases from other circuits. Absent a precedent in this circuit, the issue has not been precluded, and to the extent that Parker is "precedent" in this district or to this Plaintiff, it is fair-game for attempts by Plaintiff to reverse it, because the issue is fair-game for any other identically situated Plaintiff in this district or circuit to attempt to establish precedent. If the case law were settled in this circuit, a precedential ruling from this circuit would have been cited, and Defendants would prevail as a matter of law under Rule 50 against any Plaintiff, with no need for "issue preclusion."

### B. The Implied License Claimed By Defendant Is An Attempt To Secure A Royalty-Free COMPULSORY License.

1. Conduct Creating Implied License. Defendant Yahoo argues that Plaintiff "created an implied license by "placing his works on the internet without restricting access to his copyrighted material." (Supp.Brief, p.8). If this court agrees, Plaintiff would then have an "implied license" to copy any material on the internet that was not restricted, for any variety of purposes, with a potential burden on the infringed party to prove the lack of an implied license Also, where does it end? Allow two search engines to republish someone's website, and all are allowed, to the point where who created content becomes secondary to who aggregates it. This would be akin to finding that television shows are created so that TV Guide can exist.

Defendants act as if their actions have no precedent in history, when in fact they are two: ASCAP and the Compulsory Cover License for music, both excellent solutions for

remarkably similar situations. ASCAP is set up as a clearinghouse for license payments to musical artists whenever their works are performed "free" on the radio, in nightlife venues, dance competitions, or anywhere else. The search engine does to Plaintiff's website more or less what the radio does to music, and should be treated analogously.

The ASCAP license is calculated based on audience size, while the Compulsory Cover License imparts an automatic royalty payment of a fixed amount per minute of any published song that is performed in whole or part, with the automatic, not implied, consent of the owner. If this court insists on giving two software companies the right to pilfer Plaintiff's works, it should attach some type of compulsory license or ASCAP-like system with fixed payments. This would put a natural check on the unfettered destruction of Plaintiff's copyrights, by ensuring that those who use his material do so profitably, which also satisfies any public interest in using the search engines, as the engines are available to them.

An equally obvious solution would be to require search engines to get permission to index websites, for if the search engines are in fact so useful (a prong of the fair-use test), then web content providers would make sure to give permission. These alternatives all combine to make Defendant's arguments "opportunistic" to say the least. It should finally be noted that these two defendants are involved in protracted litigation against each other (to the point where earnings were missed last quarter), that at least one is losing substantial money by spending almost two dollars to make one, and that the evidence shows that were it not for the infringing conduct, these losses would be even greater. Defendant Microsoft in particular has never gained traction on the internet, does not make money from it, and is getting in the way of individuals like Plaintiff, who may not dazzle with revenues, but whose content has proven to turn a profit by existing "free."

Restricting access to Plaintiff's material, as Defendants suggest he should do, would a) require his readers to take additional steps to view his website, and b) would require them to part with personal information, such as their e-mail address, which c) would cost Plaintiff both audience and revenue, which is why he chose not to make his site require registration. That he chooses to give a "free concert in the park" without requiring (free) tickets to view it by no means gives anyone within ear shot an "implied license" to rebroadcast or record it to a "concert cache" website. This circuit, in striking down sections of the Communications Decency Act (CDA), has already rejected the requirements for subscription access to adult material to prevent children from viewing it to be "overburdensome" for the same reasons.

Plaintiff very explicitly "unimplied" any license to any third party to copy his website when he registered his works with the Library of Congress. Any company which produces a search engine which sweeps the entire internet, collects all content from all website, either knows or should know that its "spider bot" would collect registered works, so the infringement was hardly incidental.

Defendants are asking this court to make it a requirement for those seeking copyright protection over the internet to require subscription access and password-protection for viewing. While this court is free to carve out such an exception, there is no precedent which supports this, a lot of precedent which does not, and it should do so only with extreme caution, as the impact of such a finding would reach into every corner of media.

2. An "internet cache" is not subject to DMCA protection.

In its supplemental brief (p.7), Defendant Microsoft claims that Plaintiff has given an "implied license" to its internet cache that is the full equivalent of the one given to individual users' personal computer system caches. The difference that the individual reader of Plaintiff's website's system cache enables and facilitates the authorized viewing of Plaintiff's

website, while the search engines' "internet cache" is but a copyright-infringing thief that plays a pirate's, rather than a system cache's, role in the transmission of protected information.

The Parker court had found that because the "archiving" was "automatic" that there was no volition, but this court questioned that notion as it applied to the creation of the "archiving" instrument in the first place.

If this issue is truly "precluded," then Viacom is wasting its time suing YouTube, because YouTube is more "automatic" than even a search engine, since its users generate the content. As Viacom noted in its lawsuit, the infringing activity is not "automatic" in that it is caused by a third party (copy machine), but rather, "occurs on Defendants' website." Extensive arguments regarding the term "cache" were already heard.

    3.    Robots.txt and "opt out" arguments. Viacom stated so eloquently in Viacom v. YouTube that they should not have to constantly police YouTube for infringement when YouTube is the one making the money. Plaintiff would have to do the same thing here, not just for the two defendants, but for anyone who infringes upon Plaintiff, and they still would get to "work the float" of time between infringement and notification, much as YouTube does now, and with which Viacom takes issue.

Any "opt-out" copyright scheme would have a chilling effect on content such as Plaintiff's, because the only way to fully protect its rights would be not to publish it online, which is anathema to the public interest. The robots.txt scheme is hardly ideal, requires a significant level of computer knowledge to implement, and is only possible when the creator of the content owns the website on which his or her work is published..

    4.    There are noninfringing alternatives to search engines. During oral argument, this court appeared to appreciate the value of search-engines to end-users, yet this did not address the fairness of the revenue division between search engine (100 percent) and content owner

(nothing).. Overlooked, however, were sites like Wikipedia, or user-generated search engines, which can fulfill the same market need without impeding the rights of content providers, in addition to simply making search engines "opt in."

## CONCLUSION

For the many reasons set forth herein, the most significant of which is that Defendants are attempting to pass off a royalty-free compulsory license as an implied license, Defendants' motion to dismiss should be denied. An appropriate form of order is attached.

This the 1ˢᵗ day of August, 2008

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 764-5487
SnodgrassPublish@aol.com
Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| GORDON ROY PARKER, | |
|---|---|
| Plaintiff | |
| | |
| v. | CASE NO.: 07-2757 |
| | |
| | Judge: MAM |
| Yahoo!, Inc., and Microsoft Corporation, | |
| Defendants | |

FILED

AUG 1 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify that I have

served a copy of **Plaintiff's Response To Defendant Yahoo!'s Motion To Dismiss,** on both

defendants in this action via **regular mail**, as follows:

**Corey Field**
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
**Attorney For Yahoo!**
This the 1st day of August, 2008

**James D. Cashel**
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street, 28th Floor
Philadelphia, PA 19109
**Attorney For Microsoft**

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 764-5487
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INTERNATIONAL INC.,<br>COMEDY PARTNERS,<br>COUNTRY MUSIC TELEVISION, INC.,<br>PARAMOUNT PICTURES CORPORATION,<br>and BLACK ENTERTAINMENT TELEVISION<br>LLC,<br><br>                          Plaintiffs,<br><br>     v.<br><br>YOUTUBE, INC., YOUTUBE, LLC, and<br>GOOGLE INC.,<br><br>                        Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF<br>AND DAMAGES** |

Plaintiffs Viacom International Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures Corporation, and Black Entertainment Television LLC (collectively, "Plaintiffs"), by and for their Complaint against Defendants YouTube, Inc. and YouTube, LLC (collectively, "YouTube"), and Google Inc. ("Google") (all collectively, "Defendants"), aver as follows:

## INTRODUCTION

1.    Over the past decade, the emergence of broadband networks, Internet protocol and inexpensive wireless networks has revolutionized the way Americans inform and entertain themselves. Millions have seized the opportunities digital technology provides to obtain creative works and to express themselves creatively. Entrepreneurs have made

fortunes providing the networks, the tools and the creative works that have fueled this revolution. But these same innovations have also been misused to fuel an explosion of copyright infringement by exploiting the inexpensive duplication and distribution made possible by digital technology. Some entities, rather than taking the lawful path of building businesses that respect intellectual property rights on the Internet, have sought their fortunes by brazenly exploiting the infringing potential of digital technology.

2.    YouTube is one such entity. YouTube has harnessed technology to willfully infringe copyrights on a huge scale, depriving writers, composers and performers of the rewards they are owed for effort and innovation, reducing the incentives of America's creative industries, and profiting from the illegal conduct of others as well. Using the leverage of the Internet, YouTube appropriates the value of creative content on a massive scale for YouTube's benefit without payment or license. YouTube's brazen disregard of the intellectual property laws fundamentally threatens not just Plaintiffs, but the economic underpinnings of one of the most important sectors of the United States economy.

3.    YouTube's website purports to be a forum for users to share their own original "user generated" video content. In reality, however, a vast amount of that content consists of infringing copies of Plaintiffs' copyrighted works, including such popular (and obviously copyrighted) television programming and motion pictures as "SpongeBob SquarePants," "The Daily Show with Jon Stewart," "The Colbert Report," "South Park," "Ren & Stimpy," "MTV Unplugged," "An Inconvenient Truth," "Mean Girls," and many others. Unauthorized copies of these and other copyrighted works are posted daily on YouTube and each is viewed tens of thousands of times. As Dow Jones reported, "[i]t's no secret that millions of Internet users every day watch copyright-infringing video clips on

YouTube." Market Watch by Dow Jones, October 20, 2006. In fact, Plaintiffs have identified more than 150,000 unauthorized clips of their copyrighted programming on YouTube that had been viewed an astounding 1.5 billion times. And that is only a small fraction of the content on YouTube that infringes Plaintiffs' copyrights, because as described below, YouTube prevents copyright owners from finding on the YouTube site all of the infringing works from which YouTube profits.

4.     Defendants actively engage in, promote and induce this infringement. YouTube itself publicly performs the infringing videos on the YouTube site and other websites. Thus, YouTube does not simply enable massive infringement by its users. It is YouTube that knowingly reproduces and publicly performs the copyrighted works uploaded to its site.

5.     Defendants know and intend that a substantial amount of the content on the YouTube site consists of unlicensed infringing copies of copyrighted works and have done little or nothing to prevent this massive infringement. To the contrary, the availability on the YouTube site of a vast library of the copyrighted works of Plaintiffs and others is the cornerstone of Defendants' business plan. YouTube deliberately built up a library of infringing works to draw traffic to the YouTube site, enabling it to gain a commanding market share, earn significant revenues, and increase its enterprise value.

6.     YouTube has deliberately chosen not to take reasonable precautions to deter the rampant infringement on its site. Because YouTube directly profits from the availability of popular infringing works on its site, it has decided to shift the burden entirely onto copyright owners to monitor the YouTube site on a daily or hourly basis to detect infringing videos and send notices to YouTube demanding that it "take down" the infringing works. In

the meantime, YouTube profits handsomely from the presence of the infringing works on its site. And even after it receives a notice from a copyright owner, in many instances the very same infringing video remains on YouTube because it was uploaded by at least one other user, or appears on YouTube again within hours of its removal. YouTube has deliberately chosen this approach because it allows YouTube to profit from infringement while leaving copyright owners insufficient means to prevent it.

7. Moreover, YouTube has deliberately withheld the application of available copyright protection measures in order to coerce rights holders to grant it licenses on favorable terms. YouTube's chief executive and cofounder Chad Hurley was quoted in the New York Times on February 3, 2007, as saying that YouTube has agreed to use filtering technology "to identify and possibly remove copyrighted material," but only after YouTube obtains a license from the copyright owner. Geraldine Fabrikant & Saul Hansell, *Viacom Tells YouTube: Hands Off*, N.Y. Times, Feb. 3, 2007, at C1. Those who refuse to be coerced are subjected to continuing infringement. *Id.*; *see also* Saul Hansell, *A Bet That Media Companies Will Want to Share Ad Revenue*, N.Y. Times, Sept. 30, 2006, at C1.

8. YouTube has also implemented features that prevent copyright owners from finding infringing videos by searching the YouTube site. YouTube thereby hinders Plaintiffs' attempts to locate infringing videos to protect their rights. At the same time, YouTube allows its users to make the hidden videos available to others through other YouTube features like the "embed," "share," and "friends" functions. In this way, YouTube continues to profit from the infringement, while hindering Plaintiffs from preventing it.

9. Defendant Google recently purchased YouTube for $1.65 billion, generating extraordinary riches for YouTube's founders and investors. In recognition of the undeniable

reality of massive infringement on the YouTube site, Google has reportedly issued substantial equity and entered into expensive licenses with certain providers of copyrighted content.

10. Defendants' infringement has harmed and continues to harm the interests of authors, songwriters, directors, producers, performers, and many other creators. If left unchecked, rampant infringement will gravely undermine Plaintiffs and other companies that generate creative works, and will threaten the livelihoods of those who work in and depend upon these companies. Plaintiffs therefore have no choice but to seek immediate redress. Plaintiffs seek a declaration that Defendants' conduct willfully infringes Plaintiffs' copyrights, a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiffs' copyrights, and statutory damages for Defendants' past and present willful infringement, or actual damages plus profits, of at least one billion dollars.

## JURISDICTION AND VENUE

11. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

12. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has personal jurisdiction over Defendants. Google does continuous and systematic business in New York and this District. It maintains an office and employs personnel in New York and this District, and is thus physically present in the state. *See* N.Y. C.P.L.R. § 301. On information and belief, YouTube also does continuous and systematic business in New York and in this District. *See id.* All Defendants have also