IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| GORDON ROY PARKER, | |
|---|---|
| Plaintiff | |
| v. | CASE NO.: 07-2757 **FILED** |
| Yahoo!, Inc., and Microsoft Corporation, | Judge: MAM |
| Defendants | |

## PLAINTIFF'S ANSWER TO DEFENDANT YAHOO!, INC'S COUNTERCLAIMS

**Plaintiff** in the above-styled action submits this answer to the counterclaims brought by Defendant Yahoo!, Inc. in this action.

1. Defendant knows its corporate status better than Plaintiff, but, based upon Plaintiff's information and belief, this is **admitted**.

2. **Admitted**.

3. This is a conclusory legal argument to which no response is required. To the extent one is required, it id **denied**.

4. **Admitted**. (That this court has personal jurisdiction over Plaintiff).

5. This is a conclusory legal argument to which a response is not required.

6. **Admitted**.

7. **Denied**. In his motions to dismiss both counterclaims, Plaintiff provided a printout from the Library of Congress website that listed the copyrights registered in his name. Defendant is also effectively accusing Plaintiff of perjury in his verified complaint in this action.

8. **Denied in part, admitted in part**. Plaintiff admits that Yahoo!, Inc. operates a search-engine. The horn-tooting about how useful the engine is, is denied. Wikipedia, for

example, has created an even <u>more</u> useful website that performs the same function, without violating third-party copyrights in the course of its creation.

9. **<u>Denied in part, admitted in part</u>**. Plaintiff admits that Yahoo!, Inc. has a "spider" software that "crawls" the web, lifting, without regard to copyright protection, that which it finds along the way. Plaintiff <u>denies</u> the editorializing relating to the primary purpose, which he claims is not to enrich the user's internet experience, but instead to increase revenue, as <u>required</u> by our many securities laws designed to protect the investor-class.

10. **<u>Denied</u>**. Defendant's copies of the websites it crawls is not a "cache" as the term is defined by computer professionals, or as defined by the DMCA. It is a <u>content repository</u>. This is analogous to the difference between the keys to a car's ignition, and hotwiring equipment.

11. **<u>Denied in part, admitted in part</u>**. To the extent Defendant Yahoo!< Inc. is attempting to claim it has an opt-out policy for its content repository, that is <u>admitted</u>. All other aspects of the averment, including the claim that it is properly defined as a cache, is denied.

12. **<u>Denied in part, admitted in part</u>**. Plaintiff was and is aware of the "opt out" provision of the voluntary <u>robotx.txt</u> protocol. The remainder of the averment is <u>denied</u>, as, at most, Plaintiff <u>accepted</u> the existence of the search engine results, to the extent their right to exist was supported by the courts, but does not <u>desire</u> inclusion. With regard to the content repository (what Defendant calls its "cache"), Plaintiff has never desired, nor consented to, the inclusion of entire copies of his website within these repositories. To the extent Defendant has reason to believe otherwise, all consent and desire was revoked when this lawsuit was filed, pursuant to precedent, as his intentions and "desires" were made abundantly clear.

13. **<u>Admitted in part, denied in part</u>**. To the extent Defendant is claiming that Plaintiff did not file a DMCA notice with, or otherwise notify Defendant Yahoo! of the alleged infringement in this lawsuit, prior to its filing, that is admitted. Plaintiff's position has been that

Defendant Yahoo! is not subject to DMCA protection due to profit motive, its primary participation in the infringement, and because it is not a transitory provider. No such notice is required; the consequence of statutory damages for copyright infringement usually deters such conduct. With regard to <u>further works</u> to which Plaintiff may claim infringement, that statement was made <u>before</u> this court's rulings on implied license. Any such future claims would be consistent with those rulings, with any future controversy so restricted.

14. **Denied in part, admitted in part.** Plaintiff admits only to not "opting out" of having his works copied by Defendant's search engine and content repository. He emphatically **denies** doing so for the sole purpose of filing suit. Plaintiff is an internet publisher who simply goes about his business. As part of that business, he writes, publishes, registers copyrights to his writing, and <u>enforces</u> those copyrights. <u>Plaintiff's first copyright (**Foxes**) was registered in 1998!</u> He did not do so with any of these lawsuits in mind, as they resulted from the <u>commercialization</u> of his content through search and the content-repository. Just as music publishers have worked out deals with radio stations via ASCAP, where a similar dynamic exists, and just as the <u>wealthier</u> publishers are cutting deals with search engines (such as Google's recent settlement), Plaintiff is merely doing what any publisher with the means to do so would do, and is protecting the value of his work. Google's position against Plaintiff was similar to this, yet when the authors' and publishers' guilds filed suit, they folded. The only attempted "concoction" here is <u>bad precedent</u>, the kind that results when a multibillion-dollar corporation attempts to paper-blitz a nearly-defenseless independent rival. Finally, if opt-out policy is validated by this court, Plaintiff will be overburdened by having to notify <u>every</u> website on the planet that infringes his works, which he will either have to perpetually police, or remove from free public viewing, against the interests and privacy of the very internet users Defendant claims to be looking out for.

15. This is a conclusory legal argument to which no response is required. To the extent one is required, it is <u>denied</u>. Plaintiff does note, however, that this court has already ruled in favor of implied license as set forth by Defendants, and, pending appeals, intends to abide by the final adjudication of this issue.

16. **<u>Denied in part, admitted in part</u>**. By way of further explanation, Plaintiff uses <u>FrontPage Express</u>, a scaled-down version of FrontPage, whose capabilities resemble that of an HTML editor.

17. **<u>Denied</u>**. To begin with, <u>FrontPage Express</u> (the program Plaintiff uses) has no such features, or if it does, they are well beyond the intuition of the typical user. Plaintiff is a publisher, not a computer expert. Defendant's claim is incredulous in that it presumes both a level of computer expertise and physical capabilities it either knows, or should know, are beyond the reach of the entire user base.

18. **<u>Admitted</u>**. For the <u>express</u> purpose of protecting user privacy and anonymity, Plaintiff does not require his readers to provide him with <u>any</u> personal information. Given the sensitive and controversial nature of his work, this is <u>essential</u> to attracting users, as many might wish to remain anonymous. This court's parent has already dealt with a similar issue, when it held that requiring adult-content providers to block this type of access was too burdensome.

19. **<u>Denied</u>**. Plaintiff's works have generated <u>tens of thousands of dollars</u> in revenue, without aggressive marketing, and without any mainstream media distribution or exposure. Were defendant to publish this claim on its own website, it would be actionable as libel. Plaintiff earns revenue from his books by attaching "affiliate" links to them, which lead to sales commissions for related, third-party products (other seduction books) when clicked. This is another reason why Plaintiff eschews user login requirements, as it reduces this revenue. Defendant makes its revenue

the same way, through advertisements related to the content it displays, with the primary difference that Plaintiff is exploiting his own content.

20. Plaintiff is without sufficient information to respond to this averment, as it is conclusory and vague. To the extent Defendant is claiming that other individuals have infringed his work, or used it with permission, that is admitted. The remainder of the averment is denied.

21. This is a conclusory legal argument to which no response is required. To the extent one is required, it is denied.

22. This is a conclusory legal argument to which no response is required. To the extent one is required, it is denied. By way of further explanation, Defendant Yahoo! profits from the alleged infringement, and is not a transitory provider under the DMCA.

## ANSWER TO FIRST COUNTERCLAIM

23. No response is required.

24. No response is required to this rhetorical, conclusory statement. To the extent a response is required, it is denied as inapplicable to the relevant facts.

25. No response is required to this rhetorical, conclusory statement. To the extent a response is required, it is denied as inapplicable to the relevant facts.

26. **Admitted**, to the extent that Defendant is claiming, and only claiming, that Plaintiff made his works available for viewing on his website.

27. **Denied.** As Defendant knew, or should have known, Plaintiff put a copyright notice on his works that stated they could be viewed only via his own website. This restricted third-party access, such as by "framing" Plaintiff's website as a link within another site. It also precludes the type of content-repository used by Defendant, at issue in this lawsuit.

28. **Denied in part, admitted in part.** Plaintiff admits to not opting out, but denies the existence of a "myriad" of ways to do so which would not burden him.

5

29. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied.

30. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied.

31. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied.

32. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied. Defendant is asking this court to unjustly strip Plaintiff of his constitutional right to copy for his works.

## ANSWER TO SECOND COUNTERCLAIM

33. No response is required.

34. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied. Defendant has not set forth facts which support any controversy involving any specific, registered works of Plaintiff's. To the extent any such remaining controversy exists (in light of the rulings in this case already made), it is redundant to Count I and should be framed as an affirmative defense.

35. This is a conclusory legal argument to which a response is not required. By way of further response, Defendant's "counterclaim" is redundant to Count I and should be framed as an affirmative defense. Defendant has cited no works in controversy.

36. **Denied**. By way of further explanation, Plaintiff defines "profit" as including indirect pecuniary benefits, although, as discovery should show, direct profits almost certainly occurred, unless Defendant Yahoo! is admitting that no advertisements placed next to its many displays of Plaintiff's content in its search engine were ever clicked.

37. **Admitted**. By way of further response, Defendant is stating the obvious, as Plaintiff's knowledge of its conduct is not relevant to his ability to cause it to cease under his established rights.

38. This is a conclusory averment to which a response is not required. To the extent one is required, it is denied. By way of further response, Wikipedia serves a nearly-identical purpose to that of the search engines, and does so without the need for infringement.

39. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied. By way of further response, search engines have destroyed the value of the works of independent publishers like Plaintiff, especially those who refuse to pay a "street tax" to the engines, to ensure that advertisements for their sites appear alongside their own content.

40. **Denied**. Plaintiff loses revenue every time traffic that would have gone to his website, did not, because it found the same content on Defendant's website.

41. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied. The billions of dollars that search engines generate in revenue did not come from thin air, but from a highly targeted audience, to which products identical to Plaintiff's are marketed by Defendants.

42. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied. By way of further response, this "counterclaim" is redundant to Count I and should be framed as an affirmative defense, as no other controversy exists.

## ANSWER TO THIRD COUNTERCLAIM

43. No response is required.

44. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is denied. No controversy exists here, as this court has already found in

favor of implied license. Assuming that ruling holds up, Plaintiff would then be able to begin hosting websites such as the *Implied License News*, where he can display full copies of newspapers like the *New York Times*, since they make their articles available without login restrictions, and *Implied License Theater*, where Plaintiff can embed full-length movies, television shows, and other entertainment that is left up on sites like YouTube, since Plaintiff would assume that the content was "there for the taking" as this court has ruled regarding his own content. To the extent implied-license controversies remain regarding revocation of implied license, that is redundant to Count I, and should be framed as an affirmative defense. Plaintiff intends to abide by the rulings of this court, and any appeals, concerning implied license, thus eliminating any controversy concerning future works.

45. **Admitted in part, denied in part**. Plaintiff denies that Defendant Yahoo!, Inc. operates a "system cache" as defined by the DMCA, or computer experts. He also denies any intent to place his work in the content repository. With regard to search, this court has found that to be legal, and Plaintiff abides by that ruling, pending appeals.

46. **Denied**. Plaintiff knows of only two ways to "opt out" of this otherwise actionable conduct. That is hardly "numerous." By way of further response, these methods are overly burdensome, too complicated, and voluntary.

47. **Admitted**. By way of further response, irrelevant.

48. **Admitted**. By way of further response, irrelevant.

49. This is a conclusory legal argument to which no response is required. To the extent one is required, it is <u>denied</u>. By way of further response, Plaintiff notes this court's previous rulings on implied license, and intends, pending the outcome of appeals, to abide by such rulings. Defendant is merely citing case precedent.

8

50. This is a conclusory legal argument to which no response is required. To the extent one is required, it is <u>denied</u>. By way of further response, Defendant cites no specific registered works for which Plaintiff has intended to bring suit in the future. Further, Plaintiff has not threatened any such lawsuit, as he would be required to do even if he were to prevail on his remaining count. Until such time as he does, no controversy exists, and defendant lacks standing to bring suit under this statute.

## ANSWER TO FOURTH COUNTERCLAIM

51. No response is required.

52. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is <u>denied</u>. By way of further response, no controversy exists, as Defendant has not cited any specific registered works, other than those already being litigated, which are in controversy. To the extent any controversy exists, it should be framed as an affirmative defense to Count I.

53. **<u>Denied</u>**. To the extent Defendant Yahoo!, Inc. is claiming that it removed its copies of Plaintiff's works from its "cache," it did not specify <u>when</u> it stopped doing this. Plaintiff avers, by contrast, that Defendant Yahoo! ceased its caching of Plaintiff's registered works only <u>after</u> the Court denied its motion to dismiss, due to the court's allowing claims based on post-filing infringement to survive. Plaintiff also avers that his website contains new works, as they are created, not all of which are necessarily registered.

54. Plaintiff is without sufficient information to frame a response to this averment. By way of further response, Plaintiff removed most of the free content from his website, and any subsequent removal from Yahoo's website was either the result of this, or occurred recently due to Defendant deviating from its corporate policy. By way of further response, cached copies of his works have turned up in Yahoo's "cache" post-filing.

55. This is a conclusory legal argument to which no response is required. To the extent one is required, it is <u>denied</u>.

56. This is a conclusory legal argument to which no response is required. To the extent one is required, it is <u>denied</u>. By way of further response, no controversy exists which would give Defendant standing to seek this relief.

### ANSWER TO FIFTH COUNTERCLAIM

57. No response is required.

58. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is <u>denied</u>. By way of further response, no controversy exists, as Defendant has not cited any specific registered works, other than those already being litigated, which are in controversy. To the extent any controversy exists, it should be framed as an affirmative defense to Count I.

59. **<u>Denied</u>**. Plaintiff provided a printout directly from the Copyright Office's website listing his registered works, including those in controversy in Count I.

60. This is a conclusory legal argument to which a response is not required. To the extent one is required, it is <u>denied</u>. Defendant's averment is tantamount to a lack of diligence pursuant to Rule 11, as there would be no possible controversy without Plaintiff's works being registered, and this very counterclaim would have been filed in bad faith.

61. This is a conclusory legal argument to which no response is required. To the extent one is required, it is <u>denied</u>. By way of further response, no controversy exists which would give Defendant standing to seek this relief.

### PLAINTIFF'S FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM/NO CONTROVERSY

62. Defendant Yahoo has failed to state a claim for which relief can be granted.

63. As Plaintiff has not filed or threatened litigation concerning any additional registered works, no controversy exists.

64. Defendant Yahoo! is currently not engaging in any infringing conduct which would give rise to this litigation.

65. Defendant Yahoo! has not identified any specific registered works of Plaintiff's which would give rise to this <u>additional</u> litigation. Its "counterclaim" should be framed as an affirmative defense to the existing Count I in this lawsuit.

## <u>PLAINTIFF'S SECOND AFFIRMATIVE DEFENSE:<br>NO DMCA SAFE HARBOR</u>

66. Defendant Yahoo is not entitled to DMCA safe-harbor protection because it is not a transitory provider as defined by the DMCA.

67. Defendant Yahoo is not entitled to safe-harbor protection under the DMCA, because it <u>directly</u> profits from the alleged infringement.

## <u>PLAINTIFF'S THIRD AFFIRMATIVE DEFENSE:<br>ISSUE PRECLUSION</u>

68. Defendant Yahoo's "counterclaims" are an attempted reframing of its affirmative defenses to Count I. It is therefore issue-precluded from raising them again in subsequent litigation, as no controversy could exist, since Plaintiff would be issue-precluded from attempting to reverse any unfavorable precedent, while any favorable precedent would issue-preclude the counterclaims. As it stands, any defense to this claim would require an attempt by Plaintiff to overturn of this court's previous ruling on implied license.

## <u>PLAINTIFF'S FOURTH AFFIRMATIVE DEFENSE:<br>NO IMPLIED LICENSE</u>

69. This court has already held that Plaintiff's filing of this lawsuit has constituted an <u>attempted</u> revocation of implied license. Judicial precedent is on his side. Unless this precedent is

reversed, any implied license granted by Plaintiff via his conduct was revoked by the filing of this lawsuit.

70. A finding of implied license would have <u>devastating</u> consequences on copyright holders. It would turn the <u>public</u> internet into quasi-public-domain territory, which publishers would have to avoid, either by avoiding website publishing, and by requiring shipping addresses, or e-mail addresses, from their audience, who, given the nature of internet material, prefer to have their privacy respected. Defendants know this, as they are advertising companies, which is why they themselves require no such barriers to access their sites, which they themselves further argue can be republished on the internet with the very implied-license they seek.

71. The full consequences of an implied-license ruling would not be realized until after the fact, as individuals and corporations would then feel empowered to distribute freely literally <u>anything</u> they find online. Internet copyright would be all but invalidated, and free content on the internet would be reduced to advertising copy, which people do not mind being "infringed."

## PLAINTIFF'S FIFTH AFFIRMATIVE DEFENSE: NO FAIR USE

72. There is no legal precedent supporting the commercialized use of entire copies of others' registered works as a fair use.

## PLAINTIFF'S SIXTH AFFIRMATIVE DEFENSE: WTO SUPREMACY ESTOPPEL

73. Defendants' counterclaims are precluded by America's participation in the World Trade Organization (WTO), specifically its provisions relating to a level playing field among its member nations. Allowing what would be infringement in any other member country to occur in the "home country" of the searches-engine industry (one with 95+ percent of the market), would violate the WTO agreements, by providing an unfair advantage to American search-engine

companies, who would be free to infringe foreign content with impunity, with full knowledge that lack of audience would make similar foreign infringement of our content economically irrelevant, if not mute.

### PLAINTIFF'S SEVENTH AFFIRMATIVE DEFENSE: NO DAMAGES

74. Defendants have not alleged any damages which would give rise to any of its counterclaims.

### PLAINTIFF'S EIGHTH AFFIRMATIVE DEFENSE: VALID COPYRIGHT, NO MISUSE

75. Plaintiff's copyrights in controversy in this action are valid, registered, and were not misused.

### PLAINTIFF'S NINTH AFFIRMATIVE DEFENSE: ESTOPPEL

76. Defendants' counterclaims are barred by estoppel.

### PLAINTIFF'S TENTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE

77. Defendants' counterclaims are barred by the doctrine of failure to mitigate.

### PLAINTIFF'S ELEVENTH AFFIRMATIVE DEFENSE: UNCONSTITUTIONALLY EXCESSIVE COSTS

78. Defendants' prayer for attorney fees is not proper, given that that conduct for which it seeks relief does not provide for monetary damages.

### ADDITIONAL DEFENSES

79. Defendants' prayer for attorney fees is not proper, given that that conduct for which it seeks relief does not provide for monetary damages.

WHEREFORE, Plaintiff seeks the following relief, in addition to that sought for the existing Count I:

1. Dismissal of all six counterclaims, with prejudice.

2. Costs, including any reasonable attorney fees incurred.

3. Such other and further relief as this court may deem just and proper to make Plaintiff whole.

This the 15th day of December, 2008.

*[signature]*

*[signature]*

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 764-5487
E-mail: SnodgrassPublish@aol.com
Plaintiff, Pro Se

1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| GORDON ROY PARKER, Plaintiff | |
|---|---|
| v. | CASE NO.: 07-2757 |
| Yahoo!, Inc., and Microsoft Corporation, Defendants | Judge: MAM |

Clerk original

FILED DEC 2008
MICHAEL E. KUNZ, Clerk Dep Clerk

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify that I have served a copy of **Plaintiff's Answers to Defendants Counterclaims (2)**, on both defendants in this action via **regular mail**, as follows:

**Corey Field**
Ballard, Spahr, Andrews & Ingersoll, Rhoads
1735 Market Street, 51st Floor
Philadelphia, PA 19103
FieldC@ballardspahr.com
**Attorney For Yahoo!**

**Jeremy Mishkin**
Montgomery, McCracken, Walker &
123 South Broad Street, 28th Floor
Philadelphia, PA 19109
Jmishkin@mmr.com
**Attorney For Microsoft**

This the 15th day of December, 2008

_____
Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 764-5487
E-mail: SnodgrassPublish@aol.com[1]