UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
GORDON ROY PARKER,              )    07-CR-2757
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
YAHOO, INC., et al,             )    Philadelphia, PA
                                )    January 27, 2009
          Defendant.            )    9:29 a.m.
```

TRANSCRIPT OF RULE 16 STATUS CONFERENCE
BEFORE THE HONORABLE MARY A. McLAUGHLIN
UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Plaintiff:        GORDON ROY PARKER, PRO SE


For the Defendant        THOMAS P. LANE, ESQUIRE
Yahoo:                   WINSTON & STRAWN, LLP
                         200 Park Avenue
                         New York, NY  10166


For the Defendant        JEREMY MISHKIN, ESQUIRE
Microsoft:               MONTGOMERY, McCRACKEN, WALKER &
                         RHOADS, LLP
                         123 South Broad Street
                         Philadelphia, PA  19109

Audio Operator:          RAYMOND WOLF

Transcribed by:          DIANA DOMAN TRANSCRIBING
                         P.O. Box 129
                         Gibbsboro, New Jersey  08026-0129
                         Office:  (856) 435-7172
                         Fax:     (856)  435-7124
                         E-mail:  Dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

## I N D E X

SUMMARY OF THE CASE:                              PAGE NUMBER

  By Judge McLaughlin                              3


YAHOO - SETTLEMENT:                               PAGE NUMBER

  By Mr. Lane                                      5


ARGUMENTS:                                        PAGE NUMBER

  By Mr. Parker                                    7,  20, 28
  By Mr. Mishkin                                   12, 19, 26

                                                  PAGE NUMBER

1          (The following was heard in open court at 9:29 a.m.)

2          COURTROOM DEPUTY:  All rise.

3          THE COURT:  Good morning everyone.

4          MR. PARKER:  Good morning, Your Honor.

5          MR. LANE:  Good morning, Your Honor.

6          MR. MISHKIN:  Good morning, Your Honor.

7          THE COURT:  Please be seated.  All right, we're here

8   this morning of course in the case of the Gordon Ray

9   Parker --

10          MR. PARKER:  Roy.  I'm sorry.

11          THE COURT:  I'm sorry, sir?

12          MR. PARKER:  I'm sorry, it's Gordon Roy Parker.

13          THE COURT:  Oh, what did I say?  Ray?

14          MR. PARKER:  Ray.

15          THE COURT:  I'm so sorry.

16          MR. PARKER:  That's okay.

17          THE COURT:  Gordon Roy Parker versus Yahoo and

18   Microsoft Corporation and thanks, everybody, for being here.

19   Let me be sure I know everybody.  Obviously I know Mr. Parker

20   or remember Mr. Parker and Mr. Lane, this is Mr. Lane, and Mr.

21   -- sir, say your name again for me?

22          MR. MISHKIN:  My name is Jeremy Mishkin, Your Honor.

23          THE COURT:  Mishkin -- I'm so sorry.

24          MR. MISHKIN:  Yes, Your Honor.

25          THE COURT:  I couldn't read your handwriting there.

1   All right, counsel and Mr. Parker, the purpose of this

2   morning's hearing -- it's not a hearing really but a

3   conference and we're doing it on the record because obviously

4   Mr. Parker is pro se so I think it's important that we do

5   that, is to discuss a schedule for the case.

6           Now as I look at all the materials and the papers,

7   and of course my earlier decision, what we have left is the

8   plaintiff's claim of direct copyright infringement based on

9   any continued display or use of his works after the filing of

10  the lawsuit, because everything else I had dismissed, and then

11  we have various counterclaims by the defendants against Mr.

12  Parker.  Mr. Parker, is that your understanding of what's

13  left?

14          MR. PARKER:  Did you get my amended Rule 16?  I

15  filed something on Friday, something that was bare bones

16  because I couldn't find the form and I re-did it over the

17  weekend.

18          THE COURT:  Yes, I think we have it, yes.

19          MR. PARKER:  Okay.

20          THE COURT:  Did I -- just for the record, though,

21  did I state correctly what you believe the claims are that are

22  left?

23          MR. PARKER:  Well there are counterclaims, yes --

24          THE COURT:  Yes.

25          MR. PARKER:  -- and you dismissed all but the direct

1    infringement --

2              THE COURT:  That's what I just said --

3              MR. PARKER:  Yeah.

4              THE COURT:  -- yes, okay.

5              MR. PARKER:  Everything in accordance with your

6    orders, yeah.

7              THE COURT:  Mr. Lane, is that your understanding of

8    what's left?

9              MR. LANE:  It is, Your Honor, however, there's been

10   a development this morning.

11             THE COURT:  Oh.

12             MR. LANE:  Yahoo has settled with Mr. Parker --

13             MR. PARKER:  Pending your approval --

14             MR. LANE:  -- pending the Court's approval of course

15   and both sides have agreed to dismiss their claims.

16             THE COURT:  Okay.  Okay, do I need to approve it?

17             MR. LANE:  I have a --

18             THE COURT:  Am I missing something here?

19             MR. LANE:  I just got the executed so ordered copy

20   of it.

21             THE COURT:  Okay, sure.

22             MR. LANE:  I'd like to hand that up to the Court.

23             THE COURT:  Sure, why don't you just hand it up.  So

24   this is Mr. Mishkin -- no, Mr. Lane --

25             MR. LANE:  Yes.

1          THE COURT:  Okay, so Mr. Lane from Yahoo -- let me

2    take that, all right -- yes, I don't even think I need to sign

3    it -- well I guess maybe I do because we have another

4    defendant.  I take it, Mr. Mishkin, you don't have any

5    objection to this?

6          MR. MISHKIN:  No, Your Honor, I have no objection.

7          THE COURT:  Okay.  I will sign it and I guess we can

8    excuse you, Mr. Lane, if you'd like to be excused.

9          MR. LANE:  I may just wait to talk to Mr. Mishkin

10   afterward --

11         THE COURT:  Of course.

12         MR. LANE:  -- but I appreciate the Court's time and

13   it's been a pleasure, Your Honor.

14         THE COURT:  More than welcome to have you stay.

15   Thank you very much --

16         MR. LANE:  Thank you.

17         THE COURT:  -- also from my end as well.  Thank you

18   very much, Mr. Lane.  Okay, Mr. Mishkin, all right, is that

19   your understanding of what's left, Mr. Mishkin?

20         MR. MISHKIN:  Yes, Your Honor, and I don't obviously

21   know what the terms of this settlement are.  We did explore on

22   the telephone conference as per Your Honor's order the

23   possibility of settlement and I don't know whether the terms

24   that Mr. Parker has agreed to would be offered to my client as

25   well --

1          THE COURT:  Right.

2          MR. MISHKIN:  -- nor what those terms are --

3          THE COURT:  Right.

4          MR. MISHKIN:  -- but I'd certainly be happy to

5    consider it --

6          THE COURT:  Right.

7          MR. MISHKIN:  -- and make sure my client gives it

8    consideration if they are.

9          THE COURT:  Sure.  Mr. Parker, are you prepared to

10   tell us what that is?

11         MR. PARKER:  No, because we have a different set of

12   facts here and if they want to make an offer, I believe Rule

13   68 covers that if they want to do it formally.  Informally, I

14   mean -- I generally -- I would leave it up to them to offer me

15   something.  I mean, I'm not looking to demand anything.

16         My main concern was to settle the copyright issue

17   which affects my own business as much as theirs because I

18   cannot go putting stuff on the internet until I know what --

19   what I -- the limits are.

20         The rules just haven't been laid down unless you go

21   by the old rules which were pre-internet where opt out isn't

22   there so the -- you know, the DMCA created a lot of clouds and

23   I have a -- I have an internet publishing company with a long

24   history of books that date back to 1998 websites so this

25   wasn't a minor issue.

1          I have books coming out in the future which will

2     also be affected by these rulings so for me, it was more of an

3     issue just -- you know, again, I'd like to see the law

4     resolved as much as -- I have standing because it affects me

5     but -- you know, it's very common for companies to file the

6     declaratory just like they did or for damages as I did because

7     I believe there was a violation.

8          But absent the violation it's still beneficial I

9     think to all involved to get some kind of law like you laid

10    down.  I mean, you had a very extensive hearing.  The

11    Publisher's Guild case in New York was just polled (ph

12    9:33:36)-- I think settled for $125 million and what seems to

13    be happening is you get two classes of publishers here.

14         You get the big mainstream publishers who these

15    companies like Google don't go after or they settle and then

16    they cut a deal with them or people like me who can't fight

17    them so I'm somewhere -- I'm like in -- one foot in each world

18    where I have a standing, I have a case and some ability to

19    bring it -- I'm not saying -- you know --

20         THE COURT:  Okay, yes.

21         MR. PARKER:  I've worked in law offices before

22    enough to know how the system works.

23         THE COURT:  Sure, sure.  Well, Mr. Parker, though

24    tell me, putting aside whatever the settlement was with Mr.

25    Lane's client, I mean, normally what I do at a Rule 16

1    conference is say to the plaintiff  --

2              MR. PARKER:  How much would I settle for?

3              THE COURT:  Well not necessarily but what are you

4    looking for in the case?

5              MR. PARKER:  A win.

6              THE COURT:  Not necessarily what you're settling but

7    what is it that you're hoping to get out of this case?

8              MR. PARKER:  Justice, a win, damages -- you know,

9    standard --

10             THE COURT:  More specific.  More specific.

11             MR. PARKER:  What I outlined in the complaint.  I

12   mean, I believe my copyrights were violated, I believe that

13   what they --

14             THE COURT:  Well do you want them to stop picking up

15   your material?  Is that what you want?

16             MR. PARKER:  Only if -- well again, without the law

17   being laid down, I want the -- I want the law to be applied

18   equally to everybody on the internet so that I know what the

19   law is, don't violate it in the future and then and do not

20   have a situation where some companies have rules that don't

21   apply to other companies.

22             THE COURT:  Yes.

23             MR. PARKER:  And in fact some circuits have rules --

24   you know.

25             THE COURT:  Yes.

1    MR. PARKER:  I mean right now if you defame someone

2    in a search engine, if I bring a Section 230 case in the

3    Seventh Circuit I have three favorable rulings in my favor.

4    If I bring it here I have nothing.  I have Green versus AOL.

5    If I go over to the Seventh Circuit I have two rulings I can

6    quote that bring the whole Section 230 into question and until

7    the Supreme Court deals with that, I pretty much pulled off

8    the internet.

9         That's what I was saying, I don't know what the

10   controversy is.  I've not threatened them with any lawsuits

11   over the future, anything that they're talking about.  Fair

12   use -- they already have implied license.  So on their side --

13        THE COURT:  Right.

14        MR. PARKER:  -- let's see.  I'd like to know what

15   these claims are against me that separate me from the class of

16   individuals that don't leave their content password protected

17   on the web like the New York Times or like Field -- Field

18   versus Google is quoted, but Field was an attorney who wrote

19   poetry, copyrighted it specifically because he I think wanted

20   to push the envelope, but he wasn't making a living or trying

21   to make a living on the internet as a publisher, which is what

22   I am.

23        What would I settle this for?  I mean, again, I

24   would like -- I do want some damages for the past copyright

25   infringements that I will be -- well, not -- well past now but

1    I mean not -- you know -- for the continued display.  See,

2    once you start a case, the rules pretty much say you have to

3    finish it so if I go in there, I'm not going to pull back and

4    say oops -- you know, the rules just from what I gather don't

5    really -- they frown on that.  You know, don't start something

6    you can't finish so --

7            THE COURT:  The Rules of Civil Procedure you mean?

8    The Court Rules?

9            MR. PARKER:  Well, if I -- if I were to just file a

10   Rule 41 and voluntarily pull this that's considered -- they

11   would prevail.  I mean, and not just in a -- in a minor way

12   but --

13           THE COURT:  Right.  Right, no, no, I --

14           MR. PARKER:  -- because I would have wasted their

15   time and the Court.  I didn't file this with the idea of

16   pulling back -- you know, halfway through so I'm not oriented

17   towards a settlement --

18           THE COURT:  Right.

19           MR. PARKER:  -- unless they're going to offer me

20   something specific.

21           THE COURT:  Okay, all right.  Well --

22           MR. PARKER:  Do you want a dollar amount?  Do you

23   want -- I mean, I --

24           THE COURT:  All right, let me turn to Mr. Mishkin

25   for a moment.

1          MR. PARKER:  Okay.

2          THE COURT:  Mr. Mishkin, has Microsoft stopped --

3    not the way I want to say it probably -- picking up Mr.

4    Parker's materials --

5          MR. PARKER:  Can I object?  I guess not.

6          THE COURT:  -- in their search engines?

7          MR. MISHKIN:  Your Honor, the completely mechanical,

8    automatic spidering of the web goes on unless an individual

9    has taken the very well known and easy to implement steps to

10   opt out of that.  I assume by now, Mr. Parker, who claims he

11   didn't want this spidered in the first place, has finally

12   implemented those processes although he didn't before --

13         THE COURT:  Right.

14         MR. MISHKIN:  -- before now and so to be honest,

15   Your Honor, this is a purely automated process.  I don't want

16   to make a misrepresentation to the Court about what that

17   spider is hitting today.  If Mr. Parker has taken the steps to

18   mitigate the -- the problems that he claims were caused by

19   this problem, then absolutely the spidering system will not

20   pick up his material.

21         But, if he continues to decide on his own as is his

22   right to expose his material to all spiders whether MSN's,

23   whether it's Yahoo's, whether it's Google's, then those purely

24   automatic functions will continue and so -- I'm sorry for the

25   long answer, Your Honor --

1              THE COURT:  No, no, that's fine.

2              MR. PARKER:  I know what he's saying.

3              THE COURT:  No, I know what --

4              MR. PARKER:  He's saying --

5              THE COURT:  -- he's saying too, Mr. Parker -- hold

6       on for a second -- let me ask you, sir, have you opted out

7       that mechanical way?

8              MR. PARKER:  I've taken all of my original -- most

9       of my original content off my site.  Let me -- can I just say

10      a couple things?  First off, your ruling on what they're

11      looking to do is equate password protection with copyright

12      protection.  Yesterday I was watching a full length movie

13      that's usually for sale You Tube.

14             I found it on the web.  There was no password

15      protecting.  I can watch a You Tube video without logging into

16      You Tube.

17             THE COURT:  The question, sir, is have you done the

18      technical things --

19             MR. PARKER:  Oh, I'm -- I have --

20             THE COURT:  -- you have to do to opt out of the

21      search engine?

22             MR. PARKER:  -- I have pulled my -- most of my

23      content.  I have articles that I put up and I have a horse

24      racing site that I put up --

25             THE COURT:  Okay.

1          MR. PARKER:  -- I have a chess site sometimes.

2          THE COURT:  Right.

3          MR. PARKER:  As I understand it, your ruling said

4    that implied license could be revoked by the filing of a

5    lawsuit which in that case --

6          THE COURT:  No, I didn't say that.  I said that that

7    was a possibility and I would need further briefing on it.

8    Mr. Parker, I have a factual question to you -- and I'm not

9    saying you should or shouldn't have but I just want to know so

10   I know where we're going --

11         MR. PARKER:  I haven't totally shut down my site,

12   no, I do not --

13         THE COURT:  I didn't ask you about turning down your

14   site --

15         MR. PARKER:  Oh.  I don't use robot stock text

16   because it is too complicated and not -- it's -- I don't know

17   how to implement it.

18         THE COURT:  Okay.  So you have not opted out --

19         MR. PARKER:  No, I have not used the robot --

20         THE COURT:  -- of the search engine --

21         MR. PARKER:  -- the text or --

22         THE COURT:  Okay.

23         MR. PARKER:  Yeah.

24         THE COURT:  All right.  All right.  Mr. Mishkin --

25   but you would like them to stop doing it is what you're

 1  telling me?

 2          MR. PARKER:  First I would like to know what the law

 3  is once it's resolved.  As far as I'm concerned, precedence

 4  says an opt out has never been recognized.  Now this Court can

 5  obviously carve out an exception for the internet, but if you

 6  do that, again, you're equating password protection with

 7  copyright protection.

 8          That denies my audience the right to just come to my

 9  website and read my stuff without giving me their email

10  address which they would have to --

11          THE COURT:  Okay.

12          MR. PARKER:  -- do to get a password.

13          THE COURT:  Okay.  All right --

14          MR. PARKER:  Also, if you --

15          THE COURT:  -- slow down for a second --

16          MR. PARKER:  -- if there are a thousand search

17  engines I'm going to have to opt out with every one of them

18  which takes --

19          THE COURT:  Well my -- I can't -- I mean, I'm not

20  going to be able to solve that problem.

21          MR. PARKER:  Right.

22          THE COURT:  I have a very narrow issue here before

23  me and obviously, you've settled with Mr. Lane before you had

24  a legal ruling --

25          MR. PARKER:  Difference set of facts.

1    THE COURT:  I'm so sorry?  No, I understand, I

2  understand.  But all that I'm saying is that on at least those

3  sets of facts, you didn't want to get a ruling on it so I'm

4  trying to see if we could think of a way to resolve the

5  lawsuit, which you're perfectly entitled to do --

6    MR. PARKER:  Okay.  Can I say --

7    THE COURT:  -- to resolve it or not.

8    MR. PARKER:  Actually what happened was we have a

9  redundant -- we have two attorneys who are basically seeking

10  attorney fees against me for the same thing.

11    If you're at a blackjack table and you can win the

12  same amount of money with a one dollar -- one chip or two

13  chips or you can lose two chips or you can settle with one of

14  the dealers and have one chip at stake for the same thing, it

15  just makes sense in the interest of judicial economy and in

16  limiting my risk on the downside, the longer this trial goes

17  on, the longer it's resolved, I could wind up with their

18  attorney bills which would bankrupt me beyond whatever

19  mitigation --

20    THE COURT:  Right.

21    MR. PARKER:  -- or limits.  I don't know of any

22  constitutional limits.  Now also, I have -- this Court once

23  ordered a psychiatric examination of me for reasons I'm not

24  going to get into but they're a little more complicated than

25  they might appear on the surface, but the point is if I am

1   mentally disabled or physically disabled -- I mean, I'm not

2   disabled disabled  but I'm not exactly the young man I used to

3   be.

4          What if somebody with a serious disability in my

5   position puts up a website and gets sued for declaratory

6   relief -- say they have Asperger's, say they have ADHD, say

7   they have ODD, say they have IED -- any of these tons of

8   disorders.

9          I do medical transcription so I hear of a lot.  How

10  would they defend themselves without an attorney?  Where's the

11  equal access?  I mean, where would they get a trial?  I'm not

12  here -- see, this is the first time I've been a defendant in

13  this Court.  I have never been a defendant before so the

14  voluntary aspect of that is gone.  I've been dragged into

15  this.

16         THE COURT:  Right.

17         MR. PARKER:  If the counterclaims are just a device

18  to get me to settle -- the main thing is the law.  You have to

19  -- the main issue that really resolved based on what you said

20  is whether implied license can be revoked by a lawsuit.  If

21  you say that it can't then this case is over on my end because

22  I have no win.  If you say that it can however, then I

23  probably -- you know, then we have something -- you know, a

24  triable issue.

25         I thought that -- when I saw the ruling you

1   basically turned this into a case of my personal copyright

2   after the filing of the lawsuit might give rise to liability.

3   There's nothing here that applies to everybody.

4            But on the other end, this looks like a class

5   action, that they just decided that they'd rather go through

6   me than some big defendant because I don't see the difference

7   between them taking the content off of my site and taking the

8   New York Times' content off of the site, or me taking the New

9   York Times' content, running it through my site in something

10  like the implied license news.

11           Whatever I find on the net just put on my site and

12  then let them come to me.

13           THE COURT:  All right --

14           MR. PARKER:  I could sell --

15           THE COURT:  -- Mr. Parker, I just --

16           MR. PARKER:  -- a lot of advertising in that

17  time --

18           THE COURT:  Okay, all right, I just need to hone in

19  a little bit.  I have a 10:30.  I have a bunch of lawyers --

20           MR. PARKER:  That's okay.  I'm just trying to

21  summarize --

22           THE COURT:  -- troop of lawyers coming in.

23           MR. PARKER:  -- for you as best --

24           THE COURT:  Okay, all right.  So but my question to

25  you is do you want to pursue a resolution?  I could -- I mean

1  we could talk about it today.  I could have you go to a

2  Magistrate Judge who could talk about it with you.

3          Now let me ask you, Mr. Mishkin, would you agree --

4  I mean have you explored this with your client, is this a

5  possibility that you would -- notwithstanding your position

6  that Mr. Parker needs to do the technical thing to stop the

7  search engine from picking up his material -- but would you be

8  willing -- is it technically possible, would you be willing to

9  go in or your client and stop it?

10         You know, do something yourself to stop the search

11  engine picking up any of his material, his websites on the

12  internet, would you be willing to do that and then if in

13  return Mr. Parker drops his claims, to drop your

14  counterclaims?

15         MR. MISHKIN:  Your Honor, I would certainly

16  recommend to my client that if Mr. Parker's desire is for our

17  search engine spider to cease it's automatic search of

18  whatever the websites are that he designates in as part of a

19  resolution of both his claims and Microsoft's counterclaims, I

20  would recommend that to my client, but I confess that I

21  haven't specifically asked that question to my client so I

22  don't want to --

23         THE COURT:  Sure.

24         MR. MISHKIN:  -- make the representation to the

25  Court that I already know the answer.  I don't.

1          THE COURT:  Sure.

2          MR. MISHKIN:  But I would certainly recommend it.

3          THE COURT:  Sure.  So he would recommend that, he

4     can't guarantee it.  So think about it, Mr. Parker.

5          MR. PARKER:  Well, I can tell you my position, it's

6     very clear.

7          THE COURT:  Yes.

8          MR. PARKER:  First off, you've already legitimized

9     opt out copyright with your previous rulings.  If I drop this

10    case that stays in tact with very little likelihood that this

11    issue is going to be pushed by anyone because anyone with the

12    money to push it -- I -- I mean, I -- when you say if I drop

13    the case, I mean -- I -- this case wins in almost every other

14    country other than the US.

15          This case wins in England, this case wins in

16    Belgium, this case wins in Australia --

17          THE COURT:  Sir, I really do -- and I don't want to

18    cut you off but no, but it's entirely up to you, if you don't

19    want to settle it --

20          MR. PARKER:  The ruling is --

21          THE COURT:  -- then you don't have to.

22          MR. PARKER:  Can implied license --

23          THE COURT:  I'm just asking.

24          MR. PARKER:  -- be revoked?  I would have to know

25    that first because that determines whether I even have a case.

1           THE COURT:  I wouldn't -- I wouldn't decide any

2    other legal issues.  I'm asking you before the Court decides

3    any other legal issues --

4           MR. PARKER:  Absent --

5           THE COURT:  -- do you want to go talk to a

6    Magistrate Judge or -- you know, talk with Mr. Mishkin

7    yourself to try to resolve this?

8           MR. PARKER:  Oh, I have -- I have -- I know exactly

9    what I would want absent a ruling on whether implied license

10   can be revoked because that also impacts me for the future --

11          THE COURT:  Okay.

12          MR. PARKER:  -- but I would need to know that before

13   I could make -- before -- assuming you would be giving me a

14   favorable ruling that would be -- I would -- making that

15   assumption on a favorable ruling on that for any settlement

16   talks so yes, I would be willing to explore it --

17          THE COURT:  Okay, but --

18          MR. PARKER:  -- but only under that premise because

19   I'm not going to assume a loss on that.

20          THE COURT:  Okay, no, but I don't know what you

21   mean.  If you settle the lawsuit it goes away and I make no

22   other decisions.

23          MR. PARKER:  No, I know, but absent your ruling on

24   whether implied license can be revoked, I have to assume that

25   I'm going to get the favorable ruling and if you're asking me

1  to give up that favorable ruling and what would happen after

2  that, then that would impact what I would require to settle.

3           If you make the ruling on the implied license and

4  whether it can be revoked issue then I know how to proceed.

5  Absent that, then I have to proceed as if you had made a

6  favorable ruling and would -- would discuss settlement under

7  that premise --

8           THE COURT:  Okay.

9           MR. PARKER:  -- is what I'm saying.

10           THE COURT:  All right.  I still don't know what you

11  mean.  So what then would be your demand to settle?

12           MR. PARKER:  $39,999 like in a Rule 68 offer --

13           THE COURT:  Okay --

14           MR. PARKER:  -- which would basically be the maximum

15  -- 75 -- if I recovered the maximum statutory damages at

16  trial, based on the ruling that you gave or some other ruling

17  that might affect that, if they would offer me that under Rule

18  68 and I declined it, then the odds of my recovering more than

19  75 percent of that would be next to --

20           THE COURT:  Well -- okay --

21           MR. PARKER:  -- would be very slim and --

22           THE COURT:  Well putting aside a Rule 68 offer

23  judgment --

24           MR. PARKER:  30,000 --

25           THE COURT:  -- which that's not what we're talking.

1    How much are you saying?

2            MR. PARKER:  30,000.  One statutory violation of my

3    copyright, the same amount would be what I would want.  Not

4    necessarily an admission of liability but that's what it would

5    take me to abandon the pursuit of the implied license ruling,

6    the trial, and laying down the law.

7            THE COURT:  Okay.  So --

8            MR. PARKER:  I do believe I've had one violation

9    though --

10           THE COURT:  Okay, all right.

11           MR. PARKER:  -- so -- you know --

12           THE COURT:  So the amount is -- I don't know whether

13   you said 30,000 --

14           MR. PARKER:  30,000 would be the amount.

15           THE COURT:  30,000 is your demand.

16           MR. PARKER:  Well, I don't -- I don't know how the

17   process is and again, I tend to -- in chess anyway, it's

18   considered courtesy to let the opponent make the draw for --

19   if you've already offered one or -- or they've explored it,

20   not repeatedly make demands --

21           THE COURT:  Right --

22           MR. PARKER:  -- because you assume that if they were

23   going to offer you --

24           THE COURT:  Right --

25           MR. PARKER:  -- they would step forward.

1            THE COURT:  No, no, no.  This is your first demand.

2    Mr. Parker hasn't made a demand before this, has he?

3            MR. PARKER:  That's not a demand though.  I'm not

4    demanding it, I'm just saying that I would drop it --

5            THE COURT:  Yes, but that's --

6            MR. PARKER:  -- if that were offered.

7            THE COURT:  -- it's called a demand --

8            MR. PARKER:  Okay.

9            THE COURT:  -- in litigation.  That's all that

10   means.

11           MR. PARKER:  All right.

12           MR. MISHKIN:  Your Honor, the answer is no, Mr.

13   Parker has not previously made a demand.

14           THE COURT:  Okay, all right.  So his demand is

15   $30,000 and them to stop picking up your material --

16           MR. PARKER:  No, actually I wouldn't --

17           THE COURT:  -- or you don't care about that?

18           MR. PARKER:  -- that could -- it would be minor.

19   They've pretty much already done that to some extent but I

20   have more than one website.  I would have to keep reporting to

21   them and then to other search engines.  My right to publish

22   anonymously would be affected.  So, I mean, there are things

23   there.  I -- I --

24           THE COURT:  But can't you do the little robot thing?

25           MR. PARKER:  It's not as simple -- I would like to

1    have a trial on that issue also to show what -- you know,

2    there's a lot involved in the robots issue.  On my end, if you

3    say that implied license can be revoked we have a five minute

4    trial.  If you say that it can't be revoked we have protracted

5    litigation where then -- then I'm more inclined to say -- you

6    know, I don't have anything to fight for and I don't think you

7    do either --

8              THE COURT:  Okay.

9              MR. PARKER:  -- because I've pretty much

10   preemptively kept my stuff off the web, not just so that it's

11   not archived by them but by anyone --

12             THE COURT:  Right, right.

13             MR. PARKER:  -- you know.  Because I can do this by

14   email and also I can switch to video which is not protected

15   this way.  Like, if I make a video on the camera and then

16   upload it to the net it's not considered internet content in

17   the same -- you know, respect.  So, I'm really looking as much

18   as they are for the law to be laid down.

19             But if they want to settle it and say -- you know,

20   because you've turned this into a case about my personal

21   website -- you haven't -- this doesn't -- this isn't a -- this

22   couldn't be a class action anymore.  If your earlier rulings

23   had been different it might have been.

24             Though as I think as the defendant I feel like it's

25   a class action, that I'm just the only defendant who's

1    representing it.  I might file a motion to that effect or

2    something.

3              THE COURT:  Okay.  All right.  Well, Mr. Mishkin,

4    you've heard what I've heard so why don't you -- you know,

5    consider obviously that demand and then if you want to make a

6    counter offer, obviously you can do that.  And but why don't

7    you try to pursue something and if you get to the point where

8    you think you want to go to a Magistrate Judge, I certainly

9    could obviously arrange that.

10             Did you want to speak, Mr. Mishkin?

11             MR. MISHKIN:  Only to say, Your Honor, that I

12   certainly will convey this demand --

13             THE COURT:  Sure.

14             MR. MISHKIN:  -- to my client as is my obligation.

15   I don't want to -- I don't want to appear unduly optimistic

16   that -- about the outcome.  My suggestion, Your Honor, is that

17   after we explore the possibility of a resolution that the next

18   step be that if a resolution is not possible, a briefing

19   schedule for Rule 56 motions because the legal issues that do

20   remain could well resolve the outstanding issue that Your

21   Honor left open in the course of the Rule 12 forward.

22             THE COURT:  Okay.  All right.  Well let's talk about

23   where we go from here assuming for a moment that there is not

24   a settlement and that you both go forward and, Mr. Mishkin, I

25   know that you have -- well you just said it here in Court but

1    also in your papers, that you would want to do a summary

2    judgment motion.

3              MR. MISHKIN:  Correct.

4              THE COURT:  Without doing any discovery at all?

5              MR. MISHKIN:  Correct, Your Honor.  We believe these

6    are issues of law based on the pleadings as Mr. Parker has

7    presented them to Your Honor that the legal issues can be

8    resolved without any discovery.

9              THE COURT:  Okay.  And tell me, have you at this

10   point in your own mind framed what the legal issues are that

11   you would present to me?

12             MR. MISHKIN:  Certainly they would include the

13   volitional issue that Your Honor specifically reserved from

14   the Rule 12 motion, as well as the revocability of the implied

15   license which we believe is a matter of law --

16             THE COURT:  Okay.

17             MR. MISHKIN:  -- and does not require any discovery

18   to resolve.  Moreover, there are Digital Millennium Copyright

19   Act issues that are purely legal issues, and there is the

20   interpretation of the copyright rights that Mr. Parker has and

21   the actions of Mr. Parker's own complaint establish as a

22   judicial fact and therefore are not -- are not in any need of

23   any further discovery that we believe, again, would resolve

24   the remaining issue of the continuing.

25             THE COURT:  So what would happen with your

1  counterclaims?

2        MR. MISHKIN:  Well if we were to succeed on the Rule

3  56 motion with regard to Mr. Parker's claims, we would then be

4  in a position of making a determination whether to -- if we

5  can resolve the substantive claims that have been asserted

6  against Microsoft, Microsoft may decide that it need not

7  pursue the affirmative relief in the counterclaim, including

8  seeking attorney's fees although depending on the Court's

9  ruling of use of copyright and the actions that Mr. Parker has

10  taken may entitle us to relief.

11        But again, in an effort not to have this matter drag

12  on indefinitely, were we to prevail on the remaining

13  affirmative claim against us, in all candor, we would reassess

14  whether it merits further prosecution of our counterclaim.

15        THE COURT:  All right.  What are your thoughts on

16  that, Mr. Parker?

17        MR. PARKER:  If this is on the record, first I want

18  -- you're going to deny it but -- probably -- first I want to

19  request appointed counsel because I am a indigent -- well, in

20  terms of being able to afford counsel, be it disabled or

21  functionally unable to prosecute this case as a regular

22  individual would be and -- what was the third one?

23        Oh, yes, a defendant meaning that I'm not here

24  voluntarily.  So I'm just saying that without counsel I

25  believe I'm already being prejudiced, I'm --

1            THE COURT:  Yes.

2            MR. PARKER:  On the -- I might file a motion or

3     something, just to preserve my rights or --

4            THE COURT:  Sure.

5            MR. PARKER:  -- because again, I'm concerned more

6     for the individual who really hasn't worked in law offices or

7     might be a little more disoriented or -- or more unable to do

8     this than me, because I'm certainly not the most incapable

9     person on the planet but I have limitations that -- I'm being

10    sued by Microsoft so if there's ever a case where that --

11           THE COURT:  Well, you sued Microsoft and I have the

12    feeling that if your suit weren't here, they would probably do

13    what was just hinted at my Mr. Mishkin so I think that's

14    what --

15           MR. PARKER:  Well --

16           THE COURT:  -- would happen.  But go ahead.

17           MR. PARKER:  -- theoretically the one case --

18           THE COURT:  Tell me your thoughts.

19           MR. PARKER:  -- oh, that's the other thing, I may

20    want -- I suppose separating these cases because one case you

21    have which is actually very simple which is my claim -- their

22    claims, if they're going to raise DMCA (phonetic) because this

23    is active fair use issues which go beyond even my case, now

24    you're talking about financial discovery, records discovery,

25    corporate discovery, testimony of their officers regarding

1    their motive, why they created a search engine, why I'm

2    supposed to believe that a publically traded company whose

3    mission under the very rules of the SEC are to look after the

4    shareholders first, act like they're doing this for something

5    other than money.

6         What is this higher purpose that a publically traded

7    company has?  Where is it in their 10Q filings or their 12 --

8    whatever those filings are?  That's if they're coming -- see,

9    again, you have two cases.  You have my suit over my

10   copyright, their search engine.  I'm the one creating the

11   content.

12        People go on the -- you know, people watch TV to

13   read TV Guide or they read TV Guide to find out what's on TV

14   because they're basically TV Guide.  I'm the TV.  I'm the one

15   making the content that the audience comes to watch.  They're

16   the ones that are putting them in touch with me.  It's as if

17   TV Guide is making all the money off of TV with these engines.

18        I mean, this is not a small amount of money.  Yes,

19   there are ways around it.  I can find them and as long -- you

20   know, that's why also I would rather the law be laid down so

21   that everybody has equality.  But, when you're talking the

22   counterclaims, I have to defend myself.

23             THE COURT:  Right.

24             MR. PARKER:  The rules for discovery on a defendant

25   are much different than on a plaintiff --

1           THE COURT:  Okay.  All right.

2           MR. PARKER:  -- so I need to -- if they're going to

3    come out and say we don't make a -- oh, and they claimed I

4    didn't make a profit from my books?  I have plenty of checks

5    ordered them (sic).  I -- I have plenty of revenue that it's

6    well documented for years from these books.

7           THE COURT:  Okay.

8           MR. PARKER:  I copyrighted them before the search

9    engines even really took advertising.  I've been on the net

10   since 1996 or '94.

11          This is not -- you know, I didn't just arrive here

12   and say ooh -- you know, I've been building a specific

13   business and one of the reasons I've been delayed is the lack

14   of legal -- you know, with the defamation I had to pull back

15   and say okay, I can't fight that with this.

16          I may have to pull back and say I'm just going to

17   have to be -- the only copy I want in their search engine are

18   my advertising copy, my spam, so my website's just going to

19   have nothing but marketing materials.  Copy that all you want.

20   So I don't even worry about the spider.

21          They did infringe my registered works or what would

22   have been infringement.  Is it an abuse of copyright to defend

23   my -- to defend my copyright under a opt out policy that's

24   never been validated?  I don't see what I'm abusing here.  I

25   didn't register these works with this lawsuit in mind, I

1  registered them because I know on the internet people can

2  steal your work very easily.  So to me, that registration is a

3  universal opt out.

4          And again, I raised a WTO issue in my answer.  I

5  wasn't going to look to other countries if our Courts are

6  protecting and saying our American search engines who own 95

7  percent of this market have the total implied license to copy

8  works from Belgium, France, England.

9          You know, WTO says you can't pass laws in a country

10  that favor one country over another.  The wrong rulings or

11  laws in this country can lead, as they did in offshore

12  gambling to something like Antigua getting a claim against us.

13          THE COURT:  Okay --

14          MR. PARKER:  If this country's entering into these

15  agreements and these treaties, I would assume that these

16  treaties are relevant to any case in the country.  So when you

17  talk about the counterclaims, you're talking about this really

18  -- I'm going to fight it because I want -- I don't want them

19  to get these declaratory releases.

20          THE COURT:  Okay --

21          MR. PARKER:  This affects me in the -- you know, in

22  the -- my claim --

23          THE COURT:  Okay --

24          MR. PARKER:  -- is just a matter of what you

25  said --

1          THE COURT:  Okay --

2          MR. PARKER:  -- though, one ruling.

3          THE COURT:  Okay, all right.  All right, well then,

4    Mr. Mishkin, I think what we'll do is we'll set a schedule for

5    that motion and so we won't do discovery before but, Mr.

6    Parker, when you respond to it, and as you say, you know, you

7    do have some experience in law because your responses have

8    been -- you know, have been sometimes very much on point for a

9    non-lawyer.  Very much so.

10          But what we'll do is you can then respond to it and

11   if you feel that somehow in responding you need discovery of

12   something, then you can ask for it.  Do you know what I'm

13   saying, sir?  Does that make sense?

14          MR. PARKER:  If they say we don't profit from -- if

15   they assume facts not in evidence --

16          THE COURT:  Right.

17          MR. PARKER:  -- which they almost have to to get

18   these rulings, I don't see how this motion can be brought

19   without discovery.

20          THE COURT:  Okay.  And I have no view of it because

21   I mean, I hear what Mr. Mishkin has just said but this is the

22   first time I'm hearing what he's going to do so I don't have

23   any view of whether he's going to be successful or not or

24   whether discovery is needed.

25          But I think in view of everything I've heard this

1  morning, I will allow him to go forward, file his motion --

2  which of course as you know, Mr. Mishkin, you can always file

3  it anyway but often summary judgment motions, people don't do

4  it unless the Court says we're ready to do it so you can do

5  that but then, Mr. Parker-- and obviously I'll give you -- you

6  know, a reasonable amount of time --

7          MR. PARKER:  Can I --

8          THE COURT:  -- to respond.  Do you have a feeling as

9  to how much time you might want?  Maybe you need to see it

10  first I think.  Let's --

11          MR. PARKER:  Well, to respond, what I would say is

12  that -- you know, again, without discovery, we can look ahead.

13  They're going to say -- for DMCA they have to prove they don't

14  profit.  How can they -- I'm getting no discovery on that

15  issue?  Because if I prove that, I've knocked out every DMCA

16  claim of theirs.

17          THE COURT:  Yes, well we'll see.  I don't know what

18  they're going to say so when they say whatever it is they're

19  going to say, look it over, drop me a note letting me know how

20  much time you need to respond and I'm sure we won't have a

21  problem with that.  And then after Mr. Parker responds, Mr.

22  Mishkin, you can do a reply.

23          MR. PARKER:  I --

24          THE COURT:  I will look at it.  Now, if in your

25  opposition, Mr. Parker, you have said some of those issues

1    need discovery so I need discovery on them to respond, I'll

2    evaluate that and perhaps schedule another oral argument here

3    in Court or whatever, but then we'll see where we go from

4    there.  And obviously if I deny the motion -- and I have no

5    view of it -- then we'll have to get together again and talk

6    about where we go from here.

7            MR. PARKER:  So no discovery then until -- you're

8    not opening discovery --

9            THE COURT:  Not at this point -- yes, not at this

10   point until we see whether or not Mr. Mishkin is presenting to

11   me certain issues you don't need discovery for.  But you'll

12   have the opportunity to tell me that you think you do need

13   discovery, once you see what he's saying.  But I think you

14   need to see what he's saying first.

15           MR. PARKER:  Well wouldn't you just have to assume

16   all facts in my favor?

17           THE COURT:  Yes.  Well, I mean --

18           MR. PARKER:  So again --

19           THE COURT:  -- I had to give you all --

20           MR. PARKER:  All benefits of the doubt --

21           THE COURT:  Yes --

22           MR. PARKER:  -- unless they can prove it through

23   some kind of affidavit but then I can counter.

24           THE COURT:  I don't know what he intends to do but

25   he referred to your complaint -- Mr. Mishkin did, I shouldn't

1  say he -- Mr. Mishkin will no doubt take some facts from your

2  complaint it sounds like and then he may or may not give me an

3  affidavit.  I don't know what he intends to do on that.  But

4  if the affidavit presents factual issues that you need

5  discovery on, then I will hear from you and if I decide that

6  that's true, that you need to do discovery on facts that are

7  relevant, then I will make that decision.

8           I take it you're intending to make several arguments

9  that you don't to win on all of them --

10          MR. MISHKIN:  That's correct, Your Honor.

11          THE COURT:  -- I assume is what you're saying.

12          MR. MISHKIN:  Exactly.

13          THE COURT:  So, it may be that I decide he loses on

14 all of them or he wins on one.  If I think he wins on one,

15 then I'm not going to -- I won't do the others probably, most

16 likely.  So, there may be some that I think it's fair for you

17 to get discovery on, you need it, on others it may not be.  So

18 let's see.

19          MR. MISHKIN:  And it might be moot depending on the

20 nature of the motion.

21          THE COURT:  Exactly, yes.  So let's see what he has

22 to say.  Now when can you file it, Mr. Mishkin?  What are your

23 thoughts?

24          MR. MISHKIN:  Your Honor, I was thinking 30 days

25 would be adequate for me.

1     THE COURT:  Okay, 30 days from today.  I'll do an

2  order after this but let me see -- we're at January -- what

3  are we, January 27th?

4          MR. MISHKIN:  27th, Your Honor.

5          THE COURT:  So we're talking say February 27th,

6  okay?

7          MR. MISHKIN:  That would be fine.  Thank you, Your

8  Honor.

9          THE COURT:  February 27th, and then within a week of

10  getting that, Mr. Parker, you need to tell me how much time

11  you need, okay?

12          MR. MISHKIN:  Well I usually -- what's the normal

13  limit?  20 days?

14          THE COURT:  It's usually 14 days --

15          MR. MISHKIN:  But if I need discovery is that -- or

16  should I --

17          THE COURT:  No, but you need to file something to

18  tell me you need discovery so you're going to need to file

19  something --

20          MR. PARKER:  A motion for expedited discovery is it?

21          THE COURT:  No, no, I would not -- no, I'm not going

22  to grant any discovery until Mr. Mishkin files his motion and

23  you oppose it, telling me what discovery you need and why you

24  need it, okay?

25          MR. PARKER:  Yes, Your Honor.

1    THE COURT:  And I'll try to lay that out in my order

2    as well that states February 27th.  So on February 27th or

3    thereabouts, you will get his motion.  You need to read it,

4    tell me how much time you need to respond.  Don't -- you don't

5    need to respond to it, just tell me within a week, Judge, I

6    need 30 days, I need 45 days, 60 days -- whatever it is, okay?

7    MR. PARKER:  I -- I -- what's -- the normal is 20

8    days, right?

9    THE COURT:  I guess it's 14 but whatever you need,

10   Mr. Parker --

11   MR. PARKER:  14?

12   THE COURT:  Yes, but I'll give you whatever you

13   need, Mr. Parker.

14   MR. PARKER:  For summary judgment motion?  It's not

15   20?

16   THE COURT:  No, 20 is to answer a complaint.  But it

17   doesn't matter what it is.

18   MR. PARKER:  Okay.

19   THE COURT:  I'll give you what you need, whatever

20   amount of time you need.

21   MR. PARKER:  Well, you know, I tried to meet the

22   time limits so far so --

23   THE COURT:  No, but that not -- it's truly not

24   necessary --

25   MR. PARKER:  -- whatever --

1          THE COURT:  -- I mean, if I'm going to give you as

2    much time as you need.

3          MR. PARKER:  Well then we put a briefing schedule

4    together.  30 would be standard -- I would think I could --

5    unless discovery was required, in which case it would be

6    longer.

7          THE COURT:  No, but even if you think discovery is

8    required, within 30 days, all you need to do is respond and

9    tell me.  You can say, Judge, on issue (a), I can't respond to

10   that now because I need discovery of these three points.

11         MR. PARKER:  How about --

12         THE COURT:  I need to do a, b, c, and that -- and

13   when I get that information, that's going to be relevant to

14   the legal argument -- are you with me?

15         MR. PARKER:  Well, they demanded a jury trial,

16   didn't they?

17         THE COURT:  I don't recall at this point.

18         MR. PARKER:  I believe you did on your counterclaim.

19         MR. MISHKIN:  Your Honor, that has no bearing on the

20   summary judgment motion.

21         THE COURT:  I have it here --

22         MR. PARKER:  Well -- isn't --

23         THE COURT:  -- maybe I can look at it?

24         MR. PARKER:  -- isn't whether or not they profit

25   from their search engine a finding of fact for a jury, not a

1 | Judge?

2 | THE COURT:  Sir, I don't even -- I'm not even going

3 | to respond to that because I -- it's hard to do it --

4 | MR. PARKER:  Put it in a motion.

5 | THE COURT:  -- you have to know things --

6 | MR. PARKER:  Put it in a motion -- okay.

7 | THE COURT:  -- in context.  Well no, not -- you

8 | don't have to put it in a motion.

9 | MR. PARKER:  I mean in the response.

10 | THE COURT:  Let's find out what they're going to

11 | say.  We don't know what they're going to say yet.

12 | MR. PARKER:  Okay.

13 | THE COURT:  So unless I know what people are going

14 | to say, I don't like to give advisory opinions.  But let me

15 | just look --

16 | MR. MISHKIN:  And, Your Honor --

17 | THE COURT:  -- you asked me a certain question.

18 | MR. MISHKIN:  -- and I've just looked at our

19 | counterclaim.

20 | THE COURT:  Yes.

21 | MR. MISHKIN:  We did not demand a jury.

22 | THE COURT:  Yes, okay.  They had not is the answer.

23 | MR. PARKER:  Oh, Yahoo did I think maybe then.

24 | Okay.  So there's no --

25 | THE COURT:  Okay.

1          MR. PARKER:  Can I -- wait -- can I withdraw my jury

2     demand?

3          THE COURT:  Sure.

4          MR. PARKER:  Okay, no jury trial?

5          THE COURT:  Sure.

6          MR. PARKER:  That allows you to be the fact finder.

7          MR. MISHKIN:  Yes, Microsoft would agree with that,

8     Your Honor.

9          THE COURT:  Okay, all right --

10          MR. PARKER:  So you -- you're the fact finder now.

11          THE COURT:  So there's no -- okay, all right.  So

12     then --

13          MR. PARKER:  No voir dire if it gets to the trial.

14          THE COURT:  Okay, all right, all right.  So if we

15     don't -- if I don't grant summary judgment, then we'll talk

16     about discovery and a bench trial, okay?

17          MR. PARKER:  Uh-huh.

18          THE COURT:  Okay, all right, everybody, thank you so

19     much for coming in.  I appreciate it and I will issue an order

20     along the lines of what I just said.  Okay, everybody, thank

21     you very much.  We're adjourned.

22          (Proceedings concluded at 10:04 a.m.)

23                         *  *  *

24

25

# C E R T I F I C A T I O N

        I, Diane Gallagher, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____   February 1, 2009

DIANE GALLAGHER

DIANA DOMAN TRANSCRIBING